IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CONNECTORS REALTY GROUP CORPORATION, DARRYL WILLIAMS and ANTOINE NASH, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. |
| v. | ) ) | |
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

<u>CLASS ACTION COMPLAINT</u>

Plaintiff, THE CONNECTORS REALTY GROUP CORPORATION ("Connectors") and

ANTOINE NASH ("Nash") (collectively "Plaintiffs"), by their attorney, Kenneth Anspach, for

their complaint against Defendant, STATE FARM FIRE AND CASUALTY COMPANY ("State

Farm"), alleges and avers as follows:

<u>NATURE OF THE CASE</u>

1.      This is a proposed class action under 42 U.S.C. Section 1981 to enforce rights

guaranteed to Plaintiffs by the Fourteenth Amendment to the United States Constitution to make

and enforce contracts between Plaintiffs and State Farm, through State Farm's failure and refusal

to pay their validly filed claims.  State Farm, through its use of pretextual claims denials and

failures to pay, overly intrusive claims investigations, and failure to conduct reasonable

investigations, intentional discrimination and failures to timely pay claims, has intentionally

discriminated against Plaintiffs and prevented them from enjoying the benefits, privileges, terms,

and conditions of the contractual relationship between Plaintiffs and State Farm.

## JURISDICTION AND VENUE

2.        Plaintiffs bring this action pursuant to 42 U.S.C. § 1981 and the Fourteenth Amendment to the United States Constitution.

3.        This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

4.        Venue is proper pursuant to 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this district.

5.        Declaratory relief is authorized by 28 U.S.C. Secs. 2201 and 2202.

## COUNT I

[Breach of Contract - Connectors]

6.        At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

7.        At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  Connectors is a closely held corporation, solely owned and operated by Darryl Williams, its president.  Darryl Williams is African-American.

8.        Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

9.        On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Policy").  A copy of the Policy is in the exclusive possession of State Farm.  A copy of a synopsis of the Policy is attached hereto as Exhibit "A".

10.     Under the terms of the Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown in the amount of $400,000.00, plus loss of income for one year from date of loss, with a deductible in the amount of $2,500.00.

11.   On January 10, 2017, while the Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois.  One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

12.     As a result of the Weather Event and the Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-0670-8L5, under which the pipes froze and burst, causing damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank, resulting in loss and damage in the amount of $86,155.00.

13.     Claim No. 13-0670-8L5 also included Connectors' claim for loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00.

14.     Of the amount of $86,155.00 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank claimed for State Farm Claim No. 13-0670-8L5, State Farm has only paid the amount of $46,528.71, leaving a balance due of $39,626.29 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank.

15.     Of the amount of $46,200.00 for loss of rental income, State Farm only paid $11,550.00, leaving a balance due of $34,650.00 for loss of rental income.

16.     On August 4, 2017 Connectors submitted a Sworn Statement in Proof of Loss ("Proof of Loss") under State Farm Claim No. 13-0670-8L5 in the amount of $86,155.00 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank

and loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00 for loss of rental income, for a total amount claimed under the Proof of Loss for State Farm Claim No. 13-0670-8L5 in the amount of $132,355.00.

17.     Upon information and belief, the Policy provides that loss will be payable 30 days following receipt of proof of loss.

18.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-0670-8L5 in the full amount of $132,355.00 on or before September 3, 2017.

19.     Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-0670-8L5.

20.     Despite Connector's demands, State Farm has failed and refused to pay the balance due of $39,626.29 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank on State Farm Claim No. 13-0670-8L5.

21.     Despite Connector's demands, State Farm has failed and refused to pay the balance due of $34,650.00 for loss of rental income on State Farm Claim No. 13-0670-8L5.

22.     The total amount unpaid under on State Farm Claim No. 13-0670-8L5 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank and for loss of rental income is $74,276.29.

23.     State Farm is liable to pay Connectors the balance due of $74,276.29 on State Farm Claim No. 13-0670-8L5, with interest thereon at the rate of 5% annually from September 3, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $74,276.29, with interest thereon at the rate of 5% annually from September 3, 2017 plus interest and costs.

## COUNT II

### [Breach of Contract - Connectors]

24.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

25.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  The president and principal of Connectors is Darryl Williams, who is African-American.

26.     Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

27.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Policy").  A copy of the Policy is in the exclusive possession of State Farm.  A copy of a synopsis of the Policy is attached hereto as Exhibit "A".  Under the terms of the Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

28.     On January 10, 2017, while the Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois.  One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

29.     As a result of the Weather Event and the Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a second corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8S1, under which the boilers were damaged by

water from the burst pipes, causing the boilers to be submerged in water, rusted and inoperable, all of which resulted in loss and damage in the amount of $60,000.00.

30.    Connectors submitted a Sworn Statement in Proof of Loss in the amount of $60,000.00 minus a $5,000.00 deductible, for a total amount of $55,000.00 for State Farm Claim No. 13-1390-8S1, receipt of which was acknowledged by State Farm on September 5, 2017.

31.    State Farm Claim No. 13-1390-8S1 has neither been paid nor denied by State Farm.

32.    Upon information and belief, the Policy provides that loss will be payable 30 days following receipt of proof of loss.

33.    Accordingly, payment from State Farm was due on State Farm Claim No. 13-1390-8S1 on or before October 5, 2017.

34.    Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8S1.

35.    Despite Connector's demands, State Farm has failed and refused to pay the amount due of $55,000.00 on State Farm Claim No. 13-1390-8S1.

36.    State Farm is liable to pay Connectors the balance due of $55,000.00 on State Farm Claim No. 13-1390-8S1, with interest thereon at the rate of 5% annually from October 5, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $55,000.00, with interest thereon at the rate of 5% annually from October 5, 2017, plus interest and costs.

<u>COUNT III</u>

[Breach of Contract - Connectors]

6

37.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

38.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  The president and principal of Connectors is Darryl Williams, who is African-American.

39.     Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

40.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Policy").  A copy of the Policy is in the exclusive possession of State Farm.  A copy of a synopsis of the Policy is attached hereto as Exhibit "A".  Under the terms of the Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

41.     On January 10, 2017, while the Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois.  One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

42.     As a result of the Weather Event and the Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a third corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8N9 under which a commercial unit experienced loss and damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines,

collapse of front of store, electric lines were down and hanging, gas lines were down all of which resulted in loss and damage in the amount of $116,955.00.

43.    On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $116,955.00 minus a $5,000.00 deductible, for a total amount of $111,955.00, for State Farm Claim No. 13-1390-8N9.

44.    Upon information and belief, the Policy provides that loss will be payable 30 days following receipt of proof of loss.

45.    Accordingly, payment from State Farm was due on State Farm Claim No. 13-13-1390-8N9.

46.    Pursuant to letter dated October 3, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8N9.

47.    Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8N9.

48.    Despite Connector's demands, State Farm has failed and refused to pay the amount due of $111,955.00 on State Farm Claim No. 13-1390-8N9.

49.    State Farm is liable to pay Connectors the balance due of $111,955.00 on State Farm Claim No. 13-1390-8N9, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $111,955.00, with interest thereon at the rate of 5% annually from September 10, 2017 plus interest and costs.

<u>COUNT IV</u>

[Breach of Contract - Connectors]

8

50.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

51.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

52.     Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

53.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Policy").  A copy of the Policy is in the exclusive possession of State Farm.  A copy of a synopsis of the Policy is attached hereto as Exhibit "A". Under the terms of the Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

54.     On April 17, 2017, while the Policy was in full force, there occurred a hail event (the "Hail Event") in Chicago, Illinois.

55.     As a result of the Hail Event, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8F4 under which the third floor roof had a hole caused, ceiling, drywall were damaged which resulted in loss and damage in the amount of $17,500.00.

56.      On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $17,500.00 for State Farm Claim No. 13-1390-8F4.

57.     Upon information and belief, the Policy provides that loss will be payable 30 days following receipt of proof of loss.

58.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-13-1390-8F4 on before September 10, 2017.

59.      Pursuant to letter dated September 5, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8F4.

60.     Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8F4.

61.     Despite Connector's demands, State Farm has failed and refused to pay the amount due of $17,500.00 on State Farm Claim No. 13-1390-8F4.

62.     State Farm is liable to pay Connectors the amount due of $17,500.00 on State Farm Claim No. $17,500.00, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $17,500.00, with interest thereon at the rate of 5% annually from September 10, 2017 plus interest and costs.

<u>COUNT V</u>

[Breach of Contract - Connectors]

63.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

64.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and

commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

65.     Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

66.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Policy"). A copy of the Policy is in the exclusive possession of State Farm. A copy of a synopsis of the Policy is attached hereto as Exhibit "A". Under the terms of the Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

67.     On April 23, 2017, while the Policy was in full force, there occurred a theft at the Premises.

68.     As a result of the theft, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8K9 under which Connectors suffered loss and damage in the amount of $48,500.00.

69.      On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $48,500.00 minus a $5,000.00 deductible, for a total amount of $43,500.00 for State Farm Claim No. 13-1390-8K9.

70.     Upon information and belief, the Policy provides that loss will be payable 30 days following receipt of proof of loss.

71.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-1390-8K9 on before September 10, 2017.

72.    Pursuant to letter dated September 5, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8K9.

73.    Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8K9.

74.    Despite Connector's demands, State Farm has failed and refused to pay the amount due of $17,500.00 on State Farm Claim No. 13-1390-8K9.

75.    State Farm is liable to pay Connectors the amount due of $43,500.00 on State Farm Claim No. 13-1390-8K9, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $43,500.00, with interest thereon at the rate of 5% annually from September 10, 2017 plus interest and costs.

<u>COUNT VI</u>

[Breach of Contract - Connectors]

76.    At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

77.    At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  The president and principal of Connectors is Darryl Williams, who is African-American.

78.    Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

79. On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Policy"). A copy of the Policy is in the exclusive possession of State Farm. Under the terms of the Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

80. On February 4, 2017, while the Policy was in full force, there occurred a theft and vandalism at the Premises. As a result of the theft and vandalism, Connectors suffered loss and damage at the Premises under which copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights, smoke detectors, carbon monoxide detectors were stolen, second floor stairwell was vandalized, light bulbs were broken, back and front doors were broken down and torn off the hinges, door in the apartment bedroom was torn off the hinges, kitchen electric outlet was vandalized, 6 industrial heaters were stolen, cabinets were torn down and stolen, ceilings and hallway were vandalized, the windows on the second and third floor were broken, the walls were vandalized, the radiators on second and third floors were torn off, and holes were made in the walls on the second floor, resulting in loss and damage in the approximate amount of $120,000.00, and

81. Connectors filed a corresponding claim for theft and vandalism with State Farm to which State Farm assigned State Farm Claim No. 13-0790-6C6.

82. Pursuant to letter dated October 3, 2017 State Farm purported to deny State Farm Claim No. 13-0790-6C6.

83. Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-0790-6C6.

84. Despite Connector's demands, State Farm has failed and refused to pay the amount due of $120,000.00 on State Farm Claim No. 13-0790-6C6.

85. State Farm is liable to pay Connectors the amount due of $120,000.00 on State Farm Claim No. 13-0790-6C6, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $120,000.00, plus interest and costs.

<u>COUNT VII</u>

[Breach of Contract - Nash]

86. At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

87. Since July, 2014 Nash has been the title owner of the property commonly known as 12535 South Honore Street, Calumet Park, IL 60827 (the "Premises") in Cook County, Illinois and has resided there since January, 2015. Nash is African-American.

88. On or about August 1, 2017 State Farm issued to Nash a renewal certificate for Homeowners Policy No. 13-EP-C974-7 (the "Policy") covering the Premises and it was in full force and effect at all times pertinent hereto. A copy of the renewal certificate is attached hereto as Exhibit "B". A copy of the Policy is within the exclusive possession and control of State Farm.

89. On or about August 31, 2017 Nash listed the Premises for sale with Derrick Jackson II ("Jackson") at HomeSmart Connect, LLC ("HomeSmart"), neither of which are parties hereto.

90. Jackson and HomeSmart, in turn, arranged for showings of the Premises through Centralized Showing Service, also not a party hereto. Jackson and Homesmart set up a lockbox outside the Premises containing the keys to the Premises for licensed real estate agents to make

14

showings of the Premises to prospective buyers. At these times Nash would leave the Premises until the showing was complete.

91. On October 26, 2017, while the Policy was in full force and effect, Jackson and HomeSmart, through Centralized Showing Service set up a showing of the Premises for 3:30 p.m. to 4:00 p.m. that afternoon. On that occasion, a party or parties unknown came to the Premises for that showing, at which time Nash was not present at the Premises.

92. Upon Nash's return to the Premises later that evening Nash discovered a theft (the "theft") of personal property in the amount of $46,756.99. Nash immediately telephoned the Calumet Park Police Department, who sent an officer to the Premises.

93. As a result of the theft, Nash suffered loss and damage to personal property (the "Loss") at the Premises in the amount of $46,756.99.

94. Nash reported the Loss to State Farm on or about October 27, 2017. State Farm assigned Claim No.13-1903-D24 (the "Claim") to the Loss.

95. On February 13, 2018 Nash submitted a Sworn Statement in Proof of Loss in the amount of $46,756.99 to State Farm for State Farm Claim No. 13-1903-D24.

96. The Policy, Section I, Conditions, provides under "Loss Payment" that "Loss will be payable 30 days after we receive your proof of loss..."

97. Accordingly, payment from State Farm was due on State Farm Claim No. 13-1903-D24 on before March 15, 2018.

98. Pursuant to letter dated October 31, 2018 State Farm purported to deny State Farm Claim No. 13-1903-D24.

99. Nash has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-1903-D24.

100. Despite Nash's demands, State Farm has failed and refused to pay the amount due of $46,756.99 on State Farm Claim No. 13-1903-D24.

101. State Farm is liable to pay Connectors the amount due of $46,756.99 on State Farm Claim No. 13-1903-D24, with interest thereon at the rate of 5% annually from March 15, 2018, plus interest and costs.

WHEREFORE, Nash demands judgment against State Farm in the amount of $46,756.99, with interest thereon at the rate of 5% annually from March 15, 2018 plus interest and costs.

<u>COUNT VIII</u>

[Violations of 42 U.S.C. Sec. 1981 – Connectors]

102. Plaintiffs repeat and reallege paragraphs 6-85 of Counts I-VI of this Complaint as if fully set forth herein.

103. Tina Beavers ("Tina"), who is Caucasian, was the State Farm employee and claim adjuster assigned to the State Farm Claim No. 13-0670-8L5, State Farm Claim No. 13-1390-8S1, and State Farm Claim No. 13-1390-8N9, all of which arose out of the Weather Event as set forth in Counts I-III above.

104. Between January 10, 2017 and January 20, 2017 Darryl Williams, president and sole owner and operator of Connectors, and who is African-American, had several telephone conversations with Tina. Tina asked who was living at the Premises and how did the occurrence happen. Darryl Williams told her that Lynette Crawley left the bathroom window open because it was hot in her apartment. Tina requested the leases for all the tenants at the Premises and she said she wanted to speak to Lynette Crawley. Darryl Williams gave her the leases for all the tenants at the Premises on the date of the Weather Event; the leases contained the tenants'

16

contact information.  Darryl Williams also told her because the pipes burst the heat was not working and all the tenants had moved to hotels and were sending me the bills.  Darryl Williams told her he needed State Farm to reimburse Connectors for the lost rent.

105.    After trading telephone voicemails several times, on January 20, 2017 in the morning Tina returned Darryl Williams' telephone call and they had the following conversation:

Tina said, "Are you sure someone was living there (meaning Unit 2R)?

Darryl Williams said, "Yes.  Somebody's living there."

Tina said, "Well, I couldn't get a hold of her.  Do you have any other phone number for her?

Darryl Williams said, "No."

Tina said, "Well, you get a hold of her, if she really exists."

Darryl Williams said, "That's not my job to get a hold of her.  I gave you all the information."

Tina said, "You mean to tell me you people don't use Facebook and other social media and you don't know any of her homeys who could get in contact with her?"

 Darryl Williams said, "What the hell do you mean about 'you people'?"

Tina said, "We have a lot of fraud in your area."

Darryl Williams said, "What do you mean by 'your area?'"

Tina said, "South side of Chicago and you all's neighborhoods."

Darryl Williams said, "I thought we could live anywhere.  I didn't know we had neighborhoods."

Tina said, "Don't act like you don't know what I'm talking about. Just be truthful with me."

Darryl Williams said, "So you think black folks lie about everything anyway. You don't believe any damn thing we say anyway. I, frankly, think it's fuckin' offensive for you calling us 'you people" and I'm reporting this."

Tina laughed and said, "Do what you have to do."

106. The conduct of Tina Beavers set forth hereinabove was racially discriminatory.

107. State Farm is vicariously liable for the conduct of its employee, Tina Beavers, through the application of the doctrine of *respondeat superior.*

108. The racially discriminatory conduct of Tina Beavers set forth hereinabove is also a representative example of the treatment of claims by State Farm filed by African-Americans generally and by Connectors and Darryl Williams, in particular.

109. As set forth in Counts I-VI of the Complaint, above, Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim Nos. 13-0670-8L5, 13-1390-8S1, No. 13-1390-8N9, 13-1390-8F4, 13-1390-8K9, and 13-0790-6C6 (the "Claims").

110. But for the racially discriminatory conduct of State Farm, the Claims would have been paid in full.

111. State Farm, by and through its racially discriminatory conduct as set forth hereinabove, has intentionally discriminated against Connectors and Darryl Williams, the latter by virtue of his being the sole owner and operator of Connectors, in violation of 42 U.S.C. Sec. 1981. State Farm thereby prevented Connectors and Darryl Williams from enjoying the benefits, privileges, terms, and conditions of the contractual relationship between Connectors and State Farm under the Policy, in violation of 42 U.S.C. Sec. 1981.

112. During the period 2010-2016 a greater percentage of homeowners insurance claims in the zip code areas located in the City of Chicago comprised of a majority white population were honored and paid than were honored and paid in the zip code areas located in the City of Chicago comprised of a majority African-American population.

113. As a direct and proximate result of State Farm's racially discriminatory conduct as set forth hereinabove, Connectors and Darryl Williams has been damaged in the unpaid amounts of the Claims, totaling $422,231.29.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $422,231.29, with interest thereon at the rate of 5% plus interest and costs.

COUNT IX

[Violations of 42 U.S.C. Sec. 1981 – Nash]

114. Plaintiffs repeat and reallege paragraphs 86-101 of Count VII of this Complaint as if fully set forth herein.

115. As part of State Farm's processing of the Claim, Nash was contacted by attorney Peter Alfieri, attorney and agent for State Farm. Mr. Alfieri sent Nash correspondence dated April 10, 2018 requesting certain documentation, including bank statements and income tax returns, and requiring that Nash appear at an examination under oath at his office. Nash had never been asked by anyone for these documents before.

116. Nash had a numerous telephone and in-person conversations with Mr. Alfieri. Nash's first such conversation was on April 24, 2018 at an in-person meeting with Mr. Alfieri, who was in the reception area behind an open receptionist's window and Nash, who was in the lobby at Mr. Alfieri's office at 70 West Madison Street, Suite 2101, Chicago, Illinois 60602. At that time and place they had the following conversation:

19

Mr. Alfieri:  "Do you have the papers I requested?"

Antoine Nash:  "Yes, but I have a question. I said these are sensitive documents.  I will only allow you to look at them while I'm present.  We can go over them together."

Mr. Alfieri:  (Laughter) "Oh, so you're refusing to give me the documents."

Antoine Nash:  "No, I'm not refusing, but I don't feel comfortable leaving my personal information with you."

Mr. Alfieri:  (Laughter) "Okay, that's just perfect.  Your claim will be denied."

Antoine Nash:  "I was under the impression you were here to help, not harm.  Why do I have to turn over my personal records?"

Mr. Alfieri:  (Laughter) "Because you filed a bankruptcy.  We need to know your financial situation to see if you're in a financial hardship."

Antoine Nash:  "A financial hardship.  What does that mean?"

Mr. Alfieri:  "If you're in a financial hardship you'll commit fraud and file a false claim."

Antoine Nash:  "File a false claim? Commit fraud?  Just because I'm having a financial hardship doesn't mean I'll commit fraud or do something illegal."

Mr. Alfieri started to walk away from the receptionist's window back towards his offices.

Antoine Nash:  "What am I supposed to do now?"

Mr. Alfieri: "Are you refusing to give me these documents?"

Antoine Nash:  "No.  But I don't feel comfortable leaving them with you. Do I need to get a lawyer?"

Mr. Alfieri (as he was walking away):  "Do whatever you want to do."

117.    Nash had several other conversations between April 24, 2018 through the beginning of September 2018 with Mr. Alfieri during which Mr. Alfieri laughed and called Nash

20

a liar. During the course of these conversations Mr. Alfieri also said, "It's taking you six weeks to get the documents it would take me two days to get. It's laughable." Mr. Alfieri also said in reference to the requested documents, "I don't believe you have them. I don't believe they exist."

118. Nash gave Mr. Alfieri all the requested documents by July, 2018. Mr. Alfieri took Nash's examination under oath on August 8, 2018.

119. On October 31, 2018 State Farm denied Nash's Claim, *inter alia,* on the purported basis of fraud, exactly as Peter Alfieri predicted on April 24, 2018, six months previously and before either Peter Alfieri or State Farm had laid eyes on a single document produced by Nash or had taken Nash's examination under oath.

120. To the best of Nash's knowledge, State Farm never talked to Jackson, HomeSmart, the real estate agent that did the showing on October 26, 2017, or the Calumet Park Police Department in reference to the Loss.

121. The conduct of Peter Alfieri set forth hereinabove was racially discriminatory.

122. State Farm is vicariously liable for the conduct of its agent, Peter Alfieri, through the application of the doctrine of *respondeat superior.*

123. The racially discriminatory conduct of Peter Alfieri set forth hereinabove is also a representative example of the treatment of claims by State Farm filed by African-Americans generally and by Nash, in particular.

124. Other racially discriminatory conduct of State Farm included both the overly intrusive claims investigation of Nash in requiring his submission of bank statements and income tax returns and other sensitive documents, and the taking of his examination under oath. Upon

information and belief African-Americans are subject to these procedures at a much higher rate than whites.

125.    Further racially discriminatory conduct of State Farm included the failure to conduct reasonable investigations, given that State Farm upon information and belief conducted no investigation of the theft.  Upon information and belief African-Americans are subject to such failure to investigate at a much higher rate than whites.

126.    During the period 2010-2016 a greater percentage of homeowners insurance claims in the zip code area located in, for instance, the City of Chicago comprised of a majority white population were honored and paid than were honored and paid in the zip code area located in the City of Chicago comprised of a majority African-American population.

127.    As set forth in Count VII of the Complaint, above, Nash performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim Nos. 13-1903-D24

128.    But for the racially discriminatory conduct of State Farm, the Claim would have been paid in full.

129.    State Farm, by and through its racially discriminatory conduct as set forth hereinabove, has intentionally discriminated against Nash in violation of 42 U.S.C. Sec. 1981 and prevented Nash from enjoying the benefits, privileges, terms, and conditions of the contractual relationship between Nash and State Farm under the Policy in violation of 42 U.S.C. Sec. 1981.

130.    As a direct and proximate result of State Farm's racially discriminatory conduct as set forth hereinabove, Nash has been damaged in the unpaid amounts of the Claims, totaling $46,756.99.

22

WHEREFORE, Nash demands judgment against State Farm in the amount of $46,756.99, with interest thereon at the rate of 5% annually from March 15, 2018 plus interest and costs.

## COUNT X

[Class Action]

[Violations of 42 U.S.C. Sec. 1981 – Nash]

131.     Plaintiffs repeat and reallege paragraphs 1-130 of Counts I-IX of this Complaint as if fully set forth herein.

132.     Pursuant to Fed. R. Civ. P. 23 and 28 U.S.C. Sec. 1711 *et seq*. Plaintiffs bring this action on their own behalf and on behalf of a Class of similarly-situated persons injured by State Farm's racially discriminatory conduct in the handling of insurance claims.  The Class is defined as:

> All African-Americans in the State of Illinois who reside in majority African-American zip code areas and have submitted claims for property loss and damage to State Farm during the period 2015 to the present.

133.     Excluded from the Class is State Farm and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; government entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

134.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

135.     Numerosity – Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that individual joinder of all Class members is impracticable.  In Cook County, Illinois, alone,

the number of potential class members with unpaid claims at the end of calendar year 2015 is 3018, and the number for 2016 is 2688. The precise number of Class members and their addresses are unknown to Plaintiffs, but are readily available from the records of State Farm.

136. Commonality and Predominance - Fed. R. Civ. P. 23(a)(2). This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a. Whether State Farm subjected its insured to overly intrusive claims investigation requiring the submission of bank statements and income tax returns and other sensitive documents;

b. Whether State Farm subjected its insured to the taking of his examination under oath;

c. Whether State Farm refused to pay without conducting a reasonable investigation based on all available information as required by Section 154.6(h) of the Illinois Insurance Code, 215 ILCS 5/154.6(h);

d. Whether State Farm failed to provide its insured in the case of a denial of a claim a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial as required by Section 154.6(n) of the Illinois Insurance Code, 215 ILCS 5/154.6(n);

e. Whether State Farm conducted any acts constituting improper claims practices under Section 154.6 of the Illinois Insurance Code, 215 ILCS 5/154.6;

f. Whether State Farm accused its insured under a policy of homeowners' insurance of arson on the basis of a report stating that the cause of the fire was undetermined;

g. Whether State Farm sent the insured's claim to its Special Investigations Unit for resolution;

24

h.      Whether State Farm engaged an attorney to conduct an investigation of the insured's claim;

i.      Whether State Farm denied the insured's claim on the basis of the Concealment or Fraud provision in its policy;

j.      Whether State Farm denied the insured's claim on the basis of the Your Duties After Loss provision in its policy;

k.      Whether State Farm denied the insured's claim relying on the fact that the insured had filed for bankruptcy protection;

l.      Whether State Farm denied the insured's claim relying on the fact that the insured was suffering from a financial hardship;

m.      Whether State Farm sent its insured repeated requests for documents under the Your Duties After Loss provision in its policy even after its insured submitted to State Farm all the documents meeting the terms of the request that were in the insured's possession;

n.      Whether State Farm paid the insured's claim within 30 days of submission of the proof of loss; and

o.      Whether State Farm denied the insured's claim on the basis of a pretextual claim denial.

137.    Typical Claims - Fed. R. Civ. P. 23(a)(3).  The claims of Plaintiffs are typical of the Class.  The Plaintiffs or their principals are African-American.  Plaintiffs' claims with State Farm were either outright denied, left unpaid or only partially paid.  Plaintiffs' claims meet one or more of the following criteria:

a.      State Farm subjected the person insured to overly intrusive claims investigation requiring the submission of bank statements and income tax returns and other sensitive documents;

b.      State Farm subjected the person insured to the taking of his examination under oath;

c.      State Farm refused to pay without conducting  a reasonable investigation based on all available information as required by Section 154.6(h) of the Illinois Insurance Code, 215 ILCS 5/154.6(h);

d.      State Farm failed to provide its insured in the case of a denial of a claim a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial as required by Section 154.6(n) of the Illinois Insurance Code, 215 ILCS 5/154.6(n);

e.      State Farm conducted acts constituting improper claims practices under Section 154.6 of the Illinois Insurance Code, 215 ILCS 5/154.6;

f.      State Farm sent the insured's claim to its Special Investigations Unit for resolution;

g.      State Farm engaged an attorney to conduct an investigation of the insured's claim;

h.      State Farm denied the insured's claim on the purported basis of the Concealment or Fraud provision in its policy;

i.      State Farm denied the insured's claim on the purported basis of the Your Duties After Loss provision in its policy;

j.      State Farm denied the insured's claim relying on the fact that the insured had filed for bankruptcy protection;

26

k.    State Farm denied the insured's claim relying on the fact that the insured was suffering from a financial hardship;

l.    State Farm sent its insured repeated requests for documents under the Your Duties After Loss provision in its policy even after its insured submitted to State Farm all the documents meeting the terms of the request that were in the insured's possession;

m.    State Farm paid the insured's claim within 30 days of submission of the proof of loss; and

n.    State Farm denied the insured's claim on the basis of a pretextual claim denial.

138.    Adequacy of representation - Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; they have retained counsel competent and experienced in complex insurance litigation; and Plaintiffs intend to prosecute this action vigorously.  The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

139.    State Farm has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate declaratory, final injunctive and/or corresponding compensatory or declaratory relief with respect to the Class as a whole.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the other members of the Class, request that the Court orders relief and enter judgment against State Farm as follows:

a.    An order certifying the proposed Class and appointing Plaintiffs as Class Representatives and their counsel as Class Counsel;

b.    An order that State Farm be permanently enjoined from their racially discriminatory conduct as alleged herein;

c.      A judgment awarding Plaintiffs and the other Class members their actual damages in an amount according to proof for State Farm's unlawful conduct alleged under all claims herein, entitling Plaintiffs and the other Class members to their actual damages;

d.      A judgment awarding Plaintiffs and the other Class members statutory damages under 42 U.S.C. Sec. 1981 as a result of State Farm's wrongful conduct as alleged herein;

e.      A judgment awarding Plaintiffs and the other Class members punitive damages;

f.      Prejudgment and post-judgment interest;

g.      Attorney's fees pursuant to 42 U.S.C. Sec. 1988, and the expenses and the costs of this action; and

h.      All other and further relief as the Court deems necessary, just, and proper.

COUNT XI

[Violations of 215 ILCS 5/155 – Connectors]

140.    Plaintiffs repeat and reallege paragraphs 102-113 of Count VIII of this Complaint as if fully set forth herein.

141.    Although often requested to do so, State Farm has failed and refused, and still fails and refuses, to pay Connectors the unpaid amount of the Claims or any part of it, to Connector's damage in the amount of $422,231.29, with interest thereon, at the rate of 5% annually.

142.    215 ILCS 5/155 provides as follows:

> **Sec. 155.**  Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

28

> **(a)** 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> **(b)** $ 60,000;
>
> **(c)** the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.
>
> **(2)** Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

143.    State Farm's refusal to pay, as set forth above, is vexatious and unreasonable as proscribed by 215 ILCS 5/155.

144.    State Farm is liable to pay Connectors the loss and damage he sustained as a result of the Fire in the amount of at least $422,231.29, with interest thereon at the rate of 5%, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of at least $422,231.29, with interest thereon at the rate of 5%, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

## COUNT XII

### [Violations of 215 ILCS 5/155 – Nash]

145.    Plaintiffs repeat and reallege paragraphs 114-130 of Count IX of this Complaint as if fully set forth herein.

146.    Although often requested to do so, State Farm has failed and refused, and still fails and refuses, to pay Nash the unpaid amount of the Claim or any part of it, to Nash's damage

in the amount of $46,756.99, with interest thereon, at the rate of 5% annually from March 15, 2018.

147.    215 ILCS 5/155 provides as follows:

> **Sec. 155.**  Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>     **(a)**  60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>     **(b)**  $ 60,000;
>     **(c)**  the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.
>     **(2)**  Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

148.    State Farm's refusal to pay, as set forth above, is vexatious and unreasonable as proscribed by 215 ILCS 5/155.

149.    State Farm is liable to pay Nash the loss and damage he sustained as a result of the Fire in the amount of at least $46,756.99, with interest thereon at the rate of 5%, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

WHEREFORE, Nash demands judgment against State Farm in the amount of at least $46,756.99, with interest thereon at the rate of 5% from March 15, 2018, plus $60,000.00 plus

attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest

and costs.

PLAINTIFFS DEMAND TRIAL BY JURY.

Plaintiffs,
THE CONNECTORS REALTY GROUP
CORPORATION, DARRYL WILLIAMS
and ANTOINE NASH,


By: /s/ Kenneth Anspach
　　　　his attorney

KENNETH ANSPACH, ESQ.
ANSPACH LAW OFFICE
111 West Washington Street
Chicago, Illinois 60602
(312) 407-7888
ken@anspachlawoffice.com