UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CONNECTORS REALTY GROUP CORPORATION, DARRYL WILLIAMS, and ANTOINE NASH, | Case No. 19-cv-00743 |
| Plaintiffs, | Honorable Charles P. Kocoras |
| v. | |
| STATE FARM FIRE & CASUALTY COMPANY, | |
| Defendant. | |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS
<u>PLAINTIFFS' CLASS ACTION COMPLAINT</u>**

This case arises out of six insurance claims filed by Plaintiff The Connectors Realty Group Corporation ("Connectors") under its business owners insurance policy with Defendant State Farm Fire and Casualty Company ("State Farm"), and one insurance claim filed by Plaintiff Antoine Nash under his State Farm homeowners policy. Plaintiffs' Complaint (Dkt. 1) alleges that Connectors is a closely held Illinois corporation run solely by Darryl Williams, and that both Mr. Williams and Mr. Nash are African-American. (Compl. ¶¶ 7, 87.) Both Plaintiffs assert that State Farm denied their claims (or, in the case of Connectors, failed to pay the claims in full) because of race, in violation of 42 U.S.C. § 1981.[1] In addition, both Plaintiffs purport to assert state-law claims for breach of contract and for violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.[2]

As set forth below, the Complaint fails to state a claim under Section 1981 with respect to either Connectors or Mr. Nash because neither Plaintiff alleges *facts* demonstrating that his race (or, in the case of Connectors, the race of its owner) was the reason for State Farm's actions. In addition, the breach of contract claim asserted by Connectors in Count VI of the Complaint is barred by Connectors' failure to bring suit within the time period set forth in its policy. Plaintiffs' claims under Section 1981, as well as Count VI of the Complaint, should accordingly be dismissed with prejudice, and the remaining state-law claims should be dismissed, without prejudice, for lack of federal subject-matter jurisdiction.[3]

---

[1] Although not relevant to this motion, Plaintiffs purport to bring their Section 1981 claims on behalf of a putative class defined as "All African-Americans in the State of Illinois who reside in majority African-American zip code areas and have submitted claims for property loss and damage to State Farm during the period 2015 to the present." (Compl. ¶ 132.) State Farm does not, however, track the race or ethnicity of its insureds or claimants.

[2] Although the Complaint caption identifies Mr. Williams as a Plaintiff, the Complaint does not in fact purport to assert any claims on behalf of Mr. Williams.

[3] Under the rule followed by courts in this district, a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) extends the time for the defendant to respond to the claims not

## PLAINTIFFS' ALLEGATIONS AND CAUSES OF ACTION

*The Connectors Realty Group Policy and Insurance Claims*

Connectors is the named insured on a business owners insurance policy (the "Connectors Policy") issued by State Farm on or about January 4, 2017 for a mixed-use commercial and residential building that Connectors owns in Chicago. (Compl. ¶¶ 7-10; *see also* Certified Policy, attached as Exhibit 1.)[4] As alleged in the Complaint, Connectors proceeded to make six claims under this Policy over the next three and a half months. (*See id.* ¶¶ 11-12, 28-29, 41-42, 54-55, 67-68, 80-81.)

Less than a week after the Connectors Policy was first issued, the insured property allegedly sustained "loss and damage" as the result of an open window during "a below freezing weather event" on January 10, 2017. (*Id.* ¶¶ 11-12, 28-29, 41-42.) Connectors alleges that the pipes in the building "froze and burst," causing "damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank[.]" (*Id.* ¶ 12.) Connectors further alleges that water from the burst pipes damaged the building's boilers, and that a commercial unit in the building "experienced loss and damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines, [and] collapse of front of store[.]" (*Id.* ¶¶ 29, 42.)

Connectors filed three claims as a result of the losses allegedly caused by the open window and the weather event. (*Id.* ¶¶ 12-13, 29, 42.) State Farm assigned Claim No. 13-0670-8L5 to the

---

addressed in the motion. *See, e.g., Oil Express Nat'l, Inc. v. D'Alessandro,* 173 F.R.D. 219, 220 (N.D. Ill. 1997). Accordingly, State Farm is not at this time filing an answer to the counts not addressed by its motion, but instead has requested in the motion that any obligation to respond to those counts be deferred until the Court has ruled on the motion. (*See* Dkt. 12 ¶ 8.)

[4] As discussed further *infra* at 11, the Court may properly consider the Certified Policy without converting this motion to one for summary judgment because the Policy is referred to in and is central to Connectors' claims. *See Burke v. 401 N. Wabash Venture, LLC,* 714 F.3d 501, 505 (7th Cir. 2013).

alleged loss associated with the damaged "walls, floors, ceilings, drywall, electric, heating and case, pipelines, and water tank[.]" (*Id.* ¶¶ 12-13, 18.) State Farm assigned Claim No. 13-1390-8S1 to the alleged loss associated with the damaged boilers. (*Id.* ¶¶ 29-30.) And State Farm assigned Claim No. 13-190-8N9 to the alleged losses to the commercial unit. (*Id.* ¶¶ 42-43.)

On February 4, 2017, a theft and vandalism allegedly occurred at the insured premises. (*Id.* ¶ 80.) Connectors alleges that "copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights, smoke detectors, carbon monoxide detectors" and other items were stolen, and that the vandalism damaged a stairwell, interior and exterior doors, walls, ceilings, windows, kitchen cabinets, and radiators. (*Id.*) State Farm assigned Claim No. 13-0790-6C6 to the purported loss associated with the alleged theft and vandalism. (*Id.* ¶¶ 80-81.)

On April 17, 2017, the Connectors property was allegedly damaged by a hail event. State Farm assigned Claim No. 13-1390-8F4 to that claim. (*Id.* ¶¶ 54-55.) And on April 23, 2017, the Connectors property allegedly suffered further loss and damage due to another theft. (*Id.* ¶¶ 67-68.) State Farm assigned Claim No. 13-1390-8K9 to the April 23 theft claim.

***State Farm's Handling of Connectors' Insurance Claims***

Connectors alleges that Tina Beavers, a Caucasian woman, was the State Farm claims adjuster assigned to the three Connectors' claims arising out of the alleged January 10, 2017 weather event. (*Id.* ¶ 103.) The Complaint further alleges that, between January 10, 2017 and January 20, 2017, Ms. Beavers had several telephone conversations regarding those claims with Darryl Williams, the sole shareholder of Connectors. (*Id.* ¶ 104.) While the Complaint alleges that Mr. Williams is African-American, it does not allege that Ms. Beavers knew that Mr. Williams is African-American when she spoke with him over the phone, or that Mr. Williams and Ms. Beavers ever interacted in person. The Complaint nevertheless purports to quote, at length, a

3

telephone conversation between Mr. Williams and Ms. Beavers that allegedly occurred on January 20, 2017, during which Ms. Beavers allegedly made statements that the Complaint characterizes as "racially discriminatory." (*Id.* ¶¶ 105-106.) The Complaint contains no other allegations about Ms. Beavers or her role in State Farm's handling of Connectors' claims.

On August 4, 2017, Connectors submitted to State Farm a sworn proof of loss on Connectors' Claim No. 13-0670-8L5, claiming damage to the insured building in the amount of $86,155 and lost rental in the amount of $3,850. (*Id.* ¶ 16; *see also* Sworn Statement in Proof of Loss, attached as Exhibit 2.)[5] On August 11, 2017, Connectors submitted sworn proofs of loss on the other two claims arising out of the alleged January 10, 2017 weather event, claiming total damages of $166,955, as well as on the claims arising out of the alleged April 17, 2017 hail event and the alleged April 23, 2017 theft, for which Connectors claimed losses of $17,500 and $43,500, respectively. (Compl. ¶¶ 30, 43, 56, 69.) Connectors does not allege that it submitted a sworn proof of loss with respect to the alleged February 4, 2017 theft and vandalism, but alleges in the Complaint that the event resulted in loss and damage in the approximate amount of $120,000. (*Id.* ¶ 80.) In total, Connectors claimed over $450,000 damages on the six claims it filed in the three and a half months after the policy was issued on January 4, 2017. (*Id.* ¶¶ 12-13, 30, 43, 56, 69, 84.) According to the Cook County Recorder of Deeds, when Connectors purchased the insured property in April 2016 it paid Illinois transfer tax of $74, meaning that the value of the property at that time was $74,000. (*See* Warranty Deed, attached as Exhibit 3.)[6]

---

[5] The Court may consider this Sworn Statement in Proof of Loss without converting this motion to one for summary judgment because it is referenced in the Complaint and is central to Connectors' claims. *Burke*, 714 F.3d at 505.

[6] The Court may take judicial notice of this official government record. *See Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) (court ruling on a motion to dismiss may consider information that is properly subject to judicial notice); *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137, n.14 (7th Cir. 2008) (court may take judicial notice

Connectors admits that State Farm paid over $58,000 on its Claim No. 13-0670-8L5. (Compl. ¶¶ 14-15.) On October 3, 2017, State Farm issued a letter denying Claim No. 13-1390-8N9, for damage to the commercial unit arising out of the alleged January 10, 2017 weather event. (*Id.* ¶ 46; *see also* October 3, 2017 letter attached hereto as Exhibit 4.)[7] The denial letter was signed by State Farm Team Manager Roger Krupp (not Ms. Beavers), and explained the basis for the denial as follows:

> Our inspection determined the damages were the result of normal wear and tear and frozen water pipes. There was no evidence sufficient heat was maintained in the building and the damages are not the result of an accidental direct physical loss covered under the policy.

(Ex. 4 at 3.) With respect to the absence of evidence that sufficient heat was maintained in the building, on January 12, 2017, the City of Chicago filed a complaint against Connectors in the Circuit Court of Cook County, Municipal Department, alleging "[t]hat on 12/06/2016 and on each succeeding day thereafter . . . , the defendant(s) failed to comply with the Municipal Code of City of Chicago as follows: . . . Heat dwelling unit adequately from September 15th to June 1st." (*See* Complaint in *City of Chicago v. The Connectors Realty Group Corp., et al.*, Circuit Court of Cook County, Municipal Department, Case No. 17 M1 400127, attached as Exhibit 5, ¶ 3.)[8] The City of Chicago's complaint further alleged that "the Commissioner of the Department of Buildings, City of Chicago, has determined said building does not comply with the minimum standards of health and safety set forth in the Building Code." (*Id.* ¶ 7.)

---

of documents contained in the public record). Per 35 ILCS 200/31-10, the Illinois transfer tax is imposed at a rate of 50 cents for each $500 of value, so a transfer tax payment of $74 equates to a value of $74,000.

[7] The Court may consider both this denial letter and the other denial letters attached hereto because each is referenced in the Complaint and is central to Connectors' claims. *See Burke*, 714 F.3d at 505.

[8] The Court may take judicial notice of this Municipal Court proceeding. *See Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 867-68 (N.D. Ill. 2007).

5

State Farm also issued denial letters, signed by Mr. Krupp, on Connectors' two theft/vandalism claims and the April 17, 2017 hail event claim. (*Id.* ¶¶ 59, 72, 82; *see also* October 3, 2017 letters attached as Exhibits 6 through 8.) With respect to the hail event claim, State Farm explained that, "[o]ur inspection determined the damages were the result of normal wear and tear and repeated leakage and seepage from a roof leak and not a result of an accidental direct physical loss under the policy." (Ex. 6 at 3.) State Farm explained that it was denying Connectors' claim arising out of the alleged February 4, 2017 theft and vandalism because its inspection "determined the damages were the result of normal wear and tear and not a result of an accidental direct physical loss." (Ex. 7 at 3.) State Farm similarly denied Connectors' alleged April 23, 2017 theft claim because its inspection "determined the damages were the result of normal wear and tear, rodent and mold damage and not a result of an accidental direct physical loss covered under the policy." (Ex. 8 at 3.) According to the Complaint, State Farm has neither paid nor denied Connectors' claim for damage to the building's boilers arising out of the alleged January 10, 2017 weather event. (Compl. ¶ 31.)

***Connectors' Allegations of Racial Discrimination***

The Complaint alleges that, "[b]ut for the racially discriminatory conduct" of Ms. Beavers during her alleged January 20, 2017 telephone conversation with Mr. Williams, all six of Connectors' claims would have been paid in full. (*Id.* ¶¶ 105-107, 110.)[9] Connectors does not allege, however, that Ms. Beavers even knew when she allegedly spoke to Mr. Williams on January 20, 2017 that he is African American, much less that she made any reference during that alleged conversation to Mr. Williams' race. (*See id.* ¶ 105.) Connectors alleges only that Ms. Beavers

---

[9] State Farm denies that Ms. Beavers made the statements alleged, but assumes the truth of those allegations solely for purposes of this motion.

6

used the phrase "you people," and when Mr. Williams asked her what she meant by that she explained that State Farm has "a lot of fraud in your area" – that is, supposedly on the South side of Chicago. (*Id.*) And it was Mr. Williams, not Ms. Beavers, who allegedly referred to "black folks" toward the end of that phone call. (*Id.*)

But even putting aside the question of whether the alleged statements attributed to Ms. Beavers were "racially discriminatory" or otherwise amount to actionable conduct, the Complaint contains no factual allegations to support the conclusion that "but for" Ms. Beavers' alleged conduct, State Farm would have paid all of Connectors' claims in full. Connectors does not allege that Ms. Beavers was involved in any way in the handling of its theft/vandalism claims or the claim arising out of the alleged April 17, 2017 hail event. With respect to the three claims arising out of the alleged January 10, 2017 weather event, Connectors admits that State Farm paid a substantial portion – over $58,000 – of Connectors' claimed damages on Claim No. 13-0670-8L5. (*Id.* ¶¶ 14-15.) Connectors does not allege that Ms. Beavers had any role in State Farm's decision not to pay the entire amount sought by Connectors on that claim. Nor does Connectors allege that Ms. Beavers had any role in State Farm's decision, several months after Ms. Beavers' alleged conversation with Mr. Williams, to deny (or not pay) its claims for damage to the building's commercial unit and the boilers arising out of the alleged January 10, 2017 weather event. And all of the denial letters with respect to Connectors' claims were signed by Roger Krupp, not by Ms. Beavers. (*See* Exs. 4, 6 through 8.)

***Antoine Nash's Policy and Insurance Claim***

Plaintiff Antoine Nash is the named insured on a homeowners insurance policy (the "Nash Policy") issued by State Farm for his residential property located in Chicago. (*Id.* ¶¶ 87-88.) On August 31, 2017, Mr. Nash listed the property for sale with HomeSmart Connect, LLC

7

("HomeSmart"), which "set up a lockbox outside the Premises containing the keys to the Premises for licensed real estate agents to make showings of the premises to prospective buyers." (*Id.* ¶¶ 89-90.) On October 26, 2017, according to the Complaint, a theft occurred during such a showing. (*Id.* ¶¶ 91-92.) Mr. Nash reported the loss to State Farm the next day. (*Id.* ¶ 94.) On February 13, 2018, Mr. Nash submitted a Sworn Statement in Proof of Loss claiming losses from the alleged theft in the amount of $46,757. (*Id.* ¶ 95.)

***State Farm's Handling of Mr. Nash's Theft Claim***

The Complaint alleges that, as part of State Farm's processing of his claim, Mr. Nash was contacted by Peter Alfieri, an attorney representing State Farm. (*Id.* ¶ 115.) On April 10, 2018, Mr. Alfieri sent Mr. Nash correspondence requesting certain documentation, including bank statements and income tax returns, and requiring that Mr. Nash appear at Mr. Alfieri's office for an examination under oath. (*Id.*) Mr. Nash alleges that, on April 24, 2018, he had an in-person conversation with Mr. Alfieri at Mr. Alfieri's office, during which they discussed Mr. Alfieri's request for Mr. Nash's financial documents. (*Id.* ¶ 116.) According to the Complaint, Mr. Nash expressed unwillingness to leave the documents with Mr. Alfieri, and asked why he was being asked to "turn over" his "personal records." (*Id.*) Mr. Alfieri allegedly responded, "[b]ecause you filed a bankruptcy. We need to know your financial situation to see if you're in a financial hardship." (*Id.*) The Complaint further alleges that Mr. Alfieri stated, "[i]f you're in a financial hardship you'll commit fraud and file a false claim." (*Id.*) Mr. Nash allegedly reiterated that he did not "feel comfortable" leaving he documents with Mr. Alfieri, and asked whether he needed "to get a lawyer." (*Id.*) Mr. Alfieri allegedly responded, "[d]o whatever you want to do," and

8

walked away. (*Id.*) Mr. Nash alleges that in follow up conversations, Mr. Alfieri "laughed" and "called [Mr.] Nash a liar." (*Id.* ¶ 117.)[10]

Nearly four months after the initial request, Mr. Alfieri finally received all the required documents from Nash and conducted Nash's examination under oath. (*Id.* ¶¶ 115, 118.) On October 31, 2018, State Farm sent Mr. Nash a letter denying his claim "because you failed to establish you suffered a loss in any amount." (*See* October 31, 2018 letter attached as Exhibit 9.)[11] The letter also quoted the "Concealment or Fraud" provision of the Nash Policy. (*Id.*)

***Mr. Nash's Allegations of Racial Discrimination***

Although Mr. Nash alleges that "[t]he conduct of Peter Alfieri," as set forth in the Complaint, "was racially discriminatory" (*id.* ¶ 121), nothing in the Complaint's allegations concerning Mr. Alfieri relates in any way to Mr. Nash's race. Even taking Mr. Nash's allegations as true, they establish only that State Farm (through Mr. Alfieri) requested that Mr. Nash provide certain financial documents and appear for an examination under oath because Mr. Nash had filed for bankruptcy. (*Id.* ¶ 116.) Mr. Nash does not deny (and could not truthfully do so) that he in fact filed a bankruptcy petition on December 11, 2017. (*See* Voluntary Petition for Individuals Filing for Bankruptcy, N.D. Ill. Bankr. Case No. 17-36604, attached hereto as Exhibit 10.)[12]

Mr. Nash further alleges that State Farm engaged in what he characterizes as "[o]ther racially discriminatory conduct," including requiring him to submit bank statements, income tax

---

[10] State Farm denies Mr. Alfieri made the statements alleged, but assumes their truth solely for purposes of this motion.

[11] The Court may consider this denial letter in ruling on this motion to dismiss because it is referenced in the Complaint (*see* Compl. ¶ 119) and is central to Mr. Nash's claims. *Burke*, 714 F.3d at 505.

[12] The Court may take judicial notice of Mr. Nash's bankruptcy petition. *See Limestone Dev. Corp.*, 473 F. Supp. 2d at 867-68.

9

returns and "other sensitive documents," and "the taking of his examination under oath." (*Id.* ¶ 124.) The Complaint alleges "[u]pon information and belief," and without providing any specifics, that "African-Americans are subject to these procedures at a much higher rate than whites." (*Id.*) The Complaint similarly alleges on information and belief that State Farm "conducted no investigation of the theft," which the Complaint also characterizes as "racially discriminatory conduct," and further alleges, again on information and belief and without specifics, that "African-Americans are subject to such failure to investigate at a much higher rate than whites." (*Id.* ¶ 125.) The Complaint asserts that, "[b]ut for" State Farm's purported "racially discriminatory conduct," Mr. Nash's claim would have been paid in full. (*Id.* ¶ 128.)

***Plaintiffs' Asserted Causes of Action***

Based on the foregoing allegations, both Plaintiffs assert claims for breach of contract (Counts I – VII), for violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155 (Counts XI and XII), and for alleged racial discrimination in violation of 42 U.S.C. § 1981 (Counts VIII and IX). As set forth below, neither Connectors nor Mr. Nash states a claim under Section 1981, and those claims should accordingly be dismissed with prejudice. In addition, Connectors' claim for breach of contract based on its February 4, 2017 theft and vandalism claim (Count VI) is time-barred, and accordingly should also be dismissed with prejudice. Finally, because Plaintiffs' Section 1981 claims are the only basis for this Court's subject-matter jurisdiction, if the Court grants State Farm's motion and dismisses those claims it should dismiss any remaining state-law claims without prejudice for lack of subject-matter jurisdiction.

## LEGAL STANDARD

A complaint fails to state a claim under Federal Rules of Civil Procedure 8 and 12(b)(6) if it does not contain factual allegations sufficient "to raise a right to relief above the speculative

level" or does not "state a claim to relief that is plausible on its face." *Bell v. Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In evaluating the sufficiency of a complaint, the court should disregard conclusory allegations, including "legal conclusions couched as factual allegations." *Gammons v. Crown Castle USA, Inc.,* No. 15-cv-02310, 2016 WL 1270453, at *2 (N.D. Ill. Mar. 31, 2016). The court should also disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[,]" *Iqbal,* 556 U.S. at 678, and "naked assertion[s]" devoid of "further factual enhancement[.]" *Twombly*, 550 U.S. at 557. Ultimately, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

In addition, in ruling on a motion to dismiss the Court may consider documents attached to the complaint, documents central to the complaint and referred to in it, and information that is properly subject to judicial notice. *Amin Ijbara Equity Corp.,* 860 F.3d at 493 n.2; *Burke*, 714 F.3d at 505. Documents of which the Court may properly take judicial notice include documents contained in the public record, including proceedings in other courts. *520 S. Mich. Ave. Assocs., Ltd.*, 549 F.3d at 1137, n.14; *Limestone Dev. Corp.*, 473 F. Supp. 2d at 867-68.

## ARGUMENT

**I.     Plaintiffs Fail to State Claims Under Section 1981.**

Section 1981 protects the right of all people "to make and enforce contracts" regardless of race. *Carter v. Chi. State Univ.,* 778 F.3d 651, 657 (7th Cir. 2015) (quoting 42 U.S.C. § 1981). To establish a claim under Section 1981, plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., the making

and enforcing of a contract). *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir. 1996). Thus, to successfully plead a Section 1981 claim, plaintiffs "must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus." *Mears v. Allstate Indem. Co.*, 336 F. Supp. 3d 141, 150 (E.D.N.Y. 2018) (internal quotation marks omitted); *see also Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) (holding that to state a claim under Section 1981 a plaintiff "must allege some facts that demonstrate that his race was the reason" for the defendant's actions); *Rainey v. United Parcel Serv.*, No. 10 C 4669, 2013 WL 1181485, at *4 (N.D. Ill. Mar. 21, 2013) (same). As a recent opinion by another court in this district put it, "[p]laintiffs must connect the dots between the alleged cause (their race) and the alleged effect (the discriminatory conduct)." *Linda Constr. Inc. v. City of Chi.,* Case No. 15 C 8714, 2016 WL 4429893, at *2 (N.D. Ill. Aug. 22, 2016).

The Complaint here fails to allege sufficient facts to plead a Section 1981 claim as to either Mr. Nash or Connectors. With respect to Mr. Nash, the Complaint fails to allege any facts that even suggest the existence of racial animus, much less demonstrate that his race was the reason State Farm denied his claim. Mr. Nash alleges that State Farm's outside counsel, Mr. Alfieri, laughed at Nash, called him a liar, told him his claim would be denied for failure to provide documentation, and opined that if Nash was in a financial hardship that he would commit fraud and file a false claim. (*See* Compl. ¶¶ 116-117.) None of those alleged comments concerns Mr. Nash's race. And Mr. Nash's conclusory, information and belief allegations that State Farm both subjects African-Americans to overly intrusive investigations and fails to conduct reasonable investigations of their claims "at a much higher rate than whites" (*id.* ¶¶ 124-125) are plainly insufficient to "connect the dots" between Mr. Nash's race and the denial of his claim. *See Linda Constr. Inc.,* 2016 WL 4429893, at *2 (holding that plaintiffs cannot survive a motion to dismiss

by simply tacking "because of plaintiffs' race" on to their allegations or alleging that defendants "treated plaintiffs differently than whites, on the basis of racial animus"); *Mears,* 336 F. Supp. 3d at 150 (dismissing Section 1981 claim where plaintiff's complaint consisted of "strictly conclusory allegations amount[ing] to rank speculation, with no specific factual instances, details or supporting information"). Count IX of the Complaint fails to state a claim for violation of Section 1981 and should be dismissed.

Plaintiffs likewise fail to connect the dots between Mr. Williams' race and State Farm's handling of Connectors' claims. As previously noted, the Complaint does not allege that Ms. Beavers, who only communicated with Mr. Williams by telephone, was aware of Mr. Williams' race, and the statements that the Complaint attributes to Ms. Beavers do not in fact reference Mr. Williams' race. (*See* Compl. ¶¶ 104-105.) But even assuming that Ms. Beavers' alleged statements suggest racial animus on her part, those allegations are insufficient to demonstrate that Williams' race was the reason State Farm denied certain of Connectors' claims. For one thing, such an inference is contradicted by the fact that State Farm *paid* nearly $60,000 to Connectors for its claimed losses arising out of the alleged January 10, 2017 weather event. (*See id.* ¶¶ 14-15.) The only reasonable inference that can be drawn from this critical fact is that State Farm investigated Connectors' claims, evaluated them, and paid or denied them based on the results of its investigations, not because of Mr. Williams' race. *See e.g., Hu v. Huey,* No. 07 C 3822, 2008 WL 2797000, at *8 (N.D. Ill. July 18, 2008) (holding that contradictory and conclusory allegations "do not pass the speculative test set forth in *Twombly*"). Moreover, the Complaint contains no allegations that link the statements allegedly made by Ms. Beavers in January of 2017 to State Farm's decisions, months later, to pay or deny Connectors' claims. The Complaint does not allege that Ms. Beavers had any role in those decisions – indeed, it does not allege that she was ever even

13

assigned to three of the denied claims. And the denial letters that Connectors references in the Complaint were signed by Roger Krupp, not Ms. Beavers. Count VIII of the Complaint, like Count IX, fails to state a claim under Section 1981, and should likewise be dismissed.

## II. Connectors' Breach of Contract Claim in Count VI is Time-Barred.

The Connectors Policy provides that no legal action may be brought against State Farm under the Policy unless "[t]he action is brought within 2 years after the date on which the accidental direct physical loss occurred." (*See* Ex. 1, State Farm Bus. Owners Coverage Form (CMP 4100), at 18.) "Compliance with the suit limitation provision of the policy is a condition precedent to recovery under a policy." *Cramer v. Ins. Exch. Agency,* 675 N.E.2d 897, 905 (Ill. 1996). The breach of contract claim asserted by Connectors in Count VI of the Complaint alleges that the claimed loss occurred on February 4, 2017. (Compl. ¶ 80.) Thus, to be timely, any claim by Connectors that State Farm breached the Connectors Policy with respect to the February 4, 2017 theft claim had to be brought by February 4, 2019. Connectors did not file its Complaint, however, until February 5, 2019 – the day after the time period provided in the Connectors Policy had run.

Furthermore, while Connectors alleges that it submitted sworn statements of loss with respect to each of the other five claims it made under the Connectors Policy (*see id.* ¶¶ 16, 30, 43, 56, and 69), the Complaint includes no such allegation as to the February 4, 2017 theft claim addressed in Count VI. Thus, Section 143.1 of the Illinois Insurance Code, which tolls the running of an insurance policy's suit limitation period "from the date poof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part," 215 ILCS 5/143.1, has no application here. *See Amber Grove Homeowners Ass'n v. QBE Ins. Corp.,* No. 12 C 9142, 2013 WL 1679425, at *4, 6 (N.D. Ill. Apr. 17, 2013) (holding that Section 143.1 tolling did not apply when plaintiff failed to submit sworn proof of loss and dismissing breach of contract claim

14

as time barred). Accordingly, the claim asserted by Connectors in Count VI of the Complaint is barred by the suit limitation provision and should be dismissed.

### III. Plaintiffs' State-Law Claims Should Be Dismissed for Lack of Subject Matter Jurisdiction.

As Plaintiffs' Complaint recognizes, the basis for federal subject-matter jurisdiction over this case is Plaintiffs' assertion of claims under 42 U.S.C. § 1981. (*See* Compl. ¶ 3.) There is no independent basis for federal jurisdiction over Plaintiffs' state-law claims, as there is no diversity of citizenship between Plaintiffs and State Farm. Accordingly, if the Court grants State Farm's motion and dismisses Plaintiffs' Section 1981 claims, it should decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims, and dismiss those claims without prejudice. 28 U.S.C. § 1367(c)(3) (district courts may decline to exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction"); *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims[.]") (internal quotations and citation omitted).

### CONCLUSION

For the foregoing reasons, State Farm respectfully requests that the Court dismiss Connectors' breach of contract claim (Count VI) and both Plaintiffs' Section 1981 claims (Counts VIII and IX) with prejudice. In addition, because the Section 1981 claims provide the sole basis for federal subject-matter jurisdiction over this case, State Farm requests that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims and dismiss those claims without prejudice.

Dated: April 8, 2019                          Respectfully submitted,

/s/ Sondra A. Hemeryck
Sondra A. Hemeryck
Mariangela M. Seale
Sarah E. Finch
RILEY SAFER HOLMES & CANCILA LLP
Three First National Plaza
70 W. Madison St., Suite 2900
Chicago, IL 60602
Tel: 312-471-8700
Fax: 312-471-8701
shemeryck@rshc-law.com
mseale@rshc-law.com
sfinch@rshc-law.com

*Attorneys for Defendant State Farm Fire & Casualty*

## **CERTIFICATE OF SERVICE**

I, undersigned counsel, certify that on April 8, 2019, I filed a copy of the foregoing document electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

/s/ Sondra A. Hemeryck