IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CONNECTORS REALTY GROUP CORPORATION, DARRYL WILLIAMS and ANTOINE NASH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No.     19-cv-00743 |
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) | Honorable Charles P. Kocoras |
| Defendant. | ) ) ) | |

<u>AMENDED CLASS ACTION COMPLAINT (corrected)</u>

Plaintiff, THE CONNECTORS REALTY GROUP CORPORATION ("Connectors"),

DARRYL WILLIAMS ("Darryl Williams") and ANTOINE NASH ("Antoine Nash" or "Nash")

(collectively "Plaintiffs"), by their attorney, Kenneth Anspach, for their Amended Complaint

against Defendant, STATE FARM FIRE AND CASUALTY COMPANY ("State Farm"),

alleges and avers as follows:

JURISDICTION AND VENUE

1.      Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1981, 1982 and 1988, Title

VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. § 3604(a) and (b) and

the Fourteenth Amendment to the United States Constitution.

2.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331

and 1343(a)(3).

3.      Venue is proper pursuant to 28 U.S.C § 1391(b) because a substantial part of the

events giving rise to the claims herein occurred in this district.

COUNT I

[Violations of Fair Housing Act, 42 U.S.C. § 3604(a) and (b) – Connectors]

4.      At all times pertinent hereto, State Farm was an insurance company authorized to

do business, and doing business, in the State of Illinois.

5.      State Farm maintains data regarding loss experience on its homeowners and small

business insurance organized by ZIP Code for the City of Chicago, Illinois.  State Farm shields

this data from the public, and stores it in secured areas and by electronic means.  State Farm

considers this data a trade secret and has gone to great lengths to protect and safeguard its secret

status.

6.      The vast majority of ZIP Codes are heavily predominated by only one racial

group.

7.      State Farm utilizes this ZIP Code data to "redline" by ZIP Code homeowners and

small business insurance claims by treating as presumptively fraudulent claims from

policyholders residing in black-majority ZIP Codes on the South and West Sides of the City of

Chicago by processing such claims as presumed fraudulent through its Special Investigations

Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims.

8. State Farm's treatment of such claims from black-majority ZIP Codes on the South and West Sides of the City of Chicago as presumptively fraudulent results in State Farm engaging racial discrimination by treating insurance claims filed by blacks unequally from those filed by whites due to the race of the claimant.

9. Representative of State Farm's racially discriminatory treatment of homeowners and small business insurance claims in the City of Chicago is State Farm's treatment of claims filed by Plaintiffs.

10. At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate.

11. Darryl Williams, a former Deputy U.S. Marshall and a public safety officer, is African-American, a member of a racial minority, and the sole shareholder and owner of Connectors. Darryl Williams is the person through whom all communications and transactions for Connectors, his wholly-owned corporation, were carried on with State Farm.

12. Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement. Connectors purchased the Premises in April, 2016 for the approximate sum of $75,000, and expended an additional $75,000 in repairs and maintenance upon purchase.

13.    At some time previous to January 5, 2017, Connectors contacted State Farm for property insurance coverage at the Premises and for other buildings owned by Connectors.

14.    Pursuant to an underwriting investigation by State Farm that occurred immediately prior to issuance of an insurance policy for the Premises, State Farm inspected the Premises and determined that the Premises was fully occupied, that all of the operating systems on the Premises, including heat, electrical, plumbing and boilers, were fully operational, that the Premises met State Farm's standards for insurability, and that the replacement value of the Premises was in excess of $800,000.00. For the stated reason of saving on premium cost, State Farm recommended to Connectors that the Premises be insured for a replacement value amount of $400,000.00, instead of $800,000.00.

15.    On or about January 5, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Connectors Policy") for property and liability insurance on the Premises. A certified copy of the Policy is attached hereto as Exhibit "A".

16.    Under the terms of the Connectors Policy, State Farm insured Connectors against loss and damage to the Premises, including, *inter alia,* water damage, equipment breakdown, theft and vandalism in the amount of $400,000.00, plus loss of income for one year from date of loss, with a deductible in the amount of $2,500.00.

17. On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois. One of the tenants at the Premises, Lynette Crawley, left a bathroom window open in Unit 2R of the Premises during this Weather Event.

18.    As a result of the Weather Event and the Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which

4

State Farm assigned Claim No. 13-0670-8L5, under which the pipes froze and burst, causing damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank, resulting in loss and damage in the amount of $86,155.00.

19.     Claim No. 13-0670-8L5 also included Connectors' claim for loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00.

20.     On August 4, 2017 Connectors submitted a Sworn Statement in Proof of Loss ("Proof of Loss") under State Farm Claim No. 13-0670-8L5 in the amount of $86,155.00 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank and loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00 for loss of rental income, for a total amount claimed under the Proof of Loss for State Farm Claim No. 13-0670-8L5 in the amount of $132,355.00.

21.     As an additional result of the Weather Event and the Lynette Crawley's action, the Premises suffered additional loss and damage, to which State Farm assigned a second claim number, *i.e.,* Claim No. 13-1390-8S1, and an additional deductible, under which the boilers were damaged by water from the burst pipes, causing the boilers to be submerged in water, rusted and inoperable, all of which resulted in loss and damage in the amount of $60,000.00.

22.     Connectors submitted a Sworn Statement in Proof of Loss in the amount of $60,000.00 minus a $5,000.00 deductible, for a total amount of $55,000.00 for State Farm Claim No. 13-1390-8S1, receipt of which was acknowledged by State Farm on September 5, 2017.

23.     State Farm Claim No. 13-1390-8S1 has neither been paid to Connectors nor denied by State Farm.

24.     As a further result of the Weather Event and the Lynette Crawley's action, the Premises suffered additional loss and damage, to which State Farm assigned a third claim

number, *i.e.,* Claim No. 13-1390-8N9, and an additional deductible, under which a commercial unit experienced loss and damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines, collapse of front of store, electric lines being down and hanging, and gas lines being down, all of which resulted in loss and damage in the amount of $116,955.00.

25.     On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $116,955.00 minus a $5,000.00 deductible, for a total amount of $111,955.00, for State Farm Claim No. 13-1390-8N9.

26.     Because the boilers were inoperable as a result of the Weather Event and Lynette Crawley's action, and because State Farm failed and refused to repair or replace the boilers, and because all the residents (who were also all African-American) except for one family that failed to pay rent vacated the Premises and stayed in a hotel at Connectors' expense, the Premises was almost entirely unoccupied except for the one remaining family that failed to pay rent and two storefronts.

27.     Following Connectors' eviction of that one remaining family, the Premises laid vacant and was ripe for theft and vandalism.

28.     On February 4, 2017, while the Connectors Policy was in full force, force and while the Premises laid vacant as a result of the Weather Event, Lynette Crawley's action and State Farm's failure to pay the above claims, there occurred a theft and vandalism at the Premises to which State Farm assigned a fourth claim number, *i.e.,* Claim No. 13-0790-6C6, and an additional deductible.  As a result of the theft and vandalism, Connectors suffered loss and damage at the Premises under which copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights, smoke detectors, carbon monoxide detectors were stolen, second floor stairwell was vandalized, light bulbs were broken, back and front doors were broken down and

torn off the hinges, the door in the apartment bedroom was torn off the hinges, a kitchen electric outlet was vandalized, 6 industrial heaters were stolen, cabinets were torn down and stolen, the ceilings and hallway were vandalized, the windows on the second and third floor were broken, the walls were vandalized, the radiators on second and third floors were torn off, and holes were made in the walls on the second floor, resulting in loss and damage in the approximate amount of $120,000.00.

29.     On April 23, 2017, while the Connectors Policy was in full force and while the Premises laid vacant as a result of the Weather Event, Lynette Crawley's action and State Farm's failure to pay the above claims, there occurred a theft at the Premises.  As a result of the theft, the Premises suffered loss and damage, to which State Farm assigned a fifth claim number, *i.e.,* Claim No. 13-1390-8K9, and an additional deductible, under which Connectors suffered loss and damage in the amount of $48,500.00.

30.      On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $48,500.00 minus a $5,000.00 deductible, for a total amount of $43,500.00 for State Farm Claim No. 13-1390-8K9.

31.     On April 17, 2017, while the Connectors Policy was in full force, there occurred a hail event (the "Hail Event") in Chicago, Illinois.

32.     As a result of the Hail Event, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8F4 under which the third floor roof had a hole caused, ceiling, drywall were damaged which resulted in loss and damage in the amount of $17,500.00.

33.      On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $17,500.00 for State Farm Claim No. 13-1390-8F4.

7

34.    Claim No. 13-0670-8L5, Claim No. 13-1390-8S1, Claim No. 13-1390-8N9, Claim No. 13-0790-6C6, Claim No. 13-1390-8K9 and Claim No. 13-1390-8F4 are hereinafter collectively referred to as the "Connectors' Claims."

35.    Tina Beavers, who is Caucasian, was the State Farm employee and claim adjuster assigned to State Farm Claims No. 13-0670-8L5, State Farm Claim No. 13-1390-8S1 and State Farm Claim No. 13-1390-8N9, all of which arose out of the Weather Event as set forth above.

36.    Between January 10, 2017 and January 20, 2017 Darryl Williams had several telephone conversations with Tina Beavers. During these conversations Tina Beavers asked who was living at the Premises and how the Weather Event and resulting losses happened. Darryl Williams told her that Lynette Crawley left the bathroom window open because it was hot in her apartment. Tina Beavers requested the leases for all the tenants at the Premises and she said she wanted to speak to Lynette Crawley. Darryl Williams gave her the leases for all the tenants at the Premises on the date of the Weather Event; the leases contained the tenants' contact information. Darryl Williams also told her that because the pipes burst the heat was not working and all the tenants had moved to hotels and were sending him the bills. Darryl Williams told her he needed State Farm to reimburse Connectors *inter alia* for the lost rent.

37.    After trading telephone voicemails several times, on January 20, 2017 in the morning Tina Beavers returned Darryl Williams' telephone call and they had the following conversation:

Tina Beavers said, "Are you sure someone was living there (meaning Unit 2R)?

Darryl Williams said, "Yes. Somebody's living there."

8

Tina Beavers said, "Well, I couldn't get a hold of her. Do you have any other phone number for her?"

Darryl Williams said, "No."

Tina Beavers said, "Well, you get a hold of her, if she really exists."

Darryl Williams said, "That's not my job to get a hold of her. I gave you all the information."

Tina Beavers said, "You mean to tell me you people don't use Facebook and other social media and you don't know any of her homeys who could get in contact with her?"

Darryl Williams said, "What the hell do you mean about 'you people'?"

Tina Beavers said, "We have a lot of fraud in your area."

Darryl Williams said, "What do you mean by 'your area?'"

Tina Beavers said, "South Side of Chicago and you all's neighborhoods."

Darryl Williams said, "I thought we could live anywhere. I didn't know we had neighborhoods."

Tina Beavers said, "Don't act like you don't know what I'm talking about. Just be truthful with me."

Darryl Williams said, "So you think black folks lie about everything anyway. You don't believe any damn thing we say anyway. I, frankly, think it's fuckin' offensive for you calling us 'you people' and I'm reporting this."

Tina Beavers laughed and said, "Do what you have to do."

38. Tina Beavers' statement that there is "a lot of fraud" in the "South Side of Chicago and you all's neighborhoods," is an accurate description of State Farm's view and treatment of claims from black majority ZIP Codes in the City of Chicago. As set forth above

9

State Farm treats as presumptively fraudulent claims from policyholders residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims.

39.     State Farm's targeting of such claims by ZIP Code and its intention thereby to discriminate on the basis of race in its treatment of claims of policyholders from black-majority ZIP Codes is confirmed by Tina Beavers' use of racial epithets in describing African-Americans as "homeys" and "you people," and by describing where African-Americans reside as "your areas" and "you all's neighborhoods."

40.     State Farm's targeting of such claims by ZIP Code and its intention thereby to discriminate on the basis of race in its treatment of claims of policyholders from black-majority ZIP Codes in the City of Chicago is also confirmed by an analysis of performed by R. Hasegawa and A. Wyner, The Wharton School of the University of Pennsylvania, on statistical evidence from the Illinois Department of Insurance.  They conclude based upon an analysis that the odds that a property insurance claim remains outstanding and unpaid at the end of the calendar year in a ZIP Code with a 75% black population is 23% higher than a claim made in a ZIP Code with a 25% black population with comparable median incomes.   While this analysis was performed on ZIP Code-level data on property insurance claims made upon all companies authorized to write homeowner's insurance in the State of Illinois, State Farm has the largest market share of the homeowner's insurance market in the City of Chicago.

41.     Pursuant to its practice of treating claims from black majority ZIP Codes as presumptively fraudulent, State Farm, did, in fact, process all of Connectors' claims as presumptively fraudulent through the Special Investigations Unit.  The Special Investigation Unit's official responsibilities are limited to investigation of purported claims of fraud.  In other words, instead of investigating the Connectors' Claims, State Farm initiated an investigation of Darryl Williams and Connectors for insurance fraud.

42.     Immediately following his January 20, 2017 telephone conversation with Tina Beavers, Darryl Williams did complain to State Farm regarding the aforesaid conduct of Tina Beavers and requested that another adjuster be assigned to those Connectors' Claims to which she was assigned.

43.     As a result of Darryl Williams' complaint, sometime in February, 2017 he received a telephone call from Special Investigations Unit Team Leader Roger Krupp. At that time Roger Krupp stated in reference to Darryl Williams' conversation with Tina Beavers, "We don't practice that way at State Farm.  I apologize for anything she said that you were offended by, and she will no longer be your claims adjuster."

44.     Despite Roger Krupp's promise to reassign the Connectors' Claims, when Darryl Williams telephoned State Farm several times during February-April, 2017 regarding the status of Connectors' Claims and asked to speak to a new claims representative, his calls were always routed to Tina Beavers.  Tina Beavers said at that time, "You're stuck with me.  I'm the person; that's it."

45.     Pursuant to letter from Tina Beavers dated March 24, 2017, State Farm denied Claim No. 13-0670-8L5.

46. Roger Krupp called again and said, "We'll get you someone else." Then Darryl Williams' calls to State Farm were routed to a new claims representative. Then he was switched several more times to other representatives. Pursuant to letter dated April 27, 2017, the claim was reassigned to Thomas Wegner, Claim Specialist in the Special Investigation Unit.

47. Then sometime after the March 24, 2017 claim denial Roger Krupp called back and said, "I've got good news for you. The claim has been approved. They've got to go calculate how much it will be and I will get back to you." However, Darryl did not receive the promised claim payment. During the subsequent period until October 16, 2017 Darryl Williams had a number of telephone conversations with Roger Krupp who told him alternatively that payment had been approved, payment had been mailed, the check had been lost, and the check had been sent to the wrong address. During these conversations Roger Krupp praised Darryl Williams for his patience and for being a "gentleman" and a "standup guy."

48. During this period Connectors and Darryl Williams spent approximately $200,000 of Connectors' funds and Darryl Williams's personal funds that he diverted from other personal obligations in order to pay his residents' hotel bills and repair bills for the Premises to attempt to maintain the Premises while Connectors waited for State Farm's promised payment of the Connectors' Claims.

49. During this same period due to there being no heat at the Premises as a result of the Weather Event and State Farm's failure to pay the Connectors' Claims and the Premises thereby becoming a public nuisance in violation of various provisions of the Municipal Code of the City of Chicago, the City of Chicago brought both judicial and administrative actions against Connectors in the following actions: (1) *City of Chicago v. The Connectors Realty Group Corporation, et al.*, docketed in the Circuit Court of Cook County, Illinois Case No. 2017 M1-

400127; (2) *City of Chicago v. Connect Realty Group, et al.,* docketed in the City of Chicago, Department of Administrative Hearings as Case No. 16BT05507A; and (3) *City of Chicago v. The Connectors Realty Group Corporation, et al.*, docketed in the City of Chicago, Department of Administrative Hearings as Case No. 17BT00771A (collectively, the "Actions"). On February 8, 2018 Connectors tendered the Actions to State Farm and demanded that State Farm defend and indemnify Connectors in the Actions, which State Farm failed and refused to do. As a result, Connectors paid an additional tens of thousands of dollars in fines to the City of Chicago and a like amount in legal fees for its defense.

50.      On or about September 1, 2017 in order to stop the hemorrhaging of cash in Connectors' attempt to maintain the Premises, Connectors sold the Premises for an amount that did not nearly recompense Connectors for the monies set forth above that Connectors and Darryl Williams expended due the Weather Event and State Farm's failure to pay the Connectors' Claims and for the fines and legal fees incurred in the Actions.

51.      Because of Darryl Williams's use of his own personal funds that he diverted from other obligations due to State Farm's failure to pay the Connectors' Claims as set forth above, Darryl Williams's personal residence is now in foreclosure and he is working at six different jobs to work himself out of the financial hole created by State Farm.

52.      Connectors' Claims, with the exception of Claim No. 13-0670-8L5, were never paid, leaving an unpaid amount on those claims of $345,455.50. Claim No. 13-0670-8L5, in the amount of $132,355.00, was paid piecemeal beginning on October 16, 2017 and never paid in full, leaving a balance due and owing on Claim No. 13-0670-8L5 in the amount of $76,776.29. No payment was made before Darryl Williams and Connectors were forced to sell the Premises

for lack of funds that otherwise would have enabled Connectors to continue to own the Premises due to State Farm's failure to pay the proceeds due and owing on the Connectors' Claims.

53.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on the Connectors' Claims.

54.     Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. U.S.C. §3604(a) and (b) provides, in pertinent part, as follows:

> As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

55.     24 C.F.R. § 100.70, promulgated thereunder, provides, in pertinent part, as follows:

> ***
>
> (b) It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons.
>
> ***
>
> (d) Prohibited activities relating to dwellings under paragraph (b) of this section include, but are not limited to:
>
> ***
>
> (4) Refusing to provide…property or hazard insurance for dwellings or providing such…insurance differently because of

14

race, color, religion, sex, handicap, familial status, or national origin.

56.  Because of Darryl Williams' race, State Farm refused to pay insurance claims for which Darryl Williams and Connectors were entitled to be paid and/or failed to pay Darryl Williams and Connectors adequate proceeds as measured by the proofs of loss and claims amounts on the Connectors' Claims to cover loss and damage to the Premises.

57.  This loss and damage made the Premises unlivable.

58.  State Farm handled the Connectors' Claims differently because of Darryl Williams' race.

59.  The failure of State Farm to pay the Connectors' Claims in full and in a timely manner deprived Darryl Williams and Connectors of ownership of housing.

60.  The different handling of the Connectors' Claims and the failure of State Farm to pay the Connectors' Claims in full and in a timely manner constituted the providing of property insurance "differently because of race."

WHEREFORE, Connectors demands judgment against State Farm as follows:

A.  Judgment for actual damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1) in the amount of $422,231.29, with interest thereon at the rate of 5% plus interest and costs;

B.  Judgment for punitive damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1) in the amount of $250,000,000 or such other sum as will deter future violations of the Fair Housing Act, 42 U.S.C. U.S.C. §3604(a) and (b);

C.  A permanent injunction under 42 U.S.C. § 3613(c)(1) restraining State Farm from continuing to:

15

i.       Treat homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago as presumptively fraudulent;

ii.      Process homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago as presumptively fraudulent through State Farm's Special Investigations Unit;

iii.     Deny legitimate homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago as being purportedly fraudulent;

iv.      Refuse and fail to pay, delay the payment of, and make inadequate payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago; and

v.       Discriminate on the basis of race in the processing and payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago.

D.       Awarding reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

E.       For such other and further relief as the Court deems appropriate.

## COUNT II

[Violations of 42 U.S.C. §§ 1981 and 1982 – Connectors]

1-50.    Plaintiffs repeat and reallege paragraphs 4-53 of Count I of this Amended Complaint as and for paragraphs 1-50 of Count II.

51.      42 U.S.C. § 1981 provides as follows:

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…

(b) "Make and enforce contracts" defined

16

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

52.     42 U.S.C. § 1982 provides as follows:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

53.     But for the racially discriminatory conduct of State Farm, the Connectors' Claims would have been paid in full.

54.     State Farm, by and through its racially discriminatory conduct as set forth hereinabove, has intentionally discriminated against Connectors and Darryl Williams, the latter by virtue of his being African-American, a member of a racial minority, and the sole owner and operator of Connectors, and the Premises being located in a black-majority ZIP Code in the City of Chicago in violation of 42 U.S.C. § 1981.  State Farm thereby prevented Connectors and Darryl Williams from enjoying the benefits, privileges, terms, and conditions of the contractual relationship between Connectors and State Farm under the Connectors Policy that would have been enjoyed by white citizens, in violation of 42 U.S.C. §§ 1981 and 1982.

55.     As a direct and proximate result of State Farm's racially discriminatory conduct as set forth hereinabove, Connectors and Darryl Williams has been damaged in the unpaid amounts of the Connectors' Claims, totaling $422,231.29.

WHEREFORE, Connectors demands judgment against State Farm as follows:

17

A. Judgment for compensatory damages under 42 U.S.C. §§ 1981 and 1982 in the amount of $422,231.29, with interest thereon at the rate of 5% plus interest and costs;

B. Judgment for punitive damages in the amount of $250,000,000 or such other sum as will deter future violations of 42 U.S.C. §§ 1981 and 1982;

C. A permanent injunction under 42 U.S.C. §§ 1981 and 1982 restraining State Farm from continuing to:

i. Treat homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago as presumptively fraudulent;

ii. Process homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago as presumptively fraudulent through State Farm's Special Investigations Unit;

iii. Deny legitimate homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago as being purportedly fraudulent;

iv. Refuse and fail to pay, delay the payment of, and make inadequate payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago; and

v. Discriminate on the basis of race in the processing and payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago.

D. Awarding reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

E. For such other and further relief as the Court deems appropriate.

<u>COUNT III</u>

[Breach of Contract – Connectors]

1.      At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2.      At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  Connectors is a closely held corporation, solely owned and operated by Darryl Williams, its president.  Darryl Williams is African-American.

3.      Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

4.      On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Connectors Policy").  A copy of the Connectors Policy is attached hereto as Exhibit "A".

5.      Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown in the amount of $400,000.00, plus loss of income for one year from date of loss, with a deductible in the amount of $2,500.00.

6.  On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois.  One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

7.      As a result of the Weather Event and the Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which

19

State Farm assigned Claim No. 13-0670-8L5, under which the pipes froze and burst, causing damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank, resulting in loss and damage in the amount of $86,155.00.

8.      Claim No. 13-0670-8L5 also included Connectors' claim for loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00.

9.      Of the amount of $86,155.00 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank claimed for State Farm Claim No. 13-0670-8L5, State Farm has only paid the amount of $46,528.71, leaving a balance due of $39,626.29 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank.

10.     Of the amount of $46,200.00 for loss of rental income, State Farm only paid $11,550.00, leaving a balance due of $34,650.00 for loss of rental income.

11.     On August 4, 2017 Connectors submitted a Sworn Statement in Proof of Loss ("Proof of Loss") under State Farm Claim No. 13-0670-8L5 in the amount of $86,155.00 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank and loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00 for loss of rental income, for a total amount claimed under the Proof of Loss for State Farm Claim No. 13-0670-8L5 in the amount of $132,355.00.

12.     The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

13.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-0670-8L5 in the full amount of $132,355.00 on or before September 3, 2017.

14.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-0670-8L5.

20

15.     Despite Connector's demands, State Farm has failed and refused to pay the balance due of $39,626.29 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank on State Farm Claim No. 13-0670-8L5.

16.     Despite Connector's demands, State Farm has failed and refused to pay the balance due of $34,650.00 for loss of rental income on State Farm Claim No. 13-0670-8L5.

17.     The total amount unpaid under on State Farm Claim No. 13-0670-8L5 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank and for loss of rental income is $74,276.29.

18.     State Farm is liable to pay Connectors the balance due of $74,276.29 on State Farm Claim No. 13-0670-8L5, with interest thereon at the rate of 5% annually from September 3, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $74,276.29, with interest thereon at the rate of 5% annually from September 3, 2017 plus interest and costs.

<u>COUNT IV</u>

[Breach of Contract - Connectors]

1.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  The president and principal of Connectors is Darryl Williams, who is African-American.

3.      Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

4.      On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Connectors Policy").  A copy of the Connectors is attached hereto as Exhibit "A".  Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

5.      On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois.  One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

6.      As a result of the Weather Event and the Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a second corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8S1, under which the boilers were damaged by water from the burst pipes, causing the boilers to be submerged in water, rusted and inoperable, all of which resulted in loss and damage in the amount of $60,000.00.

7.       Connectors submitted a Sworn Statement in Proof of Loss in the amount of $60,000.00 minus a $5,000.00 deductible, for a total amount of $55,000.00 for State Farm Claim No. 13-1390-8S1, receipt of which was acknowledged by State Farm on September 5, 2017.

8.       State Farm Claim No. 13-1390-8S1 has neither been paid nor denied by State Farm.

9.     The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

10.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-1390-8S1 on or before October 5, 2017.

11.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8S1.

12.     Despite Connector's demands, State Farm has failed and refused to pay the amount due of $55,000.00 on State Farm Claim No. 13-1390-8S1.

13.     State Farm is liable to pay Connectors the balance due of $55,000.00 on State Farm Claim No. 13-1390-8S1, with interest thereon at the rate of 5% annually from October 5, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $55,000.00, with interest thereon at the rate of 5% annually from October 5, 2017, plus interest and costs.

<u>COUNT V</u>

[Breach of Contract - Connectors]

1.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  The president and principal of Connectors is Darryl Williams, who is African-American.

23

3.      Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

4.      On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Connectors Policy").  A copy of the Connectors Policy is attached hereto as Exhibit "A".  Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

5.      On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois.  One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

6.      As a result of the Weather Event and the Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a third corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8N9 under which a commercial unit experienced loss and damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines, collapse of front of store, electric lines were down and hanging, gas lines were down all of which resulted in loss and damage in the amount of $116,955.00.

7.       On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $116,955.00 minus a $5,000.00 deductible, for a total amount of $111,955.00, for State Farm Claim No. 13-1390-8N9.

8.      The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

24

9.      Accordingly, payment from State Farm was due on State Farm Claim No. 13-13-1390-8N9 on or before September 10, 2017.

10.      Pursuant to letter dated October 3, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8N9.

11.      Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8N9.

12.      Despite Connector's demands, State Farm has failed and refused to pay the amount due of $111,955.00 on State Farm Claim No. 13-1390-8N9.

14.      State Farm is liable to pay Connectors the balance due of $111,955.00 on State Farm Claim No. 13-1390-8N9, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $111,955.00, with interest thereon at the rate of 5% annually from September 10, 2017 plus interest and costs.

<u>COUNT VI</u>

[Breach of Contract - Connectors]

1.      At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2.      At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

25

3.      Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

4.      On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Connectors Policy"). A copy of the Connectors Policy is attached hereto as Exhibit "A". Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

5.      On April 17, 2017, while the Connectors Policy was in full force, there occurred a hail event (the "Hail Event") in Chicago, Illinois.

6.      As a result of the Hail Event, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8F4 under which the third floor roof had a hole caused, ceiling, drywall were damaged which resulted in loss and damage in the amount of $17,500.00.

7.      On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $17,500.00 for State Farm Claim No. 13-1390-8F4.

8.      The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

9.      Accordingly, payment from State Farm was due on State Farm Claim No. 13-13-1390-8F4 on before September 10, 2017.

10.      Pursuant to letter dated September 5, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8F4.

11. Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8F4.

12. Despite Connector's demands, State Farm has failed and refused to pay the amount due of $17,500.00 on State Farm Claim No. 13-1390-8F4.

13. State Farm is liable to pay Connectors the amount due of $17,500.00 on State Farm Claim No. $17,500.00, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $17,500.00, with interest thereon at the rate of 5% annually from September 10, 2017 plus interest and costs.

<u>COUNT VII</u>

[Breach of Contract - Connectors]

1. At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2. At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

3. Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

4. On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Connectors Policy"). A copy of the Connectors

27

Policy is attached hereto as Exhibit "A". Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

     5.     On April 23, 2017, while the Connectors Policy was in full force, there occurred a theft at the Premises.

     6.     As a result of the theft, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8K9 under which Connectors suffered loss and damage in the amount of $48,500.00.

     7.     On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $48,500.00 minus a $5,000.00 deductible, for a total amount of $43,500.00 for State Farm Claim No. 13-1390-8K9.

     8.     The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

     9.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-1390-8K9 on before September 10, 2017.

     10.     Pursuant to letter dated September 5, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8K9.

     11.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8K9.

     12.     Despite Connector's demands, State Farm has failed and refused to pay the amount due of $17,500.00 on State Farm Claim No. 13-1390-8K9.

13.     State Farm is liable to pay Connectors the amount due of $43,500.00 on State Farm Claim No. 13-1390-8K9, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $43,500.00, with interest thereon at the rate of 5% annually from September 10, 2017 plus interest and costs.

<u>COUNT VIII</u>

[Breach of Contract - Connectors]

1.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois.  Connectors manages and owns residential and commercial real estate.  The president and principal of Connectors is Darryl Williams, who is African-American.

3.     Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

4.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 (the "Connectors Policy").  A copy of the Connectors Policy attached hereto as Exhibit "A".  Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

5.    On February 4, 2017, while the Connectors Policy was in full force, there occurred a theft and vandalism at the Premises.  As a result of the theft and vandalism, Connectors suffered loss and damage at the Premises under which copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights, smoke detectors, carbon monoxide detectors were stolen, second floor stairwell was vandalized, light bulbs were broken, back and front doors were broken down and torn off the hinges, door in the apartment bedroom was torn off the hinges, kitchen electric outlet was vandalized, 6 industrial heaters were stolen, cabinets were torn down and stolen, ceilings and hallway were vandalized, the windows on the second and third floor were broken, the walls were vandalized, the radiators on second and third floors were torn off, and holes were made in the walls on the second floor, resulting in loss and damage in the approximate amount of $120,000.00, and

6.    Connectors filed a corresponding claim for theft and vandalism with State Farm to which State Farm assigned State Farm Claim No. 13-0790-6C6.

7.    Pursuant to letter dated October 3, 2017 State Farm purported to deny State Farm Claim No. 13-0790-6C6.

8.    Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-0790-6C6.

9.    Despite Connector's demands, State Farm has failed and refused to pay the amount due of $120,000.00 on State Farm Claim No. 13-0790-6C6.

10.    State Farm is liable to pay Connectors the amount due of $120,000.00 on State Farm Claim No. 13-0790-6C6, plus interest and costs.

WHEREFORE, Connectors demands judgment against State Farm in the amount of $120,000.00, plus interest and costs.

COUNT IX

[Breach of Duty to Defend and Indemnify]

1-50.    Plaintiffs repeat and reallege paragraphs 4-53 of Count I of this Amended Complaint as and for paragraphs 1-50 of Count IX.

51.    The unrepaired loss and damage arising out of the Weather Event and State Farm's unreasonable delay and failure to pay the Connectors' Claims triggered the both judicial and administrative actions against Connectors in the following actions:  (1) *City of Chicago v. The Connectors Realty Group Corporation, et al.*, docketed in the Circuit Court of Cook County, Illinois Case No. 2017 M1-400127; (2) *City of Chicago v. Connect Realty Group, et al.,* docketed in the City of Chicago, Department of Administrative Hearings as Case No. 16BT05507A; and (3) *City of Chicago v. The Connectors Realty Group Corporation, et al.*, docketed in the City of Chicago, Department of Administrative Hearings as Case No. 17BT00771A (collectively, the "Actions").  On February 7, 2018 Connectors tendered the Actions to State Farm and demanded that State Farm defend and indemnify Connectors in the Actions, which State Farm failed and refused to do.

52.    The Actions allege *inter alia* that the Premises constitutes a "public nuisance."

53.    The Connectors Policy at Section II, Liability Coverages, Coverage L, requires State Farm must defend "any 'suit' seeking…damages …for…property damage..."

54.    State Farm failed to defend the Actions.  State Farm failed to reserve any rights it may have purportedly had regarding the Actions.  State Farm failed to file a declaratory judgment action seeking that there was no coverage for the Actions.

55.     An insurer taking the position that a complaint potentially alleging coverage is not covered by a policy which provides that the insurer has the right and duty to defend any claims brought against the insured cannot simply refuse to defend the insured. It must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to do this, it is estopped from later raising policy defenses to coverage and is liable for the award against the insured and the costs of the suit, because the duty to defend is broader than the duty to pay.

56.     State Farm is estopped from raising any defenses under the Connectors Policy to coverage.

57.     Connectors incurred defense costs in the amount of tens of thousands of dollars and a like amount in judgments and fines payable to the City of Chicago.

WHEREFORE, Connectors demands judgment against State Farm in the amount of the defense costs, judgments and fines incurred in the Actions.

<u>COUNT X</u>

[Breach of Contract - Nash]

1.      At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2.      Since July, 2014 Nash has been the title owner of the property commonly known as 12535 South Honore Street, Calumet Park, IL 60827 (the "Premises") in Cook County, Illinois and has resided there since January, 2015.  Nash is African-American.

3.      On or about August 1, 2017 State Farm issued to Nash a renewal certificate for Homeowners Policy No. 13-EP-C974-7 (the "Nash Policy") covering the Premises and it was in full force and effect at all times pertinent hereto.  A copy of the renewal certificate is attached

hereto as Exhibit "B". A copy of the Nash Policy is within the exclusive possession and control of State Farm.

4. On or about August 31, 2017 Nash listed the Premises for sale with Derrick Jackson II ("Jackson") at HomeSmart Connect, LLC ("HomeSmart"), neither of which are parties hereto.

5. Jackson and HomeSmart, in turn, arranged for showings of the Premises through Centralized Showing Service, also not a party hereto. Jackson and HomeSmart set up a lockbox outside the Premises containing the keys to the Premises for licensed real estate agents to make showings of the Premises to prospective buyers. At these times Nash would leave the Premises until the showing was complete.

6. On October 26, 2017, while the Policy was in full force and effect, Jackson and HomeSmart, through Centralized Showing Service set up a showing of the Premises for 3:30 p.m. to 4:00 p.m. that afternoon. On that occasion, a party or parties unknown came to the Premises for that showing, at which time Nash was not present at the Premises.

7. Upon Nash's return to the Premises later that evening Nash discovered a theft (the "theft") of personal property in the amount of $46,756.99. Nash immediately telephoned the Calumet Park Police Department, who sent an officer to the Premises.

8. As a result of the theft, Nash suffered loss and damage to personal property (the "Loss") at the Premises in the amount of $46,756.99.

9. Nash reported the Loss to State Farm on or about October 27, 2017. State Farm assigned Claim No.13-1903-D24 (the "Claim") to the Loss.

10. On February 13, 2018 Nash submitted a Sworn Statement in Proof of Loss in the amount of $46,756.99 to State Farm for State Farm Claim No. 13-1903-D24.

11.     The Nash Policy, Section I, Conditions, provides under "Loss Payment" that "Loss will be payable 30 days after we receive your proof of loss..."

12.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-1903-D24 on before March 15, 2018.

13.      Pursuant to letter dated October 31, 2018 State Farm purported to deny State Farm Claim No. 13-1903-D24.

14.     Nash has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-1903-D24.

15.     Despite Nash's demands, State Farm has failed and refused to pay the amount due of $46,756.99 on State Farm Claim No. 13-1903-D24.

16.     State Farm is liable to pay Connectors the amount due of $46,756.99 on State Farm Claim No. 13-1903-D24, with interest thereon at the rate of 5% annually from March 15, 2018, plus interest and costs.

WHEREFORE, Nash demands judgment against State Farm in the amount of $46,756.99, with interest thereon at the rate of 5% annually from March 15, 2018 plus interest and costs.

<u>COUNT XI</u>

[Violations of Fair Housing Act, 42 U.S.C. § 3604(a) and (b) – Nash]

1.      At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

2.      State Farm maintains data regarding loss experience on its homeowners and small business insurance organized by ZIP Code for the City of Chicago, Illinois.  State Farm shields this data from the public, and stores it in secured areas and by electronic means.  State Farm

considers this data a trade secret and has gone to great lengths to protect and safeguard its secret status.

3.      The vast majority of ZIP Codes are heavily predominated by only one racial group.

4.      State Farm utilizes this ZIP Code data to "redline" by ZIP Code homeowners and small business insurance claims by treating as presumptively fraudulent claims from policyholders residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago and south Cook County by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims.

5.      State Farm's treatment of such claims from black-majority ZIP Codes on the South and West Sides of the City of Chicago and south Cook County as presumptively fraudulent results in State Farm engaging racial discrimination by treating insurance claims filed by blacks unequally from those filed by whites due to the race of the claimant.

6.      Representative of State Farm's racially discriminatory treatment of homeowners and small business insurance claims in the City of Chicago and south Cook County is State Farm's treatment of claims filed by Plaintiffs.

7.      Since July, 2014 Nash has been the title owner of the property commonly known as 12535 South Honore Street, Calumet Park, IL 60827 (the "Premises") in Cook County, Illinois and has resided there since January, 2015.  Nash is African-American.

8.      On or about August 1, 2017 State Farm issued to Nash a renewal certificate for Homeowners Policy No. 13-EP-C974-7 (the "Nash Policy") covering the Premises and it was in full force and effect at all times pertinent hereto.  A copy of the renewal certificate is attached hereto as Exhibit "B".  A copy of the Nash Policy is within the exclusive possession and control of State Farm.

9. On or about August 31, 2017 Nash listed the Premises for sale with Derrick Jackson II ("Jackson") at HomeSmart Connect, LLC ("HomeSmart"), neither of which are parties hereto.

10. Jackson and HomeSmart, in turn, arranged for showings of the Premises through Centralized Showing Service, also not a party hereto.  Jackson and HomeSmart set up a lockbox outside the Premises containing the keys to the Premises for licensed real estate agents to make showings of the Premises to prospective buyers.  At these times Nash would leave the Premises until the showing was complete.

11. On October 26, 2017, while the Policy was in full force and effect, Jackson and HomeSmart, through Centralized Showing Service set up a showing of the Premises for 3:30 p.m. to 4:00 p.m. that afternoon.  On that occasion, a party or parties unknown came to the Premises for that showing, at which time Nash was not present at the Premises.

12. Upon Nash's return to the Premises later that evening Nash discovered a theft (the "theft") of personal property in the amount of $46,756.99.  Nash immediately telephoned the Calumet Park Police Department, who sent an officer to the Premises.

13.      As a result of the theft, Nash suffered loss and damage to personal property (the "Loss") at the Premises in the amount of $46,756.99.

14. Nash reported the Loss to State Farm on or about October 27, 2017.  State Farm assigned Claim No.13-1903-D24 (the "Claim") to the Loss.

36

15.    On February 13, 2018 Nash submitted a Sworn Statement in Proof of Loss in the amount of $46,756.99 to State Farm for State Farm Claim No. 13-1903-D24.

16.    The Nash Policy, Section I, Conditions, provides under "Loss Payment" that "Loss will be payable 30 days after we receive your proof of loss..."

17.    Accordingly, payment from State Farm was due on State Farm Claim No. 13-1903-D24 on before March 15, 2018.

18.    Pursuant to letter dated October 31, 2018 (the "10/31/18 Denial Letter") State Farm purported to deny State Farm Claim No. 13-1903-D24.

19.    Nash has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-1903-D24.

20.    Despite Nash's demands, State Farm has failed and refused to pay the amount due of $46,756.99 on State Farm Claim No. 13-1903-D24.

21.    State Farm is liable to pay Connectors the amount due of $46,756.99 on State Farm Claim No. 13-1903-D24, with interest thereon at the rate of 5% annually from March 15, 2018, plus interest and costs.

22.    As part of State Farm's processing of the Claim, Nash was contacted by attorney Peter Alfieri, attorney and agent for State Farm.  Mr. Alfieri sent Nash correspondence dated April 10, 2018 requesting certain documentation, including bank statements and income tax returns, and requiring that Nash appear at an examination under oath at his office.  Nash had never been asked by anyone for these documents before.

23.    Nash had a numerous telephone and in-person conversations with Mr. Alfieri. Nash's first such conversation was on April 24, 2018 at an in-person meeting with Mr. Alfieri, who was in the reception area behind an open receptionist's window and Nash, who was in the

37

lobby at Mr. Alfieri's office at 70 West Madison Street, Suite 2101, Chicago, Illinois 60602.  At
that time and place they had the following conversation:

Mr. Alfieri:  "Do you have the papers I requested?"

Antoine Nash:  "Yes, but I have a question. I said these are sensitive documents.  I will
only allow you to look at them while I'm present.  We can go over them together."

Mr. Alfieri:  (Laughter) "Oh, so you're refusing to give me the documents."

Antoine Nash:  "No, I'm not refusing, but I don't feel comfortable leaving my personal
information with you."

Mr. Alfieri:  (Laughter) "Okay, that's just perfect.  Your claim will be denied."

Antoine Nash:  "I was under the impression you were here to help, not harm.  Why do I
have to turn over my personal records?"

Mr. Alfieri:  (Laughter) "Because you filed a bankruptcy.  We need to know your
financial situation to see if you're in a financial hardship."

Antoine Nash:  "A financial hardship.  What does that mean?"

Mr. Alfieri:  "If you're in a financial hardship you'll commit fraud and file a false claim."

Antoine Nash:  "File a false claim? Commit fraud?  Just because I'm having a financial
hardship doesn't mean I'll commit fraud or do something illegal."

Mr. Alfieri started to walk away from the receptionist's window back towards his offices.

Antoine Nash:  "What am I supposed to do now?"

Mr. Alfieri: "Are you refusing to give me these documents?"

Antoine Nash:  "No.  But I don't feel comfortable leaving them with you. Do I need to
get a lawyer?"

Mr. Alfieri (as he was walking away):  "Do whatever you want to do."

24.     Nash had several other conversations between April 24, 2018 through the beginning of September 2018 with Mr. Alfieri during which Mr. Alfieri laughed and called Nash a liar. During the course of these conversations Mr. Alfieri also said, "It's taking you six weeks to get the documents it would take me two days to get.  It's laughable."  Mr. Alfieri also said in reference to the requested documents, "I don't believe you have them.  I don't believe they exist."

25.  Nash gave Mr. Alfieri all the requested documents by July, 2018.  Mr. Alfieri took Nash's examination under oath on August 8, 2018.

26.     On October 31, 2018 pursuant to the 10/31/18 Denial Letter purported to deny State Farm Claim No. 13-1903-D24 *inter alia* on the purported basis of fraud, exactly as Peter Alfieri predicted on April 24, 2018, six months previously and before either Peter Alfieri or State Farm had laid eyes on a single document produced by Nash or had taken Nash's examination under oath.

27.  To the best of Nash's knowledge, State Farm never talked to Jackson, HomeSmart, the real estate agent that did the showing on October 26, 2017, or the Calumet Park Police Department in reference to the Loss.

28.     State Farm's targeting of claims by treating as presumptively fraudulent claims from policyholders residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago and south Cook County by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims is confirmed by the fulfillment by State Farm

of Mr. Alfieri's prediction that Nash's claim would be denied as fraudulent before either Peter

Alfieri or State Farm had laid eyes on a single document produced by Nash or had taken Nash's

examination under oath.

29.     State Farm's targeting of such claims by ZIP Code and its intention thereby to

discriminate on the basis of race in its treatment of claims of policyholders from black-majority

ZIP Codes in the City of Chicago is also confirmed by an analysis of performed by R. Hasegawa

and A. Wyner, The Wharton School of the University of Pennsylvania, on statistical evidence

from the Illinois Department of Insurance.  They conclude based upon an analysis that the odds

that a property insurance claim remains outstanding and unpaid at the end of the calendar year in

a ZIP Code with a 75% black population is 23% higher than a claim made in a ZIP Code with a

25% black population with comparable median incomes.   While this analysis was performed on

ZIP Code-level data on property insurance claims made upon all companies authorized to write

homeowner's insurance in the State of Illinois, State Farm has the largest market share of the

homeowner's insurance market in the City of Chicago.

30.     Pursuant to its practice of treating claims from black majority ZIP Codes as

presumptively fraudulent, State Farm, did, on information and belief, in fact, process State Farm

Claim No. 13-1903-D24 as presumptively fraudulent through the Special Investigations Unit.

The Special Investigation Unit's official responsibilities are limited to investigation of purported

claims of fraud.  In other words, instead of investigating State Farm Claim No. 13-1903-D24,

State Farm initiated an investigation of Nash for insurance fraud.

31.     Other racially discriminatory conduct of State Farm included both the overly

intrusive claims investigation of Nash in requiring his submission of bank statements and income

tax returns and other sensitive documents, and the taking of his examination under oath.  Upon

information and belief African-Americans are subject to these procedures at a much higher rate

than whites.

32.     Further racially discriminatory conduct of State Farm included the failure to

conduct reasonable investigations, given that State Farm upon information and belief conducted

no investigation of the theft.  Upon information and belief African-Americans are subject to such

failure to investigate at a much higher rate than whites.

33.     But for the racially discriminatory conduct of State Farm, the Claim would have

been paid in full.

34.     Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C.

U.S.C. §3604(a) and (b) provides, in pertinent part, as follows:

> As made applicable by section 3603 of this title and except as
> exempted by sections 3603(b) and 3607 of this title, it shall be
> unlawful—
>
> (a) To refuse to sell or rent after the making of a bona fide offer, or
> to refuse to negotiate for the sale or rental of, or otherwise make
> unavailable or deny, a dwelling to any person because of race,
> color, religion, sex, familial status, or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or
> privileges of sale or rental of a dwelling, or in the provision of
> services or facilities in connection therewith, because of race,
> color, religion, sex, familial status, or national origin.

35.     24 C.F.R. § 100.70, promulgated thereunder, provides, in pertinent part, as

follows:

> ***
>
> (b) It shall be unlawful, because of race, color, religion, sex,
> handicap, familial status, or national origin, to engage in any
> conduct relating to the provision of housing or of services and
> facilities in connection therewith that otherwise makes unavailable
> or denies dwellings to persons.
>
> ***

(d) Prohibited activities relating to dwellings under paragraph (b) of this section include, but are not limited to:

***

(4) Refusing to provide…property or hazard insurance for dwellings or providing such…insurance differently because of race, color, religion, sex, handicap, familial status, or national origin.

36.   Because of Antoine Nash's race, State Farm refused to pay State Farm Claim No. 13-1903-D24 for which Antoine Nash was entitled to be paid.

37.   State Farm handled the Connectors' Claims differently because of Antoine Nash's race.

38.   The different handling of State Farm Claim No. 13-1903-D24 and the failure of State Farm to pay the State Farm Claim No. 13-1903-D24 constituted the providing of property insurance "differently because of race."

WHEREFORE, Nash demands judgment against State Farm as follows:

A.   Judgment for actual damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1) in the amount of $46,756.99, with interest thereon at the rate of 5% annually from March 15, 2018 plus interest and costs

B.   Judgment for punitive damages under 42 U.S.C. § 3613(c)(1) in the amount of $250,000,000 or such other sum as will deter future violations of the Fair Housing Act, 42 U.S.C. U.S.C. §3604(a) and (b);

C.   A permanent injunction under 42 U.S.C. § 3613(c)(1) restraining State Farm from continuing to:

i.   Treat homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as presumptively fraudulent;

42

ii.     Process homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as presumptively fraudulent through State Farm's Special Investigations Unit;

iii.    Deny legitimate homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as being purportedly fraudulent;

iv.     Refuse and fail to pay, delay the payment of, and make inadequate payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County; and

v.      Discriminate on the basis of race in the processing and payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago.

D.      Awarding reasonable attorney's fees and costs pursuant to 42 U.S.C. § 3613(c)(2); and

E.      For such other and further relief as the Court deems appropriate.

<u>COUNT XII</u>

[Violations of 42 U.S.C. §§ 1981 and 1982 – Nash]

1-33.   Plaintiffs repeat and reallege paragraphs 1-33 of Count XI of this Amended Complaint as and for paragraphs 1- of Count XII.

34.     42 U.S.C. § 1981 provides as follows:

(a) Statement of equal rights
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…

(b) "Make and enforce contracts" defined
For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination

43

of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment
The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

35.     42 U.S.C. § 1982 provides as follows:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

36.     But for the racially discriminatory conduct of State Farm, State Farm Claim No. 13-1903-D24 would have been paid in full.

37.     State Farm, by and through its racially discriminatory conduct as set forth hereinabove, has intentionally discriminated against Nash the latter by virtue of his being African-American, a member of a racial minority, and the Premises being located in a black-majority ZIP Code in south Cook County in violation of 42 U.S.C. § 1981.  State Farm thereby prevented Nash from enjoying the benefits, privileges, terms, and conditions of the contractual relationship between Nash and State Farm under the Nash Policy that would have been enjoyed by white citizens, in violation of 42 U.S.C. §§ 1981 and 1982.

38.     As a direct and proximate result of State Farm's racially discriminatory conduct as set forth hereinabove, Nash has been damaged in the amount of $46,756.99.

WHEREFORE, Nash demands judgment against State Farm as follows:

A.     Judgment in the amount of $46,756.99, with interest thereon at the rate of 5% plus interest and costs;

44

B.        Judgment for punitive damages in the amount of $250,000,000 or such other sum as will deter future violations of 42 U.S.C. §§ 1981 and 1982;

C.        A permanent injunction under 42 U.S.C. §§ 1981 and 1982 restraining State Farm from continuing to:

i.        Treat homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as presumptively fraudulent;

ii.        Process homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as presumptively fraudulent through State Farm's Special Investigations Unit;

iii.        Deny legitimate homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as being purportedly fraudulent;

iv.        Refuse and fail to pay, delay the payment of, and make inadequate payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County; and

v.        Discriminate on the basis of race in the processing and payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County.

D.        Awarding reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

E.        For such other and further relief as the Court deems appropriate.

<u>COUNT XIII</u>

[Class Action]

[Violations of 42 U.S.C. Sec. 1981 – Nash]

1.       Plaintiffs repeat and reallege the allegations of Counts I through XII of this Complaint as if fully set forth herein.

2.       Pursuant to Fed. R. Civ. P. 23 and 28 U.S.C. Sec. 1711 *et seq*. Plaintiffs bring this action on their own behalf and on behalf of a Class of similarly-situated persons injured by State Farm's racially discriminatory conduct in the handling of insurance claims.  The Class is defined as:

> All African-Americans in the State of Illinois who reside in majority African-American ZIP Code areas and have submitted claims for property loss and damage to State Farm during the period 2015 to the present.

3.       Excluded from the Class is State Farm and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; government entities; and the Judge(s) to whom this case is assigned and any immediate family members thereof.

4.       Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

5.  Numerosity – Fed. R. Civ. P. 23(a)(1).  The members of the Class are so numerous that individual joinder of all Class members is impracticable.  In Cook County, Illinois, alone, the number of potential class members with unpaid claims at the end of calendar year 2015 is 3018, and the number for 2016 is 2688.  The precise number of Class members and their addresses are unknown to Plaintiffs, but are readily available from the records of State Farm.

6. Commonality and Predominance - Fed. R. Civ. P. 23(a)(2). This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

a. Whether State Farm subjected its insured to overly intrusive claims investigation requiring the submission of bank statements and income tax returns and other sensitive documents;

b. Whether State Farm subjected its insured to the taking of his examination under oath;

c. Whether State Farm refused to pay without conducting a reasonable investigation based on all available information as required by Section 154.6(h) of the Illinois Insurance Code, 215 ILCS 5/154.6(h);

d. Whether State Farm failed to provide its insured in the case of a denial of a claim a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial as required by Section 154.6(n) of the Illinois Insurance Code, 215 ILCS 5/154.6(n);

e. Whether State Farm conducted any acts constituting improper claims practices under Section 154.6 of the Illinois Insurance Code, 215 ILCS 5/154.6;

f. Whether State Farm accused its insured under a policy of homeowners' insurance of arson on the basis of a report stating that the cause of the fire was undetermined;

g. Whether State Farm sent the insured's claim to its Special Investigations Unit for resolution;

h. Whether State Farm engaged an attorney to conduct an investigation of the insured's claim;

i.      Whether State Farm denied the insured's claim on the basis of the Concealment or Fraud provision in its policy;

j.      Whether State Farm denied the insured's claim on the basis of the Your Duties After Loss provision in its policy;

k.      Whether State Farm denied the insured's claim relying on the fact that the insured had filed for bankruptcy protection;

l.      Whether State Farm denied the insured's claim relying on the fact that the insured was suffering from a financial hardship;

m.      Whether State Farm sent its insured repeated requests for documents under the Your Duties After Loss provision in its policy even after its insured submitted to State Farm all the documents meeting the terms of the request that were in the insured's possession;

n.      Whether State Farm paid the insured's claim within 30 days of submission of the proof of loss;

o.      Whether State Farm denied the insured's claim on the basis of a pretextual claim denial; and

p.      Whether State Farm treated the insured's claim as presumptively fraudulent as being from a policyholder residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago or south Cook County by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims.

7.    Typical Claims - Fed. R. Civ. P. 23(a)(3).  The claims of Plaintiffs are typical of the Class.  The Plaintiffs or their principals are African-American.  Plaintiffs' claims with State Farm were either outright denied, left unpaid or only partially paid.  Plaintiffs' claims meet one or more of the following criteria:

a.    State Farm subjected the person insured to overly intrusive claims investigation requiring the submission of bank statements and income tax returns and other sensitive documents;

b.    State Farm subjected the person insured to the taking of his examination under oath;

c.    State Farm refused to pay without conducting  a reasonable investigation based on all available information as required by Section 154.6(h) of the Illinois Insurance Code, 215 ILCS 5/154.6(h);

d.    State Farm failed to provide its insured in the case of a denial of a claim a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial as required by Section 154.6(n) of the Illinois Insurance Code, 215 ILCS 5/154.6(n);

e.    State Farm conducted acts constituting improper claims practices under Section 154.6 of the Illinois Insurance Code, 215 ILCS 5/154.6;

f.    State Farm sent the insured's claim to its Special Investigations Unit for resolution;

g.    State Farm engaged an attorney to conduct an investigation of the insured's claim;

h.    State Farm denied the insured's claim on the purported basis of the Concealment or Fraud provision in its policy;

49

i.      State Farm denied the insured's claim on the purported basis of the Your Duties After Loss provision in its policy;

j.      State Farm denied the insured's claim relying on the fact that the insured had filed for bankruptcy protection;

k.      State Farm denied the insured's claim relying on the fact that the insured was suffering from a financial hardship;

l.      State Farm sent its insured repeated requests for documents under the Your Duties After Loss provision in its policy even after its insured submitted to State Farm all the documents meeting the terms of the request that were in the insured's possession;

m.      State Farm paid the insured's claim within 30 days of submission of the proof of loss;

n.      State Farm denied the insured's claim on the basis of a pretextual claim denial; and

o.      State Farm treated the insured's claim as presumptively fraudulent as being from a policyholder residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago or south Cook County by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims.

8.      Adequacy of representation - Fed. R. Civ. P. 23(a)(4).  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; they have retained counsel competent and

experienced in complex insurance litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interests will be fairly and adequately protected by Plaintiffs and their counsel.

9.      State Farm has acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate declaratory, final injunctive and/or corresponding compensatory or declaratory relief with respect to the Class as a whole.

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the other members of the Class, request that the Court enter orders relief and enter judgment against State Farm as follows:

a.      An order certifying the proposed Class and appointing Plaintiffs as Class Representatives and their counsel as Class Counsel;

b.      An order that State Farm be permanently enjoined from their racially discriminatory conduct as alleged herein;

c.      A judgment awarding Plaintiffs and the other Class members their actual damages in an amount according to proof for State Farm's unlawful conduct alleged under all claims herein, entitling Plaintiffs and the other Class members to their actual damages;

d.      A judgment awarding Plaintiffs and the other Class members actual and compensatory damages under the Fair Housing Act, 42 U.S.C. U.S.C. § 3613(c)(1) and under 42 U.S.C. §§ 1981 and 1982 as a result of State Farm's wrongful conduct as alleged herein;

B.      A judgment awarding punitive damages under 42 U.S.C. U.S.C. § 3613(c)(1) and 42 U.S.C §§. 1981 and 1982 in the amount of $250,000,000 or such other sum as will deter future violations of 42 U.S.C. U.S.C. § 3604(a) and (b) and 42 U.S.C. §§ 1981 and 1982;

C.      A permanent injunction under 42 U.S.C. U.S.C. § 3613(c)(1) and under 42 U.S.C. §§ 1981 and 1982 restraining State Farm from continuing to:

i.      Treat homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as presumptively fraudulent;

ii.     Process homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as presumptively fraudulent through State Farm's Special Investigations Unit;

iii.    Deny legitimate homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County as being purportedly fraudulent;

iv.     Refuse and fail to pay, delay the payment of, and make inadequate payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County; and

v.      Discriminate on the basis of race in the processing and payment of homeowners and small business insurance claims from black majority ZIP Codes in the City of Chicago and south Cook County.

D.      Awarding reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 pursuant to 42 U.S.C. § 3613(c)(2); and

E.      For such other and further relief as the Court deems appropriate.

<u>COUNT XIV</u>

[Violations of 215 ILCS 5/155 – Connectors]

1.      Plaintiffs repeat and reallege the allegations of Counts I-IX of this Complaint as if fully set forth herein.

2.      Although often requested to do so, State Farm has failed and refused, and still fails and refuses, to pay Connectors the unpaid amount of the Claims or any part of it, to

Connector's damage in the amount of $422,231.29, with interest thereon, at the rate of 5% annually.

      3.     215 ILCS 5/155 provides as follows:

> **Sec. 155.**  Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
>     **(a)**  60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
>     **(b)**  $ 60,000;
>
>     **(c)**  the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.
>
>     **(2)**  Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

      4.     State Farm's refusal to pay, as set forth above, is vexatious and unreasonable as proscribed by 215 ILCS 5/155.

      5.     State Farm is liable to pay Connectors the loss and damage he sustained as a result of the Fire in the amount of at least $422,231.29, with interest thereon at the rate of 5%, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

      WHEREFORE, Connectors demands judgment against State Farm in the amount of at least $422,231.29, with interest thereon at the rate of 5%, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

<u>COUNT XIV</u>

[Violations of 215 ILCS 5/155 – Nash]

1.     Plaintiffs repeat and reallege the allegations of Counts X-XII of this Complaint as if fully set forth herein.

2.     Although often requested to do so, State Farm has failed and refused, and still fails and refuses, to pay Nash the unpaid amount of the Claim or any part of it, to Nash's damage in the amount of $46,756.99, with interest thereon, at the rate of 5% annually from March 15, 2018.

3.      215 ILCS 5/155 provides as follows:

> **Sec. 155.**  Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
>
> **(a)**  60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
>
> **(b)**  $ 60,000;
>
> **(c)**  the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.
>
> **(2)**  Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

4.     State Farm's refusal to pay, as set forth above, is vexatious and unreasonable as proscribed by 215 ILCS 5/155.

5.     State Farm is liable to pay Nash the loss and damage he sustained as a result of the Fire in the amount of at least $46,756.99, with interest thereon at the rate of 5%, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

WHEREFORE, Nash demands judgment against State Farm in the amount of at least $46,756.99, with interest thereon at the rate of 5% from March 15, 2018, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

PLAINTIFFS DEMAND TRIAL BY JURY.

Plaintiffs,
THE CONNECTORS REALTY GROUP
CORPORATION, DARRYL WILLIAMS
and ANTOINE NASH,

By:  /s/ Kenneth Anspach
        his attorney

KENNETH ANSPACH, ESQ.
ANSPACH LAW OFFICE
111 West Washington Street
Chicago, Illinois 60602
(312) 407-7888
ken@anspachlawoffice.com

55