**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE CONNECTORS REALTY GROUP CORPORATION, DARRYL WILLIAMS, and ANTOINE NASH, | Case No. 19-cv-00743 |
| Plaintiffs, | Honorable Charles P. Kocoras |
| v. | |
| STATE FARM FIRE & CASUALTY COMPANY, | |
| Defendant. | |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S**
**MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS**
**PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................................... 1

PLAINTIFFS' ALLEGATIONS ............................................................................................. 2

LEGAL STANDARD ........................................................................................................... 11

ARGUMENT ........................................................................................................................ 12

I.      The Amended Complaint Fails to State Claims Under Sections 1981 or 1982. ............... 12

II.     The Amended Complaint Fails to State a Claim Under the FHA ..................................... 15

III.    Connectors' Breach of Contract Claim in Count VIII is Time-Barred. ........................... 18

IV.     Connectors' Claim for Breach of Duty to Defend and Indemnify Fails .......................... 18

V.      Plaintiffs' State-Law Claims Should Be Dismissed for Lack of Federal Jurisdiction ...... 20

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

Page

## CASES

*520 S. Mich. Ave. Assocs., Ltd. v. Shannon,*
    549 F.3d 1119 (7th Cir. 2008) .................................................................. 12

*Amin Ijbara Equity Corp. v. Vill. of Oak Lawn,*
    860 F.3d 489 (7th Cir. 2017) .................................................................... 12

*Area Erectors, Inc. v. Travelers Prop. Cas. Co. of Am.,*
    981 N.E.2d 1120 (Ill. App. Ct. 2012) ..................................................... 18

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................... 11, 12

*Bell v. Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007).................................................................... 11, 12, 14

*Burke v. 401 N. Wabash Venture,*
    714 F.3d 501 (7th Cir. 2013) .......................................................... 6, 9, 12

*Carter v. Chi. State Univ.,*
    778 F.3d 651 (7th Cir. 2015) .................................................................. 12

*City of Joliet, Ill. v. New W. L.P.,*
    825 F.3d 827 (7th Cir. 2016) .................................................................. 16

*Cobb Cty. v. Bank of Am. Corp.,*
    183 F. Supp. 3d 1332 (N.D. Ga. 2013) .................................................. 17

*Cramer v. Ins. Exch. Agency,*
    675 N.E.2d 897 (Ill. 1996)...................................................................... 18

*Edwards v. Lake Terrace Condo. Ass'n,*
    No. 1:10-cv-2986, 2011 WL 1548023 (N.D. Ill. Apr. 21, 2011)............ 15

*Ellis v. City of Minneapolis,*
    860 F.3d 1106 (8th Cir. 2017) ................................................................ 16

*Hu v. Huey,*
    No. 07 C 3822, 2008 WL 2797000 (N.D. Ill. July 18, 2008) ................. 14

*Jafree v. Barber,*
    689 F.2d 640 (7th Cir. 1982) .................................................................. 13

*Limestone Dev. Corp. v. Vill. of Lemont,*
    473 F. Supp. 2d 858 (N.D. Ill. 2007) ......................................... 3, 10, 12

*Linda Constr. Inc. v. City of Chi.,*
    No. 15 C 8714, 2016 WL 4429893 (N.D. Ill. Aug. 22, 2016).......... 13, 14

*Lyerla v. AMCO Ins. Co.,*
    536 F.3d 684 (7th Cir. 2008) .................................................................. 20

*Mears v. Allstate Indem. Co.*,
    336 F. Supp. 3d 141 (E.D.N.Y. 2018) ........................................................... 13, 14

*Morris v. Office Max, Inc.*,
    89 F.3d 411 (7th Cir. 1996) ........................................................................ 12, 13

*N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*,
    978 F.2d 287 (7th Cir. 1992) ............................................................................. 17

*Nat'l Fair Hous. All. v. Deutsche Bank*,
    18 C 0839, 2018 WL 6045216 (N.D. Ill. Nov. 19, 2018) ................................. 15

*Northfield Ins. Co. v. City of Waukegan*,
    701 F.3d 1124 (7th Cir. 2012) .................................................................... 18, 19

*Oil Express Nat'l, Inc. v. D'Alessandro*,
    173 F.R.D. 219 (N.D. Ill. 1997) .......................................................................... 2

*Oviedo Town Ctr. II, L.L.P. v. City of Oviedo, Fla.*,
    759 F. App'x 828 (11th Cir. 2018) .................................................................... 17

*Rainey v. United Parcel Serv.*,
    No. 10 C 4669, 2013 WL 1181485 (N.D. Ill. Mar. 21, 2013) ............................. 13

*Saunders v. Farmers Ins. Exch.*,
    537 F.3d 961 (8th Cir. 2008) ...................................................................... 17, 18

*Sharp Elecs. Corp. v. Metro. Life Ins. Co.*,
    578 F.3d 505 (7th Cir. 2009) ............................................................................. 20

*Swanson v. Citibank, N.A.*,
    614 F.3d 400 (7th Cir. 2010) ............................................................................. 12

*TBS Grp., LLC v. City of Zion, Ill.*,
    No. 16-cv-5855, 2017 WL 319201 (N.D. Ill. Jan. 23, 2017) ............................. 17

*Tex. Dep't of Housing and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
    135 S. Ct. 2507 (2015) ....................................................................................... 16

**STATUTES**

15 U.S.C. § 1012(b) ................................................................................................ 17

28 U.S.C. § 1367(c)(3) ............................................................................................ 20

42 U.S.C. § 1981 .............................................................................................. passim

42 U.S.C. § 1982 .............................................................................................. passim

215 ILCS 5/143.1 .................................................................................................... 18

215 ILCS 5/154.6 .................................................................................................... 18

215 ILCS 5/154.7 .................................................................................................... 18

215 ILCS 5/155 ......................................................................................................... 1

42 U.S.C. § 3604(a) ........................................................................................... 1, 15

42 U.S.C. § 3604(b) ................................................................................................................ 1, 15

**RULES**

Fed. R. Civ. P. 8 ..................................................................................................................... 11

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 11

## INTRODUCTION

This case arises out of six property damage claims filed by Plaintiff The Connectors Realty Group Corporation ("Connectors") under a business owners insurance policy issued by Defendant State Farm Fire and Casualty Company ("State Farm"), and one claim filed by Plaintiff Antoine Nash under his State Farm homeowners policy. Plaintiffs allege that both Mr. Nash and Darryl Williams, the sole owner of Connectors, are African-American. (Corrected Am. Compl. (Dkt. 24), Count I ¶ 11; Count X ¶ 2.)[1] Both Plaintiffs assert that State Farm denied their claims (or failed to pay them in full) because of race, allegedly in violation of 42 U.S.C. §§ 1981 and 1982 and the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a) and (b). In addition, Connectors purports to assert a claim for breach of duty to defend and indemnify (Count IX), and both Plaintiffs allege claims for breach of contract and violation of Section 155 of the Illinois Insurance Code, 215 ILCS 5/155.

As set forth below, the Amended Complaint fails to state a claim under either Section 1981 or 1982, or a disparate treatment claim under the FHA, because it fails to allege *facts* demonstrating that race was the reason for State Farm's actions. Plaintiffs also fail to allege a disparate impact claim under the FHA, because they do not adequately allege any element of a prima face case, relying instead on a vaguely alleged "analysis" of unidentified, industry-wide "statistical evidence" that fails to establish a meaningful statistical disparity and is not causally connected to any identified State Farm policy. Those claims should accordingly be dismissed with prejudice.

In addition, the breach of contract claim asserted by Connectors in Count VIII is barred by Connectors' failure to bring suit within the time period set forth in its policy, and its claim for

---

[1] With the exception of Counts II and IX, the Amended Complaint numbers the paragraphs of each Count individually. Accordingly, this brief cites to allegations of Amended Complaint as follows: Count __ ¶ __. Exhibits A and B to the Amended Complaint (which are Plaintiffs' certified policies), are cited as Am. Compl. Ex. A and Am. Compl. Ex. B.

breach of the duty to defend (Count IX) fails both because the policy does not provide coverage for municipal code enforcement actions against the Connectors property, and because the violations giving rise to the actions occurred before the policy's effective date. These claims should likewise be dismissed with prejudice, and Plaintiffs' remaining state-law claims should be dismissed (without prejudice) for lack of federal subject-matter jurisdiction.[2]

## PLAINTIFFS' ALLEGATIONS

### *Connectors' State Farm Policy and Property Damage Claims*

Connectors is the named insured on a business owners insurance policy (the "Connectors Policy") issued by State Farm on January 5, 2017 for a mixed-use building that Connectors owns in Chicago. (Count I ¶¶ 12, 15 and Am. Compl. Ex. A.) Connectors admits that after purchasing the property in April of 2016 for $75,000, it then insured the property in January of 2017 for $400,000. (Count I ¶ 12 and Am. Compl. Ex. A, Declarations.) Connectors then proceeded to make six claims under the Policy, asserting total damages of more than $450,000, over the next three and a half months. (Count I ¶¶ 17-25, 28-34.)

On January 10, 2017—less than a week after the Connectors Policy issued—the insured property allegedly sustained significant "loss and damage" as the result of a tenant in Unit 2R leaving a bathroom window open during "a below freezing weather event." (Count I ¶¶ 17-18, 21 and 24.) Connectors filed three claims for these alleged losses: Claim No. 13-0670-8L5, for damage to the "walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank" that allegedly resulted when the pipes in the building "froze and burst" (Count I ¶¶ 18-19; Count

---

[2] Under the rule followed by courts in this district, a partial motion to dismiss extends the time to respond to the claims not addressed in the motion. *See, e.g., Oil Express Nat'l, Inc. v. D'Alessandro,* 173 F.R.D. 219, 220 (N.D. Ill. 1997). Accordingly, State Farm is not at this time filing an answer to the counts not addressed by its motion, but instead has requested that any obligation to respond to those counts be deferred until ruling on the motion.

III ¶ 7); Claim No. 13-1390-8S1, for damage to the building's boilers that allegedly resulted when the pipes burst, causing the boilers "to be submerged in water, rusted and inoperable" (Count I ¶ 21; Count IV ¶ 6); and Claim No. 13-190-8N9, for alleged damage to a commercial unit in the building, including alleged "loss and damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines, [and] collapse of front of store" (Count I ¶ 24; Count V ¶ 6).

On February 4, 2017, a theft and vandalism allegedly occurred at the insured premises. (Count I ¶ 28; Count VIII ¶ 5.)  Connectors alleges that "copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights, smoke detectors, carbon monoxide detectors" and other items were stolen, and that the vandalism damaged a stairwell, interior and exterior doors, walls, ceilings, windows, kitchen cabinets and radiators.  (Count I ¶ 28; Count VIII ¶ 5.)  On April 17, 2017, the Connectors property was allegedly damaged by a hail event (Count I ¶¶ 31-32; Count VI ¶ 5), and on April 23, 2017, the property allegedly suffered further loss and damage due to another theft (Count I ¶ 29; Count VII ¶¶ 5-6).

*Judicial and Administrative Actions Against the Connectors Property*

Connectors alleges that, "[t]he unrepaired loss and damage *arising out of* the Weather Event and State Farm's unreasonable delay and failure to pay the Connectors' Claims triggered" the filing of one judicial and two administrative municipal code enforcement actions (the "Actions") against Connectors by the City of Chicago.  (Count IX ¶ 51 (emphasis added).)  The public records of those proceedings, however, demonstrate that they were not related to either the alleged January 10, 2017 weather event or any act (or inaction) of State Farm.  (*See* Exs. 1-3.)[3]

---

[3] The Court may take judicial notice of these proceedings and their associated filings.  *See Limestone Dev. Corp. v. Vill. of Lemont*, 473 F. Supp. 2d 858, 867-68 (N.D. Ill. 2007).

In particular, the records of those proceedings show that the two administrative actions were filed on September 8, 2016 and December 28, 2016, and that they arose out of violations identified during inspections that occurred on August 18, 2016 and November 22, 2016, respectively —all well *before* both the issuance of the Connectors Policy *and* the supposed January 10, 2017 weather event.  (*See* Ex. 2 at 20 and Ex. 3 at 11.)  The Municipal Division complaint likewise arose out of violations that were identified during an inspection conducted prior to both the issuance of the Connectors Policy and the supposed January 10, 2017 weather event— specifically, on December 6, 2016.  (*See* Ex. 1 at Count I ¶¶ 3, 4.)  In other words, Connectors claims State Farm was obligated to defend and indemnify it for code enforcement proceedings initiated before it purchased its State Farm policy or which otherwise regarded code violations preceding policy inception.

Moreover, the Municipal Division complaint, which was filed on January 12, 2017, alleged that "on 12/06/2016 and on each succeeding day thereafter," Connectors failed to adequately heat the second floor rear dwelling unit, and specifically alleged that on the date of the inspection the temperature in the kitchen of that unit was 64 degrees, and the gas in the unit was shut off.  (*Id.* ¶ 3.)  The Municipal Division complaint thus contradicts Connectors' allegation that the property's heating system was "fully operational" when the Connectors Policy was issued on January 5, 2017 (*see* Count I ¶¶ 14, 15).  It likewise contravenes Connectors' allegation that the second floor rear tenant opened a bathroom window on January 10, 2017 "because it was hot in her apartment," and its claim that the reason "the heat was not working" after the January 10, 2017 weather event was that the pipes had burst because of the open window (*see* Count I ¶ 36).[4]

---

[4] The September 8, 2016 administrative complaint similarly suggests that the damage for which Connectors sought coverage under its State Farm Policy actually pre-dated the issuance of the Policy.  *Compare, e.g.*, Ex. 2, Admin. Compl. ¶¶ 5, 8, 11, 19, 26 (noting broken window panes on

### *State Farm's Handling of Connectors' Property Damage Claims*

Connectors alleges that Tina Beavers, who is Caucasian, was the State Farm claims adjuster assigned to the three Connectors claims arising out of the alleged January 10, 2017 weather event. (Count I ¶ 35.)  The Complaint further alleges that, between January 10 and January 20, 2017, Ms. Beavers had several telephone conversations regarding those claims with Darryl Williams, the sole shareholder of Connectors.  (Count I ¶ 36.)  While the Amended Complaint alleges that Mr. Williams is African-American, it does not allege that Ms. Beavers knew Mr. Williams' race when she spoke with him over the phone, or that the two ever interacted in person.  The Amended Complaint nevertheless purports to set forth statements allegedly made by Ms. Beavers during a January 20, 2017 telephone conversation with Mr. Williams that Plaintiffs characterize as "racially discriminatory."  (Count I ¶¶ 37-39.)[5]  Connectors alleges that Mr. Williams complained to State Farm about Ms. Beavers, "and requested that another adjuster be assigned" to those claims.  (Count I ¶ 42.)  The claims were in fact reassigned, and State Farm thereafter paid Connectors over $58,000 on Claim No. 13-0670-8L5.  (Count I ¶ 46; Count III ¶¶ 9-10.)

State Farm issued denial letters with respect to Connectors' claim for damage to the commercial unit arising out of the alleged January 10, 2017 weather event, the two theft/vandalism claims, and the April 17, 2017 hail claim.  (Count V ¶ 10; Count VI ¶ 10; Count VII ¶ 9; Count

---

the second and third floors, interior stairways "with loose, broken treads," a broken bedroom door in Unit 2R, and a broken kitchen outlet), *with* Count I ¶ 28 (alleging that the February 4, 2017 "theft and vandalism" resulted in damage including "second floor stairwell was vandalized, . . . the door in the apartment bedroom was torn off the hinges, a kitchen electric outlet was vandalized, . . . [and] the windows on the second and third floor were broken").

[5] State Farm denies that Ms. Beavers made the statements alleged, but assumes the truth of the allegations for purposes of this motion.

VIII ¶ 7; *see also* October 3, 2017 letters attached as Exs. 4-7.)[6] All these denial letters were signed by State Farm Team Manager Roger Krupp, not Ms. Beavers. (*See* Exs. 4-7.)

In his letter denying Connectors' claim for damage to the commercial unit allegedly caused by the January 10, 2017 weather event, Mr. Krupp explained the basis for the denial as follows:

> Our inspection determined the damages were the result of normal wear and tear and frozen water pipes. There was no evidence sufficient heat was maintained in the building and the damages are not the result of an accidental direct physical loss covered under the policy.

(Ex. 4 at 3.) With respect to the hail event claim, Mr. Krupp explained that, "[o]ur inspection determined the damages were the result of normal wear and tear and repeated leakage and seepage from a roof leak and not a result of an accidental direct physical loss covered under the policy." (Ex. 5 at 3.) State Farm denied Connectors' claim arising out of the alleged February 4, 2017 theft and vandalism because its inspection "determined the damages were the result of normal wear and tear and not a result of an accidental direct physical loss." (Ex. 6 at 3.) And State Farm similarly denied Connectors' alleged April 23, 2017 theft claim because its inspection "determined the damages were the result of normal wear and tear, rodent and mold damage and not a result of an accidental direct physical loss covered under the policy." (Ex. 7 at 3.) According to the Amended Complaint, State Farm has neither paid nor denied Connectors' claim for damage to the building's boilers arising out of the alleged January 10, 2017 weather event. (Count IV ¶ 8.)

***Connectors' Tender of the Municipal Code Enforcement Actions to State Farm***

Connectors alleges that on February 7, 2018, it tendered the previously discussed municipal code enforcement Actions to State Farm, and demanded that State Farm defend and indemnify

---

[6] The Court may consider State Farm's denial letters because each is referenced in the Amended Complaint and is central to Connectors' claims. *See Burke v. 401 N. Wabash Venture*, 714 F.3d 501, 505 (7th Cir. 2013).

Connectors in the Actions. (Count IX ¶ 51.) The Connectors Policy provides that, "[w]hen a Limit of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . *to which this insurance applies*." (Am. Compl. Ex. A, State Farm Bus. Owners Coverage Form at 23 (italics added).) The Policy expressly provides that State Farm "will have *no duty to defend* the insured against any 'suit' seeking damages for . . . 'property damage' . . . to which this insurance *does not apply*." (*Id.* (emphasis added).) The Policy also expressly provides that "this insurance *does not apply*" to "[p]roperty damage" to "[p]roperty you own, . . . including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason . . . ." (*Id.* at 24, 27 (emphasis added).)

The Policy also limits application of the business liability coverage to "property damage" that "occurs during the policy period[.]" (*Id.* at 23.) As previously discussed, all of the enforcement Actions arose out of municipal code violations that were found prior to the effective date of the Connectors Policy. Finally, the Policy expressly states that State Farm "do[es] not insure under any coverage for any loss which would not have occurred in the absence of" certain "excluded events," which include "[t]he enforcement of any ordinance or law . . . [r]egulating the construction, use or repair of any property." (*Id*. at 5.)

State Farm accordingly rejected Connectors' claim because it was "not covered by the policy of insurance." (Count IX ¶ 51; May 4, 2018 letter attached as Ex. 8.)

***Antoine Nash's Policy and Insurance Claim***

Plaintiff Antoine Nash is the named insured on a homeowners insurance policy (the "Nash Policy") issued by State Farm for his residential property located in Chicago. (Count X ¶¶ 2-3.)

On August 31, 2017, Mr. Nash listed the property for sale with HomeSmart Connect, LLC ("HomeSmart"), which "set up a lockbox outside the Premises containing the keys to the Premises for licensed real estate agents to make showings of the premises to prospective buyers." (Count X ¶¶ 4-5.) On October 26, 2017, according to the Amended Complaint, a theft occurred during such a showing. (Count X ¶¶ 6-7.) Mr. Nash reported the loss to State Farm, ultimately claiming a total loss of $46,757. (Count X ¶¶ 9-10.)

The Amended Complaint alleges that, as part of State Farm's processing of his claim, Mr. Nash was contacted by Peter Alfieri, an attorney representing State Farm. (Count XI ¶ 22.) On April 10, 2018, Mr. Alfieri allegedly sent Mr. Nash correspondence requesting certain documentation, including bank statements and income tax returns, and requiring that Mr. Nash appear at Mr. Alfieri's office for an examination under oath. (*Id.*) Mr. Nash alleges that, on April 24, 2018, he had an in-person conversation with Mr. Alfieri during which they discussed Mr. Alfieri's request for Mr. Nash's financial documents. (Count XI ¶ 23.) According to the Amended Complaint, Mr. Nash expressed unwillingness to leave the documents with Mr. Alfieri, and asked why he was being requested to "turn over" his "personal records." (*Id.*) Mr. Alfieri allegedly responded, "[b]ecause you filed a bankruptcy. We need to know your financial situation to see if you're in a financial hardship," and that Mr. Alfieri further stated, "[i]f you're in a financial hardship you'll commit fraud and file a false claim." (*Id.*) Mr. Nash allegedly reiterated that he did not "feel comfortable" leaving the documents, and asked whether he needed "to get a lawyer." (*Id.*) Mr. Alfieri allegedly responded, "[d]o whatever you want to do." (*Id.*) Mr. Nash alleges that in follow up conversations, Mr. Alfieri "laughed" and "called [Mr.] Nash a liar." (Count XI ¶ 24.) There are no allegations that Mr. Alfieri made any reference to Mr. Nash's race, suggested

that Mr. Nash would commit fraud because of his race, or stated that Mr. Nash's claim would be denied because of his race.[7]

Mr. Alfieri eventually received Nash's documents and conducted his examination under oath. (Count XI ¶¶ 22, 25.) State Farm thereafter denied Mr. Nash's claim because he "failed to establish" that he "suffered a loss in any amount." (*See* Ex. 9.)[8] The denial letter also quoted the "Concealment or Fraud" provision of the Nash Policy. (*Id.*)

***Plaintiffs' Allegations of Racial Discrimination***

The Amended Complaint asserts that, "[b]ut for the racially discriminatory conduct" of State Farm, Plaintiffs' claims would have been paid in full. (Count II ¶ 53; Count XI ¶ 33.) With respect to Connectors, Plaintiffs assert that State Farm's intent to discriminate on the basis of race is exemplified by Ms. Beaver's alleged statements during the January 20, 2017 phone call with Mr. Williams. (Count I ¶ 39.) But Connectors does not allege that Ms. Beavers even knew that Mr. Williams is African American, much less that she made any reference to his race. (Count I ¶ 37.) Connectors alleges only that Ms. Beavers used the phrase "you people," and when Mr. Williams asked her what she meant she supposedly explained that State Farm has "a lot of fraud in your area" – that is, the South side of Chicago. (*Id.*) It was Mr. Williams, not Ms. Beavers, who allegedly referred to "black folks" toward the end of that phone call. (*Id.*)

Moreover, the Amended Complaint contains no factual allegations to support the conclusory assertion that "but for" Ms. Beavers' alleged conduct, State Farm would have paid all Connectors' claims in full. Connectors does not allege that Ms. Beavers was involved in any way

---

[7] State Farm denies that Mr. Alfieri made the statements alleged by Plaintiffs, but assumes the truth of the allegations for purposes of this motion.

[8] The Court may consider this denial letter because it is referenced in the Amended Complaint (*see* Count XI ¶ 26) and is central to Mr. Nash's claims. *Burke*, 714 F.3d at 505.

in the handling of its two theft/vandalism claims, or the claim arising out of the alleged April 17, 2017 hail event.  And while Ms. Beavers was initially assigned the three claims arising out of the alleged January 10, 2017 weather event, Connectors admits that those claims were reassigned to a different adjuster in April of 2017, after which State Farm paid a substantial portion of Claim No. 13-0670-8L5.  (Count I ¶ 46; Count III ¶¶ 9-10.)  Connectors does not allege that Ms. Beavers had any involvement in the weather event claims after they were reassigned.  And as previously noted, the denial letters for Connectors' claims were signed by Roger Krupp, not by Ms. Beavers.

With respect to Mr. Nash, the Amended Complaint asserts that State Farm handled his claim "differently" because of his race, purportedly as evidenced by Mr. Nash's allegations concerning Mr. Alfieri.  (*See* Count XI ¶¶ 6, 22-26, 31, 37.)  Even taking those allegations as true, however, they establish only that Mr. Alfieri requested that Mr. Nash provide certain financial documents and appear for an examination under oath because Mr. Nash had filed for bankruptcy. (Count XI ¶ 23.)  Mr. Nash does not deny that he had in fact filed a bankruptcy petition on December 11, 2017.  (*See* Voluntary Petition for Individuals Filing for Bankruptcy, N.D. Ill. Bankr. Case No. 17-36604, attached as Ex. 10.)[9]

The Amended Complaint characterizes State Farm's alleged requirement that Mr. Nash provide bank statements and "other sensitive documents," and appear for an examination under oath, as "overly intrusive," and then alleges "[u]pon information and belief," with no supporting facts, that "African-Americans are subject to these procedures at a much higher rate than whites." (Count XI ¶ 31.)  The Amended Complaint similarly alleges on information and belief that State Farm "conducted no investigation of the theft," which the Amended Complaint also characterizes

---

[9] The Court may take judicial notice of Mr. Nash's bankruptcy petition.  *See Limestone Dev. Corp.*, 473 F. Supp. 2d at 867-68.

as "racially discriminatory conduct," and further alleges, again on information and belief and without any supporting facts, that "African-Americans are subject to such failure to investigate at a much higher rate than whites."  (Count XI ¶ 32.)

Finally, Plaintiffs purport to rely on an alleged "analysis" of unspecified "statistical evidence" from the Illinois Department of Insurance (the "Hasegawa Study") to support their racial discrimination claims.  (Count I ¶ 40; Count XI ¶ 29.)  According to Plaintiffs, this "analysis"— as to which Plaintiffs provide almost no details—"conclude[d]" that "the odds that a property insurance claim remains outstanding and unpaid at the end of the calendar year in a ZIP Code with a 75% black population is 23% more likely than a claim made in a ZIP Code with a 25% black population with comparable median incomes."  (Count I ¶ 40; Count XI ¶ 29.)  Plaintiffs do not allege the timeframe covered by the study, the nature of the analysis, the variables considered, or the methodology used.  The only fact Plaintiffs do provide is that the analysis was *not* State Farm-specific; rather, it "was performed on ZIP Code-level data on property insurance claims made upon *all* companies authorized to write homeowner's insurance in . . . Illinois." (Count I ¶ 40 (emphasis added); Count XI ¶ 29 (emphasis added).)  Plaintiffs nevertheless leap from this vaguely alleged, industry-wide "analysis" to the allegation that State Farm "target[s]" claims by policyholders residing in majority black ZIP Codes by treating such claims as presumptively fraudulent.  (Count I ¶¶ 7-8, 40; Count XI ¶¶ 4-5, 29.)  Plaintiffs cite no facts to support that allegation except to point to their own insurance claims, discussed above.  (*See* Count I ¶ 9.)

## <u>LEGAL STANDARD</u>

A complaint must be dismissed under Federal Rules of Civil Procedure 8 and 12(b)(6) if it does not contain factual allegations sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."  *Bell v. Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  In evaluating the sufficiency

of a complaint, the court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555. The court should also disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[,]" *Iqbal,* 556 U.S. at 678, and "naked assertion[s]" devoid of "further factual enhancement[.]" *Twombly*, 550 U.S. at 557. Ultimately, "the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404 (7th Cir. 2010).

In addition, in ruling on a motion to dismiss the Court may consider documents attached to the complaint, documents central to the complaint and referred to in it, and information that is properly subject to judicial notice. *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn,* 860 F.3d 489, 493 n.2 (7th Cir. 2017); *Burke,* 714 F.3d at 505. Documents of which the Court may properly take judicial notice include documents contained in the public record, including proceedings in other courts. *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137, n.14 (7th Cir. 2008); *Limestone Dev. Corp.*, 473 F. Supp. 2d at 867-68.

## ARGUMENT

## I.     The Amended Complaint Fails to State Claims Under Sections 1981 or 1982.

Section 1981 protects the right of all people "to make and enforce contracts" regardless of race. *Carter v. Chi. State Univ.,* 778 F.3d 651, 657 (7th Cir. 2015) (quoting 42 U.S.C. § 1981). Section 1982 prohibits racial discrimination in property transactions. *Morris v. Office Max, Inc.,* 89 F.3d 411, 413 (7th Cir. 1996). "Because of their common origin and purpose, § 1981 and § 1982 are generally construed in tandem." *Id.* To establish a claim under either Section, plaintiffs must show that (1) they are members of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute (*i.e.*, making and enforcing of a contract, or acquisition and use of

property).  *Id.; see also id.* at 415 (holding that Section 1982 claim failed because plaintiffs could not show that defendant's alleged conduct "impaired their ability to exercise property rights").

Thus, to successfully plead a claim under Section 1981 or 1982, plaintiffs "must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus."  *Mears v. Allstate Indem. Co.*, 336 F. Supp. 3d 141, 150 (E.D.N.Y. 2018) (internal quotation marks omitted); *see also Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982) (holding that to state a claim under Section 1981 a plaintiff "must allege some facts that demonstrate that his race was the reason" for the defendant's actions); *Rainey v. United Parcel Serv.*, No. 10 C 4669, 2013 WL 1181485, at *4 (N.D. Ill. Mar. 21, 2013) (same).  As a recent opinion by another court in this district put it, "[p]laintiffs must connect the dots between the alleged cause (their race) and the alleged effect (the discriminatory conduct)."  *Linda Constr. Inc. v. City of Chi.,* Case No. 15 C 8714, 2016 WL 4429893, at *2 (N.D. Ill. Aug. 22, 2016).

The Amended Complaint fails to allege sufficient facts to plead a Section 1981 or 1982 claim as to either Mr. Nash or Connectors.  With respect to Mr. Nash, the Amended Complaint fails to allege any facts that even suggest the existence of racial animus, much less demonstrate that his race was the reason State Farm denied his claim.  Mr. Nash alleges that State Farm's outside counsel, Mr. Alfieri, laughed at Mr. Nash, called him a liar, told him his claim would be denied if he did not provide certain financial documentation, and explained that the reason State Farm required the documentation was that Mr. Nash had declared bankruptcy, so State Farm needed to determine if he was "in a financial hardship," such that "would commit fraud and file a false claim."  (*See* Count XI ¶¶ 23-24.)  None of those alleged comments concerns Mr. Nash's race.  And Mr. Nash's conclusory, information and belief allegations that State Farm both subjects African-Americans to "overly intrusive" investigations and fails to conduct reasonable

investigations of their claims "at a much higher rate than whites" (Count XI ¶¶ 31-32) are plainly insufficient to "connect the dots" between Mr. Nash's race and the denial of his claim. *See Linda Constr. Inc.,* 2016 WL 4429893, at *2 (holding that plaintiffs cannot survive a motion to dismiss by simply tacking "because of plaintiffs' race" on to their allegations or alleging that defendants "treated plaintiffs differently than whites, on the basis of racial animus"); *Mears,* 336 F. Supp. 3d at 150 (dismissing Section 1981 claim where plaintiff's complaint consisted of "strictly conclusory allegations amount[ing] to rank speculation, with no specific factual instances, details or supporting information").

Plaintiffs likewise fail to connect the dots between Mr. Williams' race and State Farm's handling of Connectors' claims. Connectors does not allege that Ms. Beavers, who spoke with Mr. Williams by telephone, was aware of his race, and the statements attributed to Ms. Beavers do not in fact reference his race. (*See* Count I ¶¶ 36-37.) But even assuming that Ms. Beavers' alleged statements suggest racial animus on her part, they are insufficient to demonstrate that Williams' race was the reason State Farm denied certain of Connectors' claims. For one thing, State Farm admittedly *paid* nearly $60,000 to Connectors for its claimed losses arising out of the alleged January 10, 2017 weather event. (*See* Count III ¶¶ 9-10.) The only reasonable inference that can be drawn from this fact is that State Farm investigated the claims, evaluated them, and paid or denied them based on the results of its investigations, not because of Mr. Williams' race. *See e.g., Hu v. Huey,* No. 07 C 3822, 2008 WL 2797000, at *8 (N.D. Ill. July 18, 2008) (holding that contradictory and conclusory allegations "do not pass the speculative test set forth in *Twombly*").

Moreover, the Amended Complaint fails to link the statements allegedly made by Ms. Beavers in January of 2017 to State Farm's decisions, months later, to pay or deny Connectors' claims. Connectors does not allege that Ms. Beavers had any role in those decisions—indeed, it

does not allege that she was ever even assigned to three of the claims, and it concedes that the claims she initially *was* assigned were reassigned in April of 2017. Connectors also does not (and cannot) dispute that State Farm's letters denying Connectors' claims were signed by Roger Krupp, not Ms. Beavers.[10] Count II of the Amended Complaint, like Count XII, fails to state a claim under Section 1981 or 1982 and both Counts should be dismissed.

## II. The Amended Complaint Fails to State a Claim Under the FHA

The FHA makes it unlawful "[t]o refuse to sell or rent . . . , or otherwise make unavailable or deny, a dwelling to any person because of race . . . ," or "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race . . . ." 42 U.S.C. § 3604(a) and (b). As a general matter, a plaintiff can prove an FHA violation either "by showing that the defendant had discriminatory intent when making its decision" (disparate treatment) "or by showing that the decision caused a discriminatory effect" (disparate impact). *Edwards v. Lake Terrace Condo. Ass'n,* No. 1:10-cv-2986, 2011 WL 1548023, at *4 (N.D. Ill. Apr. 21, 2011). For the reasons discussed in Section I, Plaintiffs fail to plausibly allege that State Farm acted with discriminatory intent when it denied (or partially denied) the insurance claims submitted by Connectors and Mr. Nash. Accordingly, to the extent Plaintiffs purport to allege an FHA disparate treatment claim, Counts I and XI must be dismissed.

Plaintiffs' claims fare no better if they are viewed through the disparate impact lens. To state a disparate impact claim, a plaintiff must allege "(1) statistical disparity and (2) that the defendant maintained a specific policy which (3) caused the disparity." *Nat'l Fair Hous. All. v.*

---

[10] Although Ms. Beavers sent an initial letter denying one of Connectors' claims, State Farm subsequently reassigned *and then paid* a substantial amount on that claim. (Count I ¶¶ 45, 46, 52).

*Deutsche Bank,* 18 C 0839, 2018 WL 6045216, at *11 (N.D. Ill. Nov. 19, 2018). Plaintiffs fail to adequately allege any of these elements. Although Plaintiffs vaguely reference a purported "analysis" of unspecified "statistical evidence," they do not allege sufficient facts about the data, the nature of the analysis, the variables considered, or the methodology used even to raise an inference that there is a meaningful statistical disparity on an industry-wide basis, much less with respect to State Farm specifically. (*See* Count I ¶ 40 (noting that the analysis used data for all Illinois-licensed homeowners insurers).)

Plaintiffs also fail to identify a specific State Farm policy that allegedly caused the purported disparity. Instead, Plaintiffs attempt to bootstrap State Farm's decisions about Connectors' and Mr. Nash's individual claims together to allege the existence of a policy to treat claims from certain ZIP Codes as presumptively fraudulent. That is not enough to state a claim. *See Ellis v. City of Minneapolis,* 860 F.3d 1106, 1113-14 (8th Cir. 2017) (rejecting plaintiffs' attempt "to bootstrap numerous 'one-time decisions[s]' together in order to allege the existence" of a policy); *City of Joliet, Ill. v. New W. L.P.,* 825 F.3d 827, 830 (7th Cir. 2016) ("Disparate-impact analysis looks at the effects of policies, not one-off decisions . . . .").

Finally, "[a] plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a *causal connection* cannot make out a prima facie case of disparate impact." *Tex. Dep't of Housing and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2523 (2015) (emphasis added). As the Supreme Court stated in *Inclusive Communities*, "[a] robust causality requirement ensures that racial imbalance does not, without more, establish a prima facie case of disparate impact and thus protects defendants from being held liable for racial disparities they did not create." *Id.*; *see also id.* at 2522 (noting that disparate impact liability is "properly limited" to "avoid the serious constitutional questions that might arise . . . if such liability

16

were imposed based solely on a showing of statistical disparity"); *Oviedo Town Ctr. II, L.L.P. v. City of Oviedo, Fla.*, 759 F. App'x 828, 833-34 (11th Cir. 2018) (noting that *Inclusive Communities* "promulgated detailed causation requirements as a means of cabining disparate-impact liability," and recognized that, "[i]f a disparate impact claim could be founded on nothing more than a showing that a policy impacted more members of a protected class than non-members of protected classes, disparate-impact liability undeniably would overburden cities and developers.").

Plaintiffs fail to meet *Inclusive Communities'* robust causation requirement. Plaintiffs must show *how* State Farm's (unidentified) policy caused the racial imbalance allegedly demonstrated by the Hasegawa Study. They do not (and cannot) do so. Without a causal link, Plaintiffs fail to plead a prima facie case of disparate impact under the FHA. *See, e.g.*, *Cobb Cty. v. Bank of Am. Corp.*, 183 F. Supp. 3d 1332, 1347 (N.D. Ga. 2013) (dismissing disparate impact FHA claim because plaintiffs failed to allege how defendants' policies lead to the alleged statistical imbalance); *TBS Grp., LLC v. City of Zion, Ill.*, Case No. 16-cv-5855, 2017 WL 319201, at *3 (N.D. Ill. Jan. 23, 2017) (dismissing disparate impact FHA claim where plaintiff failed to allege facts demonstrating a causal connection between the challenged policy and any disparate impact).

Even if Plaintiffs could cure these defects (and they cannot), the Seventh Circuit has never held that FHA disparate impact liability applies to insurers. *See, e.g.*, *N.A.A.C.P. v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 290-91, 301 (7th Cir. 1992); *see also Saunders v. Farmers Ins. Exch.*, 537 F.3d 961, 964 (8th Cir. 2008) (expressing doubt that FHA allows disparate impact claims against insurers). And State Farm is not aware of any court that has found FHA disparate impact liability to apply to insurer claims handling, which is what is at issue here.[11]

---

[11] Such a claim would also potentially be barred by the McCarran-Ferguson Act, which prohibits construing a federal statute "to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012(b). Illinois law deems

For these reasons, Counts I and XI must be dismissed.

### III. Connectors' Breach of Contract Claim in Count VIII is Time-Barred.

The Connectors Policy provides that any action against State Farm under the Policy must be brought "within 2 years after the date on which the accidental direct physical loss occurred." (*See* Am. Compl. Ex. A, State Farm Bus. Owners Coverage Form, at 18.) Compliance with this suit limitation "is a condition precedent to recovery" under the Policy. *Cramer v. Ins. Exch. Agency,* 675 N.E.2d 897, 905 (Ill. 1996). Count VIII of the Amended Complaint asserts a breach of contract claim based on a purported loss that allegedly occurred on February 4, 2017. (Count VIII ¶ 5.) Thus, to be timely, any claim that State Farm breached the Connectors Policy with respect to that loss had to be brought by February 4, 2019. Connectors did not file this case, however, until February 5, 2019, and did not submit a sworn statement of loss that would have tolled the running of the limitation period under 215 ILCS 5/143.1. Accordingly, the claim asserted in Count VIII is barred by the suit limitation provision and should be dismissed.

### IV. Connectors' Claim for Breach of Duty to Defend and Indemnify Fails

Under Illinois law, whether an insurer's duty to defend has been triggered is determined by comparing the allegations in the complaint against the insured with the express language of the policy. *Northfield Ins. Co. v. City of Waukegan,* 701 F.3d 1124, 1129 (7th Cir. 2012). If it is clear from the face of the underlying complaint that the allegations "fail to state facts which bring the

---

certain acts to be improper claims practices, and vests exclusive authority to seek penalties for the commission of such acts in the state Director of Insurance. *See* 215 ILCS 5/154.6 and 154.7; *Area Erectors, Inc. v. Travelers Prop. Cas. Co. of Am.*, 981 N.E.2d 1120, 1127 (Ill. App. Ct. 2012) (holding no private right of action under Section 154.6). Allowing FHA disparate impact liability based on alleged statistical disparities in the payment of property insurance claims would "impair" that regulatory regime. *See, e.g.*, *Saunders*, 537 F.3d at 968 (holding disparate impact claims relating to insurance pricing barred where state law did not provide a private right of action for unfairly discriminatory rates).

case within, or potentially within, the policy's coverage," the insurer "may justifiably refuse to defend the insured." *Id.* (internal citation and quotation omitted).

In this case, the complaints filed against Connectors in the Actions clearly fail to state facts that bring the Actions within, or potentially within, the Connectors' Policy. The Policy's business liability coverage provides that State Farm "will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' . . . *to which this insurance applies*," and further states that State Farm "will have *no duty to defend* the insured against any 'suit' seeking damages for . . . 'property damage' . . . to which this insurance *does not apply*." (Am. Compl. Ex. A, State Farm Bus. Owners Coverage Form at 23 (emphasis added).) The Policy expressly provides that "this insurance *does not apply*" to "[p]roperty damage" to "[p]roperty you own, . . . including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason . . . ." (*Id.* at 24, 27 (emphasis added).) All the Actions, on their face, relate to conditions *of the Connectors property* that allegedly violate the municipal code, and seek orders requiring Connectors to correct the violations and potentially imposing fines, costs and penalties for the violations. (*See* Exs. 1-3.) By its express terms, the Policy "does not apply" to sums that Connectors becomes liable to pay as a result of such conditions, and State Farm therefore had no duty to defend the Actions.

Moreover, the Connectors Policy also expressly limits application of the Policy's business liability coverage to "property damage" that "occurs during the policy period[.]" (*See* Am. Compl. Ex. A, State Farm Bus. Owners Coverage Form at 23.) Here, all of the Actions arose out of violations that were discovered prior to the January 5, 2017 effective date of the Policy. (*See supra* at 3-4.) For this reason as well, State Farm had no duty to defend. *See Northfield Ins. Co.*, 701

F.3d at 1129 (noting that insurer can justifiably refuse coverage when the underlying allegations accrue outside of the relevant policy period).

Finally, Connectors' assertion that State Farm is estopped from raising policy defenses because it did not defend the Actions under a reservation of rights or seek declaratory judgments is misplaced. The estoppel doctrine does not apply when, after comparing the policy and the complaint, the insurer clearly had no duty to defend. *Lyerla v. AMCO Ins. Co.,* 536 F.3d 684, 692-93 (7th Cir. 2008). Count IX must accordingly be dismissed.

## V. Plaintiffs' State-Law Claims Should Be Dismissed for Lack of Federal Jurisdiction.

The sole basis for federal jurisdiction over this case is Plaintiffs' assertion of claims under 42 U.S.C. §§ 1981 and 1982 and the FHA. (*See* Am. Compl. ¶¶ 1-2.) Accordingly, if the Court grants State Farm's motion, it should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims, and dismiss them without prejudice pursuant to 28 U.S.C. § 1367(c)(3). *See Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) (stating that when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims).

## CONCLUSION

For the foregoing reasons, State Farm respectfully requests that the Court dismiss with prejudice Plaintiffs' claims under Sections 1981 and 1982 and the FHA (Counts I, II, XI and XII), Connectors' claim for breach of contract asserted in Count VIII, and its claim for breach of duty to defend and indemnify (Count IX). In addition, State Farm requests that the Court decline to exercise supplemental jurisdiction over any remaining state-law claims and dismiss those claims without prejudice.

Dated: July 19, 2019

Respectfully submitted,

/s/ Sondra A. Hemeryck

Sondra A. Hemeryck
Mariangela M. Seale
Sarah E. Finch
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Tel: 312-471-8700
Fax: 312-471-8701
shemeryck@rshc-law.com
mseale@rshc-law.com
sfinch@rshc-law.com

*Attorneys for Defendant State Farm Fire &
Casualty*

## CERTIFICATE OF SERVICE

I, undersigned counsel, certify that on July 19, 2019, I filed a copy of the foregoing document electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

/s/ Sondra A. Hemeryck