UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE CONNECTORS REALTY GROUP CORPORATION, DARRYL WILLIAMS, and ANTOINE NASH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 19 C 743 |
| STATE FARM FIRE & CASUALTY COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant State Farm Fire & Casualty Company's ("State Farm") motion to dismiss Plaintiffs The Connectors Realty Group Corporation ("Connectors"), Darryl Williams ("Williams"), and Antoine Nash's ("Nash") (collectively, "the Plaintiffs") amended class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the amended complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All

reasonable inferences are drawn in the Plaintiffs' favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

***Connectors' Factual History***

Connectors is an Illinois corporation that manages and owns residential and commercial real estate. Williams, an African-American male, was Connectors' owner and sole shareholder. State Farm is an insurance company authorized to do business in Illinois.

At all relevant times, Connectors owned a property at 622–624 West 79th Street, Chicago, Illinois 60620 ("the Premises"). The Premises includes two commercial spaces, six apartment units, and a basement.

To insure the Premises, Connectors contacted State Farm at some time before January 5, 2017. State Farm inspected the Premises and determined that it was fully occupied, that all of the operating systems—including heat, electrical, plumbing, and boilers—were fully operational, and that the Premises met State Farm's standards for insurability. State Farm recommended that the Premises be insured for a replacement value amount of $400,000.

On or about January 5, 2017, State Farm executed and delivered to Connectors its Insurance Policy No. 93-GQ-Z610-71 ("the Connectors Policy") for property and liability insurance on the Premises. Under the terms of the Connectors Policy, State Farm insured against loss and damage to the Premises, including water damage, equipment breakdown, theft, vandalism, and loss of income for one year from the date

2

of the loss. The Connectors Policy provides that loss will be payable 30 days following receipt of a proof of loss statement.

### *i. Weather Event Claims*

On January 10, 2017, there was a below freezing weather event ("the Weather Event") in Chicago, Illinois. Tenant Lynette Crawley ("Crawley") left a bathroom window open in Unit 2R of the Premises during the Weather Event. This caused pipes to freeze and burst, resulting in damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank to the tune of $86,155. Connectors filed a corresponding claim ("Claim No. 13-0670-8L5") with State Farm for the cost of the damage and the loss of rental income for one year at a rate of $3,850 per month. In total, Connectors claimed $132,355. They submitted a proof of loss statement for that amount minus the amount of the deductible on August 4, 2017.

As an additional result of the Weather Event and Crawley's action, water from the burst pipes submerged the boilers in water, causing them to become rusted and inoperable. This resulted in damage of $60,000, for which Connectors filed in a second claim ("Claim No. 13-1390-8S1"). They filed a corresponding proof of loss statement minus the amount of the deductible on September 5, 2017.

Connectors submitted a third claim ("Claim No. 13-1390-8N9") related to the Weather Event for damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines; the collapse of the store front; and electric and gas lines being down,

resulting in $116,955 in damage. On August 11, 2017, Connectors filed a corresponding proof of loss statement minus the amount of the deductible.

According to Connectors, State Farm refused to repair or replace the inoperable boilers. Therefore, the residents vacated the Premises and stayed in a hotel at Connectors' expense, leaving the Premises almost entirely unoccupied.

### *ii. Vandalism Claims*

On February 4, 2017, a theft and vandalism occurred at the Premises, for which Connectors filed a claim with State Farm ("Claim No. 13-0790-6C6"). Connectors claimed damages for stolen copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights, smoke detectors, carbon monoxide detectors, industrial heaters, cabinets, and radiators; for broken light bulbs, doors, electric outlets, and windows; and for damaged stairwells, ceilings, and walls, resulting in a total loss of $120,000.

On April 23, 2017, a second theft occurred at the Premises, for which Connectors suffered loss and damage in the amount of $48,500. Connectors filed a claim ("Claim No. 13-1390-8K9") for this loss with State Farm. On August 11, 2017, Connectors filed a corresponding proof of loss statement minus the amount of the deductible.

### *iii. Hail Event Claim*

On April 17, 2017, a hail event ("the Hail Event") occurred in Chicago, Illinois. The Hail event caused a hole in the third-floor roof of the Premises, damaging the ceiling and drywall in the amount of $17,500. Connectors filed a claim ("Claim No.

4

13-1390-8F4") with State Farm for their losses and filed a corresponding proof of loss statement on August 11, 2017.

### *iv. State Farm's Processing of Connectors' Claims*

Tina Beavers ("Beavers") is a Caucasian State Farm employee and claim adjuster who was assigned to the three claims arising from the Weather Event. Between January 10, 2017 and January 20, 2017, Williams had several telephone conversations with Beavers regarding the claims. Beavers inquired as to who was living at the Premises and how the losses occurred. Williams explained that Crawley left the bathroom window open, which froze and burst the pipes. Beavers asked for the tenants' leases and stated that she wanted to speak with Crawley. Williams complied with Beavers' request and provided her with the leases.

On January 20, 2017, Williams and Beaver had the following conversation:

Tina Beavers said, "Are you sure someone was living there (meaning Unit 2R)?["]
Darryl Williams said, "Yes. Somebody's living there."
Tina Beavers said, "Well, I couldn't get a hold of her. Do you have any other phone number for her?"
Darryl Williams said, "No."
Tina Beavers said, "Well, you get a hold of her, if she really exists."
Darryl Williams said, "That's not my job to get a hold of her. I gave you all the information."
Tina Beavers said, "You mean to tell me you people don't use Facebook and other social media and you don't know any of her homeys who could get in contact with her?"
Darryl Williams said, "What the hell do you mean about 'you people'?"
Tina Beavers said, "We have a lot of fraud in your area."
Darryl Williams said, "What do you mean by 'your area'?"
Tina Beavers said, "South Side of Chicago and you all's neighborhoods."

> Darryl Williams said, "I thought we could live anywhere. I didn't know we had neighborhoods."
> Tina Beavers said, "Don't act like you don't know what I'm talking about. Just be truthful with me."
> Darryl Williams said, "So you think black folks lie about everything anyway. You don't believe any damn thing we say anyway. I, frankly, think it's fuckin' offensive for you calling us 'you people' and I'm reporting this."
> Tina Beavers laughed and said, "Do what you have to do."

Following this conversation, Williams complained to State Farm and requested that a new claim adjuster be assigned to the claims related to the Weather Event. In February 2017, Williams received a call from State Farm's Special Investigations Unit Team Leader Roger Krupp ("Krupp"). Krupp promised to reassign Connectors' claims to another claim adjuster.

Between February and April 2017, Williams called State Farm several times to inquire about the status of his claims. Each time, his calls were routed to Beavers. Beavers told Williams, "You're stuck with me. I'm the person; that's it." On March 24, 2017, Beavers sent Williams a letter denying Claim No. 13-0670-8L5.

In a subsequent call between Williams and Krupp, Krupp stated, "We'll get you someone else." Williams' calls were then routed to a new claim representative. On April 27, 2017, the claim was reassigned to Thomas Wegner, a Claim Specialist in the Special Investigations Unit.

After the letter of denial, Krupp called Williams and told him his claim was approved. However, Williams did not receive the full promised claim payment. State Farm has piecemeal paid the claim beginning on October 16, 2017. There is a

remaining balance of $76,776.29. State Farm refuses to pay the remaining claims. As a result, Williams was unable to maintain the Premises and was forced to sell it.

### *v. Municipal Actions*

During this period, the Premises became a public nuisance in violation of various provisions of the Municipal Code of the City of Chicago. Accordingly, the City brought both judicial and administrative actions against Connectors.

On February 8, 2018, Connectors tendered the actions to State Farm and demanded that State Farm defend and indemnify Connectors in the actions. However, State Farm refused. As a result, Connectors paid tens of thousands of dollars in fines and legal fees in its defense.

## *Nash's Factual History*

Nash is an African-American Illinois resident who owns the residential property at 12535 South Honore Street, Calumet Park, IL 60827 ("the Nash Premises"). On or about August 1, 2017, State Farm issued to Nash a renewal certificate for Homeowners Policy No. 13-EP-C974-7 ("the Nash Policy"). The Nash Policy states that "loss will be payable 30 days after we receive your proof of loss."

On or about August 31, 2017, Nash listed the Nash Premises for sale. As part of the sale process, prospective buyers would arrange to tour the Nash Premises, and Nash would leave during showings. On October 26, 2017, a prospective buyer toured the Nash Premises from 3:30 p.m. to 4:00 p.m. Upon Nash's return to the Premises that

7

evening, he discovered a theft of personal property in the amount of $46,756.99. Nash immediately telephoned the Calumet Park Police Department.

The following day, Nash reported the loss to State Farm ("Claim No. 13-1903-D24"). On February 13, 2018, Nash submitted a corresponding proof of loss statement.

Nash was contacted by attorney Peter Alfieri ("Alfieri"), an attorney and agent of State Farm, as part of State Farm's processing of Claim No. 13-1903-D24. On April 10, 2018, Alfieri requested certain documentation from Nash, including bank statements and income tax returns. He also requested that Nash appear at his office for an examination under oath.

On April 24, 2018, Nash appeared at Alfieri's office, and the men had the following conversation:

> Mr. Alfieri: "Do you have the papers I requested?"
> Antoine Nash: "Yes, but I have a question. I said these are sensitive documents. I will only allow you to look at them while I'm present. We can go over them together."
> Mr. Alfieri: (Laughter) "Oh, so you're refusing to give me the documents."
> Antoine Nash: "No, I'm not refusing, but I don't feel comfortable leaving my personal information with you."
> Mr. Alfieri: (Laughter) "Okay, that's just perfect. Your claim will be denied."
> Antoine Nash: "I was under the impression you were here to help, not harm. Why do I have to turn over my personal records?"
> Mr. Alfieri: (Laughter) "Because you filed a bankruptcy. We need to know your financial situation to see if you're in a financial hardship."
> Antoine Nash: "A financial hardship. What does that mean?"
> Mr. Alfieri: "If you're in a financial hardship you'll commit fraud and file a false claim."

Antoine Nash: "File a false claim? Commit fraud? Just because I'm having financial hardship doesn't mean I'll commit fraud or do something illegal."
Mr. Alfieri started to walk away from the receptionist's window back towards his offices.
Antoine Nash: "What am I supposed to do now?"
Mr. Alfieri: "Are you refusing to give me these documents?"
Antoine Nash: "No. But I don't feel comfortable leaving them with you. Do I need to get a lawyer?"
Mr. Alfieri (as he was walking away): "Do whatever you want to do."

Nash turned over the requested documents by July 2018 and completed the examination under oath on August 8, 2018. On October 31, 2018, State Farm denied Claim No. 13-1903-D24 on the purported basis of fraud.

*State Farm's Racially Discriminatory Policy*

Based on these events, the complaint avers that State Farm maintains data regarding loss experience on its homeowners and small business insurance organized by ZIP Code for the City of Chicago. State Farm uses this ZIP Code data to "redline" claims from majority-black ZIP Codes on the South and West Sides of Chicago by processing such claims as presumptively fraudulent through its Special Investigations Unit. This policy results in the denial and unreasonable delay of payment for legitimate claims from black-majority ZIP Codes.

The complaint cites to an analysis performed by R. Hasegawa and A. Wyner at the Wharton School of the University of Pennsylvania using statistical evidence from the Illinois Department of Insurance. The analysis concluded "that the odds that a property insurance claim remains outstanding and unpaid at the end of the calendar year

in a ZIP Code with a 75% black population is 23% higher than a claim made in a ZIP Code with a 25% black population with comparable median incomes." The analysis was based on data from property insurance claims made upon all companies authorized to write homeowner's insurance in the State of Illinois. State Farm has the largest market share of the homeowner's insurance market in the City of Chicago.

The Plaintiffs filed their initial complaint on February 5, 2019, alleging claims for breach of contract and violations of 42 U.S.C. § 1981. On June 25, 2019, the Plaintiffs filed an amended complaint, adding claims for breach of the duty to defend and indemnify and violations of the Fair Housing Act ("FHA") and 42 U.S.C. 1982. On July 19, 2019, State Farm filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **LEGAL STANDARD**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations, but they must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow…the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

State Farm moves the Court to dismiss the amended complaint for several reasons: (1) the Plaintiffs do not state a claim for violations of 42 U.S.C. §§ 1981, 1982; (2) the Plaintiffs do not state a claim for FHA violations; (3) the breach of contract claim in Count VIII is time barred; (4) State Farm has no duty to defend or indemnify under Connectors' Policy; and (5) the Court should decline supplemental jurisdiction over the remaining state law claims. The Court addresses each argument in turn.

**I. Violations of 42 U.S.C. §§ 1981 and 1982**

Section 1981 protects the rights of individuals to "make and enforce contracts" regardless of race. 42 U.S.C. § 1981. Section 1982 states, "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. "Because of their common origin and purpose, § 1981 and § 1982 are generally construed in tandem." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

To state a claim under either section, "the plaintiffs must show that (1) they are members of a racial minority; (2) the defendant has an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Id.* The Seventh Circuit has elaborated on this requirement, stating that plaintiffs "must allege some facts that demonstrate that [their] race was the reason for the defendant's inaction." *Jafree v. Barber*, 689 F.2d 640, 643 (7th Cir. 1982). In other words, "[t]he complaint must allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus." *Mears v. Allstate Indemnity Co.*, 336 F. Supp. 3d 141, 150 (E.D.N.Y. 2018) (quoting *Dickerson v. State Farm Fire & Cas. Co.*, 1996 WL 445076, at *3 (S.D.N.Y. 1996)).

State Farm asserts that the Plaintiffs fail to state a claim because they do not suggest the existence of racial animus or draw the connection to State Farm's conduct. With respect to Connectors, the Court disagrees. The conversation between Williams and Beavers clearly demonstrates racial animus, as the State Farm employee used terms such as "homey" and "you people" to refer to African Americans. Beavers also suggested that the South Side of Chicago was "you all's neighborhoods." Moreover, Connectors pleads that this animus was connected to State Farm's processing of their claims, since they were all treated as presumptively fraudulent and remain unpaid either in full or in part. These allegations are enough to pass muster at the pleadings stage, and the Court denies the motion to dismiss Count II.

With respect to Nash, the Court agrees with State Farm that the pleadings are insufficient. Nash alleges that State Farm processed his theft claim as fraudulent as a result of his bankruptcy filing. He asserts that Alfieri called him a liar, gave him a hard time regarding his financial documents, and subjected him to an examination under oath. However, Nash does not plead any facts to support the existence of racial animus on behalf of State Farm, nor does he connect any such animus to his treatment. "Even if the Defendants' actions were improper, they were not necessarily racially motivated." *Id.* Absent that factual support, the Court must dismiss Counts XII and XIII for failure to state a claim.

**II. FHA Violations**

The FHA makes it unlawful "to refuse to sell or rent…or otherwise make unavailable or deny, a dwelling to any person because of race…," 42 U.S.C. § 3604(a), or "to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race…," 42 U.S.C. § 3604(b). United States Department of Housing and Urban Development regulations make clear that "[r]efusing to provide…property or hazard insurance for dwellings or providing such services or insurance differently because of race…" violates the FHA. 24 C.F.R. § 100.70(d)(4).

To state an FHA claim, the plaintiff must show "that the defendant had a discriminatory intent when making its decision or by showing that the decision caused a discriminatory effect." *Edwards v. Lake Terrace Condo. Ass'n*, 2011 WL 1548023,

at *4 (N.D. Ill. 2011). A showing of discriminatory intent sets forth a disparate treatment claim, and a showing of discriminatory effect sets forth a disparate impact claim. The Court analyzes each in turn.

### A. Disparate Treatment

State Farm claims that the Plaintiffs insufficiently plead a disparate treatment claim for the same reasons laid out in Section I, namely that State Farm did not have a discriminatory intent when making its decisions. With respect to Connectors, the Court once again disagrees with State Farm.

Connectors clearly asserts that Beavers said, "We have a lot of fraud in your area," referring to the "South Side of Chicago and you all's neighborhoods." She proceeded to process Connectors' claims as fraudulent, all of which remain unpaid in full or in part. Connectors alleges that "Beavers' statement that there is 'a lot of fraud' in the 'South Side of Chicago and you all's neighborhoods,' is an accurate description of State Farm's view and treatment of claims from black majority ZIP Codes in the City of Chicago." These allegations suffice to stave off a motion to dismiss. As such, the motion to dismiss Count I is denied.

Regarding Nash's allegations, the Court agrees with State Farm that there are insufficient allegations to infer discriminatory intent. As previously noted, there are no facts to indicate that State Farm's actions as to Nash were racially motivated.

Nash attempts to salvage this theory by citing *Burrell v. State Farm and Casualty Company*, 226 F. Supp. 2d 427 (S.D.N.Y. 2002), a case he claims is analogous to his

14

situation. In *Burrell*, the plaintiffs alleged that State Farm violated the FHA by denying their insurance claims after an electrical fire. *Id.* at 435. The plaintiffs claimed that State Farm denied the claims "allegedly because the plaintiffs had failed to provide appropriate statements under oath to corroborate their claims." *Id.* However, the plaintiffs asserted that the real rationale for the denial was their race. The *Burrell* Court denied the motion to dismiss, finding that "the plaintiffs are not required to plead any additional facts giving rise to an inference of discriminatory intent." *Id.* at 440. However, this opinion is not persuasive because it was decided prior to the Supreme Court's decisions in *Twombly* and *Iqbal* which clarified the pleading requirements. Even if such conclusory allegations sufficed in 2002, they do not today. Accordingly, Nash did not sufficiently state a claim under a disparate treatment theory, so the Court must turn to the disparate impact theory.

### B. Disparate Impact

To state a disparate impact claim under the FHA, a plaintiff must allege "(1) a statistical disparity and (2) that the defendant maintained a specific policy which (3) caused the disparity." *Nat'l Fair Hous. All. v. Deutsche Bank*, 2018 WL 6045216, at *11 (N.D. Ill. 2018). Here, Nash alleges that State Farm maintains a policy of redlining insurance claims from majority-black ZIP Codes on the South and West Sides of Chicago. He states that this policy results in State Farm processing such claims as presumptively fraudulent and denying legitimate claims. This is sufficient to satisfy the second and third prong of the *National Fair Housing Alliance* test.

The Court reaches a different conclusion regarding the statistical disparity prong. Nash pleads that an analysis performed by R. Hasegawa and A. Wyner concluded "that the odds that a property insurance claim remains outstanding and unpaid at the end of the calendar year in a ZIP Code with a 75% black population is 23% higher than a claim made in a ZIP Code with a 25% black population with comparable median incomes." He notes that the analysis was "performed on ZIP Code-level data on property insurance claims made upon all companies authorized to write homeowner's insurance in the State of Illinois." The Court concludes that this is insufficient to demonstrate a disparity as to State Farm specifically, rather than the industry as a whole. Moreover, State Farm rightly notes the deficiencies in the analysis, stating that the data, nature, and methodology of the analysis are unclear and call into question the validity of the analysis's conclusion. Without a sufficient pleading regarding a statistical disparity in State Farm's claims, the Court cannot find that Nash has stated a claim under a disparate impact theory. Therefore, the motion to dismiss Count XI is granted.

**III. Count VIII Breach of Contract Claim**

Under Illinois law, "[c]ompliance with the suit limitation provision of the policy is a condition precedent to recovery under a policy." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 905 (Ill. 1996). Therefore, a plaintiff must bring an action within the policy's specified timeframe to bring a breach of contract claim. *Id.* State Farm alleges that the Plaintiffs brought Count VIII outside of the policy's two-year period by filing the action on February 5, 2019—as the two-year period ended on February 4, 2019.

The Plaintiffs counter by citing Federal Rule of Civil Procedure 6(a)(3)(A), which states that "if the clerk's office is inaccessible on the last day for filing under Rule 6(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(3)(A). The rule makes clear that "inaccessible" should not be narrowly interpreted to refer only to weather-related inaccessibility. Rather, "an outage of the electronic filing system" counts as "inaccessible" for purposes of the rules. *Id.* at 2009 Amend. Therefore, the unresponsiveness of the Court's CM/ECF website on February 4, 2019 counts as "inaccessible" to trigger Rule 6's deadline extension to "the first accessible day that is not a Saturday, Sunday, or legal holiday." *Id.* at (a)(3)(A). As the first accessible day was February 5, 2019, the Plaintiffs timely filed the complaint. Accordingly, the Court denies the motion to dismiss Count VIII.

**IV. Breach of Duty to Defend and Indemnify**

State Farm urges the Court to dismiss Count IX for the breach of duty to defendant and indemnify because they had no such duty under the terms of Connectors' Policy. Given that the Plaintiff has agreed to the dismissal of this claim, the Court grants the motion to dismiss Count IX.

**V. State Law Claims**

"If a district court possesses original jurisdiction over one claim, 28 U.S.C. § 1367(a) permits that court to also exercise supplemental jurisdiction over any claim that is 'so related to claims in the action within such original jurisdiction that they form part

of the same case or controversy.'" *Walker v. Ingersoll Cutting Tool Co.*, 915 F.3d 1154, 1157 (7th Cir. 2019) (quoting 28 U.S.C. § 1367). Where the Court has dismissed the claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over the related state law claims. *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1250–51 (7th Cir. 1994). Given that the Court denies the motion to dismiss Connectors' federal claims, the state law claims brought by Connectors may proceed as well.

However, the Court dismissed the federal claims related to Nash, leaving only a state law breach of contract count and a claim for attorney's fees under Illinois law. Given that these claims do not "form part of the same case or controversy" as those on behalf of Connectors, the Court declines to exercise supplemental jurisdiction over Nash's state law claims. As such, the Court grants the motion to dismiss Counts X and XV.

## CONCLUSION

For the aforementioned reasons, the Court grants in part and denies in part State Farm's motion to dismiss. Counts IX, X, XI, XII, XIII, and XV are dismissed. The remaining counts on behalf of Connectors may proceed. It is so ordered.

Dated: 10/9/2019

_____
Charles P. Kocoras
United States District Judge