**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| THE CONNECTORS REALTY GROUP CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19-cv-00743 |
| vs. | ) | |
| | ) | Honorable Charles P. Kocoras |
| STATE FARM FIRE & CASUALTY COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
AMENDED ANSWER TO CLASS ACTION COMPLAINT (CORRECTED)
AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendant State Farm Fire and Casualty Company ("State Farm") hereby submits its Amended Answer to the Amended Class Action Complaint (Corrected), Affirmative Defenses, and Counterclaim against Plaintiff The Connectors Realty Group Corporation ("Connectors" or "Plaintiff").[1]

<u>JURISDICTION AND VENUE</u>

1.    Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1981, 1982 and 1988, Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. § 3604(a) and (b) and the Fourteenth Amendment to the United States Constitution.

**ANSWER:**  State Farm admits that the Amended Complaint purports to assert claims pursuant to 42 U.S.C. §§ 1981, 1982 and Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. § 3604(a) and (b) and the Fourteenth Amendment to the United States Constitution.

---

[1] Although the caption of the Amended Complaint filed also identifies two individuals—Darryl Williams and Antoine Nash—as Plaintiffs, the Amended Complaint does not actually assert any claims on behalf of Mr. Williams, and the Court has dismissed all of the claims asserted by Mr. Nash.  *See* Dkt. 38.

State Farm denies that Connectors has asserted or could assert a claim against State Farm (a private actor) under the Fourteenth Amendment to the United States Constitution, denies that State Farm has violated any of the statutes cited in this paragraph, denies that Connectors has sustained any injury or damages as a result of any alleged wrongdoing by State Farm, and denies that Connectors is entitled to any recovery from this action.

2.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3).

**ANSWER:** State Farm admits that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) over Connector's claims brought pursuant to 42 U.S.C. §§ 1981, 1982 and Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. § 3604(a) and (b). State Farm denies that the Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) over Connectors' breach of contract and breach of duty to defend and indemnify claims and claims for violation of 215 ILCS 5/155. State Farm denies that Connectors has sustained any injury or damages as a result of any alleged wrongdoing by State Farm, and denies that Connectors is entitled to any recovery from this action.

3.      Venue is proper pursuant to 28 U.S.C § 1391(b) because a substantial part of the events giving rise to the claims herein occurred in this district.

**ANSWER:** State Farm admits that venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because the insured property giving rise to Connectors' purported claims is located within this judicial district. State Farm denies that Connectors has sustained any injury or damages as a result of any alleged wrongdoing by State Farm and denies that Connectors is entitled to any recovery from this action.

## COUNT I

[Violations of Fair Housing Act, 42 U.S.C. § 3604(a) and (b) – Connectors]

4.    At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

**ANSWER:**  State Farm admits that it is an insurance company authorized to do business, and doing business, in the State of Illinois.

5.    State Farm maintains data regarding loss experience on its homeowners and small business insurance organized by ZIP Code for the City of Chicago, Illinois. State Farm shields this data from the public, and stores it in secured areas and by electronic means. State Farm considers this data a trade secret and has gone to great lengths to protect and safeguard its secret status.

**ANSWER:**  State Farm admits that, to comply with Illinois law, it maintains data regarding loss experience on its insurance business by ZIP Code in the City of Chicago, that it considers this data to be a trade secret, that the data is not publicly available, and that State Farm has taken measures to prevent the disclosure of this data either to persons or entities outside State Farm or to persons within State Farm's enterprise other than those who have a specific business need for the data, including maintenance of the data in a secure database that is only accessible to a limited number of State Farm employees.  State Farm denies all remaining allegations contained in Count I Paragraph 5.

6.    The vast majority of ZIP Codes are heavily predominated by only one racial group.

**ANSWER:**  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Count I Paragraph 6.

7.    State Farm utilizes this ZIP Code data to "redline" by ZIP Code homeowners and small business insurance claims by treating as presumptively fraudulent claims from policyholders residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by

underpaying such legitimate claims and by failing and refusing to pay such legitimate claims.

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 7.

8. State Farm's treatment of such claims from black-majority ZIP Codes on the South and West Sides of the City of Chicago as presumptively fraudulent results in State Farm engaging racial discrimination by treating insurance claims filed by blacks unequally from those filed by whites due to the race of the claimant.

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 8.

9. Representative of State Farm's racially discriminatory treatment of homeowners and small business insurance claims in the City of Chicago is State Farm's treatment of claims filed by Plaintiffs.

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 9.

10. At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate.

**ANSWER:** State Farm lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Count I Paragraph 10.

11. Darryl Williams, a former Deputy U.S. Marshall [sic] and a public safety officer, is African-American, a member of a racial minority, and the sole shareholder and owner of Connectors. Darryl Williams is the person through whom all communications and transactions for Connectors, his wholly-owned corporation, were carried on with State Farm.

**ANSWER:** State Farm lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in the first sentence of Count I Paragraph 11. State Farm admits that

its communications with Connectors regarding the property damage claims that are the subject of

this action were through Darryl Williams, and lacks knowledge or information sufficient to form

a belief as to the allegation that Connectors is Mr. Williams's wholly-owned corporation.

12. Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement. Connectors purchased the Premises in April, 2016 for the approximate sum of

$75,000, and expended an additional $75,000 in repairs and maintenance upon purchase.

**ANSWER:** State Farm admits on information and belief that at the time of the property claims that are the subject of this action Connectors was the title owner of a property located at 622-624 West 79th Street, Chicago, Illinois 60620. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count I Paragraph 12.

13. At some time previous to January 5, 2017, Connectors contacted State Farm for property insurance coverage at the Premises and for other buildings owned by Connectors.

**ANSWER:** State Farm admits on information and belief that at some time previous to January 5, 2017, Connectors contacted independent State Farm agent Larry Williams regarding property insurance coverage for a property located at 622 W. 79th Street, Chicago, Illinois, 60620. State Farm denies that Connectors contacted State Farm prior to January 5, 2017 for the purpose of obtaining property insurance coverage for the Premises or any other building, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count I Paragraph 13.

14. Pursuant to an underwriting investigation by State Farm that occurred immediately prior to issuance of an insurance policy for the Premises, State Farm inspected the Premises and determined that the Premises was fully occupied, that all of the operating systems on the Premises, including heat, electrical, plumbing and boilers, were fully operational, that the Premises met State Farm's standards for insurability, and that the replacement value of the Premises was in excess of $800,000.00. For the stated reason of saving on premium cost, State Farm recommended to Connectors that the Premises be insured for a replacement value amount of $400,000.00, instead of $800,000.00.

**ANSWER:** State Farm admits that prior to the issuance of insurance policy 93-GQ-Z610-7, independent State Farm agent Larry Williams submitted an application on behalf of Connectors seeking insurance coverage for a property located at 622 W. 79th Street, Chicago, Illinois, 60620, which application stated that the estimated replacement cost of the building was $400,000, that Larry Williams had inspected the building on December 30, 2016, and that the risk met "all

5

Underwriting Guide requirements." State Farm otherwise denies the allegations contained in Count I Paragraph 14.

15. On or about January 5, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 [sic] (the "Connectors Policy") for property and liability insurance on the Premises. A certified copy of the Policy is attached hereto as Exhibit "A".

**ANSWER:** State Farm admits that it issued commercial multi-peril insurance policy number 93-GQ-Z610-7 effective January 5, 2017 for a property located at 622 W. 79th Street, Chicago, Illinois, 60620 to Connectors, and that a certified copy of the Connectors policy is attached to the Amended Complaint as Exhibit A. State Farm denies all remaining allegations contained in Count I Paragraph 15.

16. Under the terms of the Connectors Policy, State Farm insured Connectors against loss and damage to the Premises, including, *inter alia,* water damage, equipment breakdown, theft and vandalism in the amount of $400,000.00, plus loss of income for one year from date of loss, with a deductible in the amount of $2,500.00.

**ANSWER:** State Farm admits that the Connectors Policy provided, *inter alia*, coverage for damage to the insured building with limits of $400,000 and coverage for "loss of income and extra expense" for one year from date of loss, with a "basic deductible" of $2,500. State Farm denies that the allegations contained in Count I Paragraph 16 fully and accurately describe the terms of the Policy, denies any characterization of the terms of the Policy that is inconsistent therewith, and denies all remaining allegations contained in Count I Paragraph 16.

17. On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois. One of the tenants at the Premises, Lynette Crawley, left a bathroom window open in Unit 2R of the Premises during this Weather Event.

**ANSWER:** State Farm admits that the Connectors Policy was in effect on January 10, 2017. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count I Paragraph 17.

18.     As a result of the Weather Event and the [sic] Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-0670-8L5, under which the pipes froze and burst, causing damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank, resulting in loss and damage in the amount of $86,155.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-0670-8L5 to a claimed loss that

allegedly occurred at the Premises on January 10, 2017 and that Connectors submitted a proof of

loss for Claim No. 13-0670-8L5 claiming loss and damage to the Premises in the amount of

$86,155.00. State Farm denies all remaining allegations contained in Count I Paragraph 18.

19.     Claim No. 13-0670-8L5 also included Connectors' claim for loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00.

**ANSWER:** State Farm admits that the Sworn Statement in Proof of Loss for Claim No. 13-0670-

8L5 includes a claim for $3,850 for fair rental loss. State Farm denies all remaining allegations

contained in Count I Paragraph 19.

20.     On August 4, 2017 Connectors submitted a Sworn Statement in Proof of Loss ("Proof of Loss") under State Farm Claim No. 13-0670-8L5 in the amount of $86,155.00 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank and loss of rental income for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00 for loss of rental income, for a total amount claimed under the Proof of Loss for State Farm Claim No. 13-0670-8L5 in the amount of $132,355.00.

**ANSWER:** State Farm admits that on or around August 16, 2017 Connectors submitted a Sworn

Statement in Proof of Loss dated August 4, 2017 on State Farm Claim No. 13-0670-8L5 in the

amount of $86,155.00 for damage to the Premises and $3,850.00 for fair rental loss. State Farm

denies all remaining allegations contained in Count I Paragraph 20.

21.     As an additional result of the Weather Event and the [sic] Lynette Crawley's action, the Premises suffered additional loss and damage, to which State Farm assigned a second claim number, *i.e.,* Claim No. 13-1390-8S1, and an additional deductible, under which the boilers were damaged by water from the burst pipes, causing the boilers to be submerged in water, rusted and inoperable, all of which resulted in loss and damage in the amount of $60,000.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-1390-8S1 to a claim by Connectors for alleged damage to mechanical equipment at the Premises and that Connectors submitted a proof of loss for Claim No. 13-1390-8S1 claiming loss and damage to the Premises in the amount of $60,000. State Farm denies all remaining allegations contained in Count I Paragraph 21.

22.     Connectors submitted a Sworn Statement in Proof of Loss in the amount of $60,000.00 minus a $5,000.00 deductible, for a total amount of $55,000.00 for State Farm Claim No. 13-1390-8S1, receipt of which was acknowledged by State Farm on September 5, 2017.

**ANSWER:** State Farm admits that Connectors submitted a Sworn Statement in Proof of Loss in the amount of $60,000 minus a $5,000.000 deductible, for a total amount of $55,000.00, on Claim No. 13-1390-8S1, and that State Farm acknowledged receipt of that Sworn Statement in Proof of Loss by letter dated September 5, 2017. State Farm denies that the Sworn Statement in Proof of Loss correctly set forth the amount of the deductible applicable under the Connectors Policy and denies all remaining allegations contained in Count I Paragraph 22.

23.     State Farm Claim No. 13-1390-8S1 has neither been paid to Connectors nor denied by State Farm.

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 23.

24.     As a further result of the Weather Event and the [sic] Lynette Crawley's action, the Premises suffered additional loss and damage, to which State Farm assigned a third claim number, *i.e.,* Claim No. 13-1390-8N9, and an additional deductible, under which a commercial unit experienced loss and damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines, collapse of front of store, electric lines being down and hanging, and gas lines being down, all of which resulted in loss and damage in the amount of $116,955.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-1390-8N9 to a claim by Connectors for alleged damage to a commercial unit at the Premises and that Connectors submitted a proof of loss for Claim No. 13-1390-8N9 claiming loss and damage to the Premises in the amount of $116,955.00. State Farm denies all remaining allegations contained in Count I Paragraph 24.

25.     On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $116,955.00 minus a $5,000.00 deductible, for a total amount of $111,955.00, for State Farm Claim No. 13-1390-8N9.

**ANSWER:** State Farm admits that on or around August 16, 2017 Connectors submitted a Sworn Statement in Proof of Loss dated August 11, 2017 in the amount of $116,955.00 minus a $5,000.000 deductible, for a total amount of $111,955.00, on Claim No. 13-1390-8N9. State Farm denies that the Sworn Statement in Proof of Loss correctly set forth the amount of the deductible applicable under the Connectors Policy and denies all remaining allegations contained in Count I Paragraph 25.

26.     Because the boilers were inoperable as a result of the Weather Event and Lynette Crawley's action, and because State Farm failed and refused to repair or replace the boilers, and because all the residents (who were also all African-American) except for one family that failed to pay rent vacated the Premises and stayed in a hotel at Connectors' expense, the Premises was almost entirely unoccupied except for the one remaining family that failed to pay rent and two storefronts.

**ANSWER:** State Farm denies that it had any obligation "to repair or replace the boilers" at the Premises, denies that Connectors suffered any loss or damage as a result of any action or inaction of State Farm, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in in Count I Paragraph 26.

27.     Following Connectors' eviction of that one remaining family, the Premises laid vacant and was ripe for theft and vandalism.

**ANSWER:** State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in in Count I Paragraph 27. Further answering, State Farm denies that Connectors suffered any loss or damage as a result of any action or inaction of State Farm.

28.     On February 4, 2017, while the Connectors Policy was in full force, force and while the Premises laid vacant as a result of the Weather Event, Lynette Crawley's action and State Farm's failure to pay the above claims, there occurred a theft and vandalism at the Premises to which State Farm assigned a fourth claim number, *i.e.,* Claim No. 13-0790-6C6, and an additional deductible. As a result of the theft and vandalism, Connectors suffered loss and damage at the Premises under which copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights,

smoke detectors, carbon monoxide detectors were stolen, second floor stairwell was vandalized, light bulbs were broken, back and front doors were broken down and torn off the hinges, the door in the apartment bedroom was torn off the hinges, a kitchen electric outlet was vandalized, 6 industrial heaters were stolen, cabinets were torn down and stolen, the ceilings and hallway were vandalized, the windows on the second and third floor were broken, the walls were vandalized, the radiators on second and third floors were torn off, and holes were made in the walls on the second floor, resulting in loss and damage in the approximate amount of $120,000.00.

**ANSWER:** State Farm admits that the Connectors Policy was in effect on February 4, 2017 and that it assigned Claim No. 13-0790-6C6 to a claim by Connectors for alleged theft and vandalism that allegedly occurred at the Premises on February 4, 2017. State Farm denies that it failed to pay any amounts to which Connectors was entitled under the Policy, denies that Connectors suffered any loss or damage as a result of any action or inaction of State Farm, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Count I Paragraph 28.

29.    On April 23, 2017, while the Connectors Policy was in full force and while the Premises laid vacant as a result of the Weather Event, Lynette Crawley's action and State Farm's failure to pay the above claims, there occurred a theft at the Premises. As a result of the theft, the Premises suffered loss and damage, to which State Farm assigned a fifth claim number, *i.e.,* Claim No. 13-1390-8K9, and an additional deductible, under which Connectors suffered loss and damage in the amount of $48,500.00.

**ANSWER:** State Farm admits that the Policy was in effect on April 23, 2017, but that State Farm had notified Connectors via letter dated February 17, 2017 that the Policy would be canceled effective April 24, 2017. State Farm further admits that it assigned Claim No. 13-1390-8K9 to a claim by Connectors for an alleged theft that allegedly occurred at the Premises on April 23, 2017, and that Connectors submitted a proof of loss for Claim No. 13-1390-8K9 claiming loss and damage to the Premises in the amount of $48,500.00. State Farm denies that it failed to pay any amounts to which Connectors was entitled under the Policy, denies that Connectors suffered any

10

loss or damage as a result of any action or inaction of State Farm, and denies all remaining allegations contained in Count I Paragraph 29.

    30.    On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $48,500.00 minus a $5,000.00 deductible, for a total amount of $43,500.00 for State Farm Claim No. 13-1390-8K9.

**ANSWER:** State Farm admits that on or around August 16, 2017 Connectors submitted a Sworn Statement in Proof of Loss dated August 11, 2017 in the amount of $43,500.00 on Claim No. 13-1390-8K9. State Farm denies that the Sworn Statement in Proof of Loss shows a deductible amount of $5,000.00, denies that the Connectors Policy provides for a deductible in the amount of $5,000.00, and denies all remaining allegations contained in Count I Paragraph 30.

    31.    On April 17, 2017, while the Connectors Policy was in full force, there occurred a hail event (the "Hail Event") in Chicago, Illinois.

**ANSWER:** State Farm admits that the Policy was in effect on April 17, 2017, but that State Farm had notified Connectors via letter dated February 17, 2017 that the Policy would be cancelled effective April 24, 2017. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count I Paragraph 31.

    32.    As a result of the Hail Event, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8F4 under which the third floor roof had a hole caused, ceiling, drywall were damaged which resulted in loss and damage in the amount of $17,500.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-1390-8F4 to a claim by Connectors for an alleged hail loss that allegedly occurred at the Premises on April 17, 2017, and that Connectors submitted a proof of loss for Claim No. 13-1390-8F4 claiming loss and damage to the Premises in the amount of $17,500.00. State Farm denies all remaining allegations contained in Count I Paragraph 32.

    33.    On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $17,500.00 for State Farm Claim No. 13-1390-8F4.

**ANSWER:**  State Farm admits that on or around August 16, 2017 Connectors submitted a Sworn

Statement in Proof of Loss dated August 11, 2017 in the amount of $17,500.00 on Claim No. 13-

1390-8F4.  State Farm denies all remaining allegations contained in Count I Paragraph 33.

34.     Claim No. 13-0670-8L5, Claim No. 13-1390-8S1, Claim No. 13-1390-8N9, Claim No. 13-0790-6C6, Claim No. 13-1390-8K9 and Claim No. 13-1390-8F4 are hereinafter collectively referred to as the "Connectors' Claims."

**ANSWER:**  Count I Paragraph 34 is a definitional allegation to which no answer is required or

given.

35.     Tina Beavers, who is Caucasian, was the State Farm employee and claim adjuster assigned to State Farm Claims No. 13-0670-8L5, State Farm Claim No. 13-1390-8S1 and State Farm Claim No. 13-1390-8N9, all of which arose out of the Weather Event as set forth above.

**ANSWER:**  State Farm admits that Claim No. 13-0670-8L5 was originally assigned to claim

specialist Tina Beavers, and that Tina Beavers is Caucasian.  State Farm denies all remaining

allegations contained in Count I Paragraph 35.

36.     Between January 10, 2017 and January 20, 2017 Darryl Williams had several telephone conversations with Tina Beavers. During these conversations Tina Beavers asked who was living at the Premises and how the Weather Event and resulting losses happened. Darryl Williams told her that Lynette Crawley left the bathroom window open because it was hot in her apartment. Tina Beavers requested the leases for all the tenants at the Premises and she said she wanted to speak to Lynette Crawley. Darryl Williams gave her the leases for all the tenants at the Premises on the date of the Weather Event; the leases contained the tenants' contact information. Darryl Williams also told her that because the pipes burst the heat was not working and all the tenants had moved to hotels and were sending him the bills. Darryl Williams told her he needed State Farm to reimburse Connectors *inter alia* for the lost rent.

**ANSWER:**  State Farm admits that Tina Beavers spoke with Darryl Williams by phone about

Claim No. 13-0670-8L5, that Ms. Beavers and Mr. Williams discussed the claimed loss, that Ms.

Beavers requested copies of the leases for the tenants of the Premises on the date of the claimed

loss to support Connectors' claim for lost rental income, and that Mr. Williams provided Ms.

Beavers with copies of what purported to be leases for certain of the Premises' residential units,

all but one of which were expired, as well as a copy of a lease for a commercial unit.  State Farm denies that any of the phone conversations between Ms. Beavers and Mr. Williams occurred between January 10 and January 20, 2017, and denies all remaining allegations contained in Count I Paragraph 36.

37.     After trading telephone voicemails several times, on January 20, 2017 in the morning Tina Beavers returned Darryl Williams' telephone call and they had the following conversation:

Tina Beavers said, "Are you sure someone was living there (meaning Unit 2R)? Darryl Williams said, "Yes. Somebody's living there."

Tina Beavers said, "Well, I couldn't get a hold of her. Do you have any other phone number for her?"

Darryl Williams said, "No."

Tina Beavers said, "Well, you get a hold of her, if she really exists."

Darryl Williams said, "That's not my job to get a hold of her. I gave you all the information."

Tina Beavers said, "You mean to tell me you people don't use Facebook and other social media and you don't know any of her homeys who could get in contact with her?"

Darryl Williams said, "What the hell do you mean about 'you people'?"

Tina Beavers said, "We have a lot of fraud in your area."

Darryl Williams said, "What do you mean by 'your area?'"

Tina Beavers said, "South Side of Chicago and you all's neighborhoods."

Darryl Williams said, "I thought we could live anywhere. I didn't know we had neighborhoods."

Tina Beavers said, "Don't act like you don't know what I'm talking about. Just be truthful with me."

Darryl Williams said, "So you think black folks lie about everything anyway. You don't believe any damn thing we say anyway. I, frankly, think it's fuckin' offensive for you calling us 'you people" and I'm reporting this."

Tina Beavers laughed and said, "Do what you have to do."

**ANSWER:**  State Farm denies the allegations contained in Count I Paragraph 37.

38.     Tina Beavers' statement that there is "a lot of fraud" in the "South Side of Chicago and you all's neighborhoods," is an accurate description of State Farm's view and

treatment of claims from black majority ZIP Codes in the City of Chicago. As set forth above State Farm treats as presumptively fraudulent claims from policyholders residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims.

**ANSWER:**   State Farm denies the allegations contained in Count I Paragraph 38.

39.     State Farm's targeting of such claims by ZIP Code and its intention thereby to discriminate on the basis of race in its treatment of claims of policyholders from black-majority ZIP Codes is confirmed by Tina Beavers' use of racial epithets in describing African-Americans as "homeys" and "you people," and by describing where African-Americans reside as "your areas" and "you all's neighborhoods."

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 39.

40.     State Farm's targeting of such claims by ZIP Code and its intention thereby to discriminate on the basis of race in its treatment of claims of policyholders from black-majority ZIP Codes in the City of Chicago is also confirmed by an analysis of performed by R. Hasegawa and A. Wyner, The Wharton School of the University of Pennsylvania, on statistical evidence from the Illinois Department of Insurance. They conclude based upon an analysis that the odds that a property insurance claim remains outstanding and unpaid at the end of the calendar year in a ZIP Code with a 75% black population is 23% higher than a claim made in a ZIP Code with a 25% black population with comparable median incomes. While this analysis was performed on ZIP Code-level data on property insurance claims made upon all companies authorized to write homeowner's insurance in the State of Illinois, State Farm has the largest market share of the homeowner's insurance market in the City of Chicago.

**ANSWER:** State Farm admits on information and belief that it has the largest share of the homeowner's insurance market in the City of Chicago, states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the second and third sentences of Count I Paragraph 40 concerning the purported statistical analysis performed by R. Hasegawa and A. Wyner, and denies all remaining allegations contained in Count I Paragraph 40.

41.     Pursuant to its practice of treating claims from black majority ZIP Codes as presumptively fraudulent, State Farm, did, in fact, process all of Connectors' claims as presumptively fraudulent through the Special Investigations Unit. The Special

Investigation Unit's official responsibilities are limited to investigation of purported claims of fraud. In other words, instead of investigating the Connectors' Claims, State Farm initiated an investigation of Darryl Williams and Connectors for insurance fraud.

**ANSWER:** State Farm admits that one of the responsibilities of its Special Investigations Unit is to investigate potential instances of insurance fraud and that claims employees from the Special Investigations Unit were involved in the handling of Connectors' claims. State Farm denies all remaining allegations contained in Count I Paragraph 41.

42. Immediately following his January 20, 2017 telephone conversation with Tina Beavers, Darryl Williams did complain to State Farm regarding the aforesaid conduct of Tina Beavers and requested that another adjuster be assigned to those Connectors' Claims to which she was assigned.

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 42.

43. As a result of Darryl Williams' complaint, sometime in February, 2017 he received a telephone call from Special Investigations Unit Team Leader Roger Krupp. At that time Roger Krupp stated in reference to Darryl Williams' conversation with Tina Beavers, "We don't practice that way at State Farm. I apologize for anything she said that you were offended by, and she will no longer be your claims adjuster."

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 43.

44. Despite Roger Krupp's promise to reassign the Connectors' Claims, when Darryl Williams telephoned State Farm several times during February-April, 2017 regarding the status of Connectors' Claims and asked to speak to a new claims representative, his calls were always routed to Tina Beavers. Tina Beavers said at that time, "You're stuck with me. I'm the person; that's it."

**ANSWER:** State Farm denies the allegations contained in Count I Paragraph 44. Further answering, State Farm states that Connectors' claims were reassigned from Tina Beavers to claim specialist Thomas Wegner as of April 27, 2017.

45. Pursuant to letter from Tina Beavers dated March 24, 2017, State Farm denied Claim No. 13-0670-8L5.

**ANSWER:** State Farm admits that a letter from Tina Beavers to Darryl Williams dated March 24, 2017 regarding Connectors' Claim No. 13-0670-8L5 explained that State Farm had

"confirmed with People's Gas Company, gas service on the second level of the building was disconnected October 2016. We also discovered the last active year for gas service on the first level was 2005. Based upon the results of our site inspection and investigation, it was determined heat was not maintained which resulted in the frozen pipe(s) on the second level and is not covered by your policy." Further answering, State Farm states that it subsequently reopened Connectors' Claim No. 13-0670-8L5 and ultimately paid over $55,000 on that claim. State Farm denies all remaining allegations contained in Count I Paragraph 45.

46. Roger Krupp called again and said, "We'll get you someone else." Then Darryl Williams' calls to State Farm were routed to a new claims representative. Then he was switched several more times to other representatives. Pursuant to letter dated April 27, 2017, the claim was reassigned to Thomas Wegner, Claim Specialist in the Special Investigation Unit.

**ANSWER:** State Farm admits that pursuant to letter dated April 27, 2017, Claim No. 13-0670-8L5 was reassigned to State Farm claim specialist Thomas Wegner. State Farm denies all remaining allegations contained in Count I Paragraph 46.

47. Then sometime after the March 24, 2017 claim denial Roger Krupp called back and said, "I've got good news for you. The claim has been approved. They've got to go calculate how much it will be and I will get back to you." However, Darryl did not receive the promised claim payment. During the subsequent period until October 16, 2017 Darryl Williams had a number of telephone conversations with Roger Krupp who told him alternatively that payment had been approved, payment had been mailed, the check had been lost, and the check had been sent to the wrong address. During these conversations Roger Krupp praised Darryl Williams for his patience and for being a "gentleman" and a "standup guy."

**ANSWER:** State Farm admits that State Farm Team Manager Roger Krupp had three telephone conversations with Darryl Williams about Connectors' Claim No. 13-0670-8L5 and that two of those conversations concerned a misdirected draft. State Farm denies all remaining allegations contained in Count I, Paragraph 47.

48. During this period Connectors and Darryl Williams spent approximately $200,000 of Connectors' funds and Darryl Williams's personal funds that he diverted from other personal obligations in order to pay his residents' hotel bills and repair bills

16

for the Premises to attempt to maintain the Premises while Connectors waited for State Farm's promised payment of the Connectors' Claims.

**ANSWER:** State Farm denies that it failed to timely pay any amounts to which Connectors was entitled under the Policy, denies that either Connectors or Darryl Williams suffered any injury or damages as a result of any action or inaction by State Farm, and otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Count I Paragraph 48.

49. During this same period due to there being no heat at the Premises as a result of the Weather Event and State Farm's failure to pay the Connectors' Claims and the Premises thereby becoming a public nuisance in violation of various provisions of the Municipal Code of the City of Chicago, the City of Chicago brought both judicial and administrative actions against Connectors in the following actions: (1) *City of Chicago v. The Connectors Realty Group Corporation, et al.*, docketed in the Circuit Court of Cook County, Illinois Case No. 2017 M1-400127; (2) *City of Chicago v. Connect Realty Group, et al.,* docketed in the City of Chicago, Department of Administrative Hearings as Case No. 16BT05507A; and (3) *City of Chicago v. The Connectors Realty Group Corporation, et al.*, docketed in the City of Chicago, Department of Administrative Hearings as Case No. 17BT00771A (collectively, the "Actions"). On February 8, 2018 Connectors tendered the Actions to State Farm and demanded that State Farm defend and indemnify Connectors in the Actions, which State Farm failed and refused to do. As a result, Connectors paid an additional tens of thousands of dollars in fines to the City of Chicago and a like amount in legal fees for its defense.

**ANSWER:** State Farm admits that the City of Chicago brought the Actions against Connectors, that Connectors tendered the Actions to State Farm and demanded that State Farm defend and indemnify Connectors, and that State Farm denied Connectors' request to defend and indemnify it in the Actions. Further answering, State Farm states that pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), Connectors' claim alleging that State Farm breached its duty to defend and indemnify has been dismissed. State Farm denies all remaining allegations contained in Count I Paragraph 49.

50. On or about September 1, 2017 in order to stop the hemorrhaging of cash in Connectors' attempt to maintain the Premises, Connectors sold the Premises for an amount that did not nearly recompense Connectors for the monies set forth above that Connectors and Darryl Williams expended due the Weather Event and State

Farm's failure to pay the Connectors' Claims and for the fines and legal fees incurred in the Actions.

**ANSWER:** State Farm denies that it failed to pay any amounts to which Connectors was entitled under the Policy, denies that Connectors suffered any loss or damage as a result of any action or inaction of State Farm, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count I Paragraph 50. Further answering, State Farm states that pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), Connectors' claim alleging that State Farm breached its duty to defend and indemnify has been dismissed.

51. Because of Darryl Williams's use of his own personal funds that he diverted from other obligations due to State Farm's failure to pay the Connectors' Claims as set forth above, Darryl Williams's personal residence is now in foreclosure and he is working at six different jobs to work himself out of the financial hole created by State Farm.

**ANSWER:** State Farm denies that it failed to pay any amounts to which Connectors was entitled under the Policy, denies that Connectors or Darryl Williams suffered any loss or damage as a result of any action or inaction of State Farm, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count I Paragraph 51.

52. Connectors' Claims, with the exception of Claim No. 13-0670-8L5, were never paid, leaving an unpaid amount on those claims of $345,455.50. Claim No. 13-0670-8L5, in the amount of $132,355.00, was paid piecemeal beginning on October 16, 2017 and never paid in full, leaving a balance due and owing on Claim No. 13-0670-8L5 in the amount of $76,776.29. No payment was made before Darryl Williams and Connectors were forced to sell the Premises for lack of funds that otherwise would have enabled Connectors to continue to own the Premises due to State Farm's failure to pay the proceeds due and owing on the Connectors' Claims.

**ANSWER:** State Farm admits that it paid over $55,000 on Claim No. 13-0670-8L5 and denied the rest of Connectors' claims. State Farm denies that it failed to pay any amounts to which Connectors was entitled under the Policy, denies that Connectors suffered any loss or damage as

a result of any action or inaction of State Farm, and denies all remaining allegations contained in

Count I Paragraph 52.

53.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on the Connectors' Claims.

**ANSWER:**  State Farm denies the allegations contained in Count I Paragraph 53.

54.     Title VIII of the Civil Rights Act of 1968 (the "Fair Housing Act"), 42 U.S.C. U.S.C. § 3604(a) and (b) provides, in pertinent part, as follows:

As made applicable by section 3603 of this title and except as exempted by sections 3603(b) and 3607 of this title, it shall be unlawful—

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.

(b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin.

**ANSWER:**  Count I Paragraph 54 is a statement of law as to which no answer is required or given.

55.     24 C.F.R. § 100.70, promulgated thereunder, provides, in pertinent part, as follows:

\*\*\*

(b) It shall be unlawful, because of race, color, religion, sex, handicap, familial status, or national origin, to engage in any conduct relating to the provision of housing or of services and facilities in connection therewith that otherwise makes unavailable or denies dwellings to persons.

\*\*\*

(d) Prohibited activities relating to dwellings under paragraph (b) of this section include, but are not limited to:

\*\*\*

(4) Refusing to provide...property or hazard insurance for dwellings or providing such...insurance differently because of race, color, religion, sex, handicap, familial status, or national origin.

**ANSWER:**  Count I Paragraph 55 is a statement of law as to which no answer is required or given.

56.     Because of Darryl Williams' race, State Farm refused to pay insurance claims for which Darryl Williams and Connectors were entitled to be paid and/or failed to pay

Darryl Williams and Connectors adequate proceeds as measured by the proofs of loss and claims amounts on the Connectors' Claims to cover loss and damage to the Premises.

**ANSWER:**  State Farm denies the allegations contained in Count I Paragraph 56.

57.   This loss and damage made the Premises unlivable.

**ANSWER:**  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Count I Paragraph 57 that the Premises are, or at some point were, "unlivable," but denies that any damage resulting from any loss covered under the Policy caused the Premises to become unlivable.

58.   State Farm handled the Connectors' Claims differently because of Darryl Williams' race.

**ANSWER:**  State Farm denies the allegations contained in Count I Paragraph 58.

59.   The failure of State Farm to pay the Connectors' Claims in full and in a timely manner deprived Darryl Williams and Connectors of ownership of housing.

**ANSWER:**  State Farm denies the allegations contained in Count I Paragraph 59.

60.   The different handling of the Connectors' Claims and the failure of State Farm to pay the Connectors' Claims in full and in a timely manner constituted the providing of property insurance "differently because of race."

**ANSWER:**  State Farm denies the allegations contained in Count I Paragraph 60.

## COUNT II

[Violations of 42 U.S.C. §§ 1981 and 1982 – Connectors]

1-50.  Plaintiffs repeat and reallege paragraphs 4-53 of Count I of this Amended Complaint as and for paragraphs 1-50 of Count II.

**ANSWER:**  State Farm hereby incorporates by reference its responses to paragraphs 4 through 53 of Count I of the Amended Complaint as though fully set forth herein.

51.   42 U.S.C. § 1981 provides as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts...

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

**ANSWER:** Count II Paragraph 51 is a statement of law as to which no answer is required or given.

52. 42 U.S.C. § 1982 provides as follows:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

**ANSWER:** Count II Paragraph 52 is a statement of law as to which no answer is required or given.

53. But for the racially discriminatory conduct of State Farm, the Connectors' Claims would have been paid in full.

**ANSWER:** State Farm denies the allegations contained in Count II Paragraph 53.

54. State Farm, by and through its racially discriminatory conduct as set forth hereinabove, has intentionally discriminated against Connectors and Darryl Williams, the latter by virtue of his being African-American, a member of a racial minority, and the sole owner and operator of Connectors, and the Premises being located in a black-majority ZIP Code in the City of Chicago in violation of 42 U.S.C. § 1981. State Farm thereby prevented Connectors and Darryl Williams from enjoying the benefits, privileges, terms, and conditions of the contractual relationship between Connectors and State Farm under the Connectors Policy that would have been enjoyed by white citizens, in violation of 42 U.S.C. §§ 1981 and 1982.

**ANSWER:** State Farm denies the allegations contained in Count II Paragraph 54.

55.     As a direct and proximate result of State Farm's racially discriminatory conduct as set forth hereinabove, Connectors and Darryl Williams has been damaged in the unpaid amounts of the Connectors' Claims, totaling $422,231.29.

**ANSWER:**   State Farm denies the allegations contained in Count II Paragraph 55.

COUNT III

[Breach of Contract – Connectors]

1.     At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

**ANSWER:**  State Farm admits that it is an insurance company authorized to do business, and

doing business, in the State of Illinois.

2.     At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate. Connectors is a closely held corporation, solely owned and operated by Darryl Williams, its president. Darryl Williams is African-American.

**ANSWER:**  State Farm lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Count III Paragraph 2.

3.     Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

**ANSWER:**  State Farm admits on information and belief that at the time of the property claims

that are the subject of this action Connectors was the title owner of a property located at 622-624

West 79th Street, Chicago, Illinois 60620.  State Farm lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations contained in Count III Paragraph 3.

4.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 [sic] (the "Connectors Policy"). A copy of the Connectors Policy is attached hereto as Exhibit "A".

**ANSWER:**  State Farm admits that it issued commercial multi-peril insurance policy number 93-

GQ-Z610-7 effective January 5, 2017 for a property located at 622 W. 79th Street, Chicago, Illinois,

60620 to Connectors, and that a certified copy of the Connectors policy is attached to the Amended

Complaint as Exhibit A. State Farm denies all remaining allegations contained in Count III

Paragraph 4.

> 5. Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown in the amount of $400,000.00, plus loss of income for one year from date of loss, with a deductible in the amount of $2,500.00.

**ANSWER:** State Farm admits that the Connectors Policy provided, *inter alia*, coverage for

damage to the insured building with limits of $400,000 and coverage for "loss of income and extra

expense" for one year from date of loss, with a "basic deductible" of $2,500. State Farm denies

that the allegations contained in Count III Paragraph 5 fully and accurately describe the terms of

the Policy, denies any characterization of the terms of the Policy that is inconsistent therewith, and

denies all remaining allegations contained in Count III Paragraph 5.

> 6. On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois. One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

**ANSWER:** State Farm admits that the Connectors Policy was in effect on January 10, 2017. State

Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Count III Paragraph 6.

> 7. As a result of the Weather Event and the [sic] Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-0670-8L5, under which the pipes froze and burst, causing damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank, resulting in loss and damage in the amount of $86,155.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-0670-8L5 to a claimed loss that

allegedly occurred at the Premises on January 10, 2017 and that Connectors submitted a proof of

loss for Claim No. 13-0670-8L5 claiming loss and damage to the Premises in the amount of

$86,155.00. State Farm denies all remaining allegations contained in Count III Paragraph 7.

8.      Claim No. 13-0670-8L5 also included Connectors' claim for loss of rental income
        for one year at the rate of $3,850.00 per month, for a total amount of $46,200.00.

**ANSWER:**  State Farm admits that the Sworn Statement in Proof of Loss for Claim No. 13-0670-

8L5 includes a claim for $3,850 for fair rental loss.  State Farm denies all remaining allegations

contained in Count III Paragraph 8.

9.      Of the amount of $86,155.00 for damage to the walls, floors, ceilings, drywall,
        electric, heating and gas, pipelines, and water tank claimed for State Farm Claim
        No. 13-06708L5, State Farm has only paid the amount of $46,528.71, leaving a
        balance due of $39,626.29 for damage to the walls, floors, ceilings, drywall, electric,
        heating and gas, pipelines, and water tank.

**ANSWER:**  State Farm admits that the Sworn Statement in Proof of Loss for Claim No. 13-0670-

8L5 includes a claim for $86,155.00 for damage to the Premises.  Further answering, State Farm

states that it paid $44,0281.71 for damage to the Premises.  State Farm denies all remaining

allegations contained in Count III Paragraph 9.

10.     Of the amount of $46,200.00 for loss of rental income, State Farm only paid
        $11,550.00, leaving a balance due of $34,650.00 for loss of rental income.

**ANSWER:**  State Farm admits that it paid $11,550.00 for loss of rental income on Claim No. 13-

0670-8L5.  State Farm denies all remaining allegations contained in Count III Paragraph 10.

11.     On August 4, 2017 Connectors submitted a Sworn Statement in Proof of Loss
        ("Proof of Loss") under State Farm Claim No. 13-0670-8L5 in the amount of
        $86,155.00 for damage to the walls, floors, ceilings, drywall, electric, heating and
        gas, pipelines, and water tank and loss of rental income for one year at the rate of
        $3,850.00 per month, for a total amount of $46,200.00 for loss of rental income, for
        a total amount claimed under the Proof of Loss for State Farm Claim No. 13-0670-
        8L5 in the amount of $132,355.00.

**ANSWER:**  State Farm admits that or or around August 16, 2017 Connectors submitted a Proof

of Loss dated August 4, 2017 under State Farm Claim No. 13-0670-8L5 in the amount of

$86,155.00 for damage to the Premises and $3,850.00 for fair rental loss. State Farm denies all remaining allegations contained in Count III Paragraph 11.

> 12.     The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

**ANSWER:** State Farm admits that the Connectors Policy provides, *inter alia*, that State Farm "will pay for covered loss" within 30 days after receipt of the sworn proof of loss, provided that the insured has "complied with all of the terms" of the Policy, and State Farm has (a) reached agreement with the insured on the amount of loss or (b) an appraisal award has been made. State Farm denies that the allegations contained in Count III Paragraph 12 accurately describe the terms of the Policy, and denies any characterization of the terms of the Policy that is inconsistent therewith.

> 13.     Accordingly, payment from State Farm was due on State Farm Claim No. 13-0670-8L5 in the full amount of $132,355.00 on or before September 3, 2017.

**ANSWER:** State Farm denies the allegations contained in Count III Paragraph 13.

> 14.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-0670-8L5.

**ANSWER:** State Farm denies the allegations contained in Count III Paragraph 14.

> 15.     Despite Connector's [sic] demands, State Farm has failed and refused to pay the balance due of $39,626.29 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank on State Farm Claim No. 13-0670-8L5.

**ANSWER:** State Farm denies the allegations contained in Count III Paragraph 15.

> 16.     Despite Connector's [sic] demands, State Farm has failed and refused to pay the balance due of $34,650.00 for loss of rental income on State Farm Claim No. 13-0670-8L5.

**ANSWER:** State Farm denies the allegations contained in Count III Paragraph 16.

> 17.     The total amount unpaid under [sic] on State Farm Claim No. 13-0670-8L5 for damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank and for loss of rental income is $74,276.29.

**ANSWER:** State Farm denies the allegations contained in Paragraph Count III Paragraph 17.

18.     State Farm is liable to pay Connectors the balance due of $74,276.29 on State Farm Claim No. 13-0670-8L5, with interest thereon at the rate of 5% annually from September 3, 2017, plus interest and costs.

**ANSWER:** State Farm denies the allegations contained in Paragraph Count III Paragraph 18.

COUNT IV

[Breach of Contract - Connectors]

1.      At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

**ANSWER:** State Farm admits that it is an insurance company authorized to do business, and is doing business, in the State of Illinois.

2.      At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

**ANSWER:** State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Count IV Paragraph 2.

3.      Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

**ANSWER:** State Farm admits on information and belief that at the time of the alleged events giving rise to the property claims that are the subject of this action Connectors was the title owner of a property located at 622-624 West 79th Street, Chicago, Illinois 60620.  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count IV Paragraph 3.

4.      On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 [sic] (the "Connectors Policy"). A copy of the Connectors is attached hereto as Exhibit "A". Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises,

26

including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

**ANSWER:** State Farm admits that it issued commercial multi-peril insurance policy number 93-GQ-Z610-7 effective January 5, 2017 for a property located at 622 W. 79th Street, Chicago, Illinois, 60620 to Connectors, and that a certified copy of the Connectors policy is attached to the Amended Complaint as Exhibit A. Further answering, State Farm admits that the Connectors Policy provided, *inter alia*, coverage for damage to the insured building with limits of $400,000 and coverage for "loss of income and extra expense" for one year from date of loss, with a "basic deductible" of $2,500. State Farm denies that the allegations contained in Count IV Paragraph 4 fully and accurately describe the terms of the Policy, denies any characterization of the terms of the Policy that is inconsistent therewith, and denies all remaining allegations contained in Count IV Paragraph 4.

5. On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois. One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

**ANSWER:** State Farm admits that the Connectors Policy was in effect on January 10, 2017. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count IV Paragraph 5.

6. As a result of the Weather Event and the [sic] Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a second corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8S1, under which the boilers were damaged by water from the burst pipes, causing the boilers to be submerged in water, rusted and inoperable, all of which resulted in loss and damage in the amount of $60,000.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-1390-8S1 to a claimed loss by Connectors for alleged damage to mechanical equipment at the Premises and that Connectors submitted a proof of loss for Claim No. 13-1390-8S1 claiming loss and damage to the Premises in

27

the amount of $60,000. State Farm denies all remaining allegations contained in Count IV Paragraph 6.

7.    Connectors submitted a Sworn Statement in Proof of Loss in the amount of $60,000.00 minus a $5,000.00 deductible, for a total amount of $55,000.00 for State Farm Claim No. 13-1390-8S1, receipt of which was acknowledged by State Farm on September 5, 2017.

**ANSWER:** State Farm admits that Connectors submitted a Sworn Statement in Proof of Loss in the amount of $60,000 minus a $5,000.000 deductible, for a total amount of $55,000.00, on Claim No. 13-1390-8S1, and that State Farm acknowledged receipt of that Sworn Statement in Proof of Loss by letter dated September 5, 2017. State Farm denies that the Sworn Statement in Proof of Loss correctly set forth the amount of the deductible applicable under the Connectors Policy and denies all remaining allegations contained in Count IV Paragraph 7.

8.    State Farm Claim No. 13-1390-8S1 has neither been paid nor denied by State Farm.

**ANSWER:** State Farm denies the allegations contained in Count IV Paragraph 8.

9.    The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

**ANSWER:** State Farm admits that the Connectors Policy provides, *inter alia*, that State Farm "will pay for covered loss" within 30 days after receipt of the sworn proof of loss, provided that the insured has "complied with all of the terms" of the Policy, and State Farm has (a) reached agreement with the insured on the amount of loss or (b) an appraisal award has been made. State Farm denies that the allegations contained in Count IV Paragraph 9 accurately describe the terms of the Policy, and denies any characterization of the terms of the Policy that is inconsistent therewith.

10.    Accordingly, payment from State Farm was due on State Farm Claim No. 13-1390-8S1 on or before October 5, 2017.

**ANSWER:** State Farm denies the allegations contained in Count IV Paragraph 10.

28

11.    Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8S1.

**ANSWER:**  State Farm denies the allegations contained in Count IV Paragraph 11.

12.    Despite Connector's [sic] demands, State Farm has failed and refused to pay the amount due of $55,000.00 on State Farm Claim No. 13-1390-8S1.

**ANSWER:**  State Farm admits that it denied Connectors' Claim No. 13-1390-8S1 and denies all

remaining allegations contained in Count IV Paragraph 12.

13.    State Farm is liable to pay Connectors the balance due of $55,000.00 on State Farm Claim No. 13-1390-8S1, with interest thereon at the rate of 5% annually from October 5, 2017, plus interest and costs.

**ANSWER:**  State Farm denies the allegations contained in Count IV Paragraph 13.

<u>COUNT V</u>

[Breach of Contract - Connectors]

1.    At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

**ANSWER:**  State Farm admits that it is an insurance company authorized to do business, and is

doing business, in the State of Illinois.

2.    At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

**ANSWER:**  State Farm lacks knowledge or information sufficient to form a belief as to the truth

of the allegations contained in Count V Paragraph 2.

3.    Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

**ANSWER:**  State Farm admits on information and belief that at the time of the alleged events

giving rise to the property claims that are the subject of this action Connectors was the title owner

of a property located at 622-624 West 79th Street, Chicago, Illinois 60620.  State Farm lacks

29

knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count V Paragraph 3.

4.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 [sic] (the "Connectors Policy"). A copy of the Connectors Policy is attached hereto as Exhibit "A". Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

**ANSWER:** State Farm admits that it issued commercial multi-peril insurance policy number 93-GQ-Z610-7 effective January 5, 2017 for a property located at 622 W. 79th Street, Chicago, Illinois, 60620 to Connectors, and that a certified copy of the Connectors policy is attached to the Amended Complaint as Exhibit A. Further answering, State Farm admits that the Connectors Policy provided, *inter alia*, coverage for damage to the insured building with limits of $400,000 and coverage for "loss of income and extra expense" for one year from date of loss, with a "basic deductible" of $2,500. State Farm denies that the allegations contained in Count V Paragraph 4 fully and accurately describe the terms of the Policy, denies any characterization of the terms of the Policy that is inconsistent therewith, and denies all remaining allegations contained in Count V Paragraph 4.

5.     On January 10, 2017, while the Connectors Policy was in full force, there occurred a below freezing weather event (the "Weather Event") in Chicago, Illinois. One of the tenants, Lynette Crawley, left a bathroom window open in Unit 2R during this Weather Event.

**ANSWER:** State Farm admits that the Connectors Policy was in effect on January 10, 2017. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count V Paragraph 5.

6.     As a result of the Weather Event and the [sic] Lynette Crawley's action, the Premises suffered loss and damage, and Connectors filed a third corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8N9 under which a commercial unit experienced loss and damage to pipes, shelves, equipment, ceilings, walls, flooring, radiators, gas lines, collapse of front of store, electric lines

were down and hanging, gas lines were down all of which resulted in loss and damage in the amount of $116,955.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-1390-8N9 to a claim by Connectors for alleged damage to a commercial unit at the Premises and that Connectors submitted a proof of loss for Claim No. 13-1390-8N9 claiming loss and damage to the Premises in the amount of $116,955.00. State Farm denies all remaining allegations contained in Count V Paragraph 6.

      7.       On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $116,955.00 minus a $5,000.00 deductible, for a total amount of $111,955.00, for State Farm Claim No. 13-1390-8N9.

**ANSWER:** State Farm admits that on or around August 16, 2017 Connectors submitted a Sworn Statement in Proof of Loss dated August 11, 2017 in the amount of $116,955.00 minus a $5,000.000 deductible, for a total amount of $111,955.00, on Claim No. 13-1390-8N9. State Farm denies that the Sworn Statement in Proof of Loss correctly set forth the amount of the deductible applicable under the Connectors Policy and denies all remaining allegations contained in Count V Paragraph 7.

      8.       The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

**ANSWER:** State Farm admits that the Connectors Policy provides, *inter alia*, that State Farm "will pay for covered loss" within 30 days after receipt of the sworn proof of loss, provided that the insured has "complied with all of the terms" of the Policy, and State Farm has (a) reached agreement with the insured on the amount of loss or (b) an appraisal award has been made. State Farm denies that the allegations contained in Count V Paragraph 8 accurately describe the terms of the Policy, and denies any characterization of the terms of the Policy that is inconsistent therewith.

      9.       Accordingly, payment from State Farm was due on State Farm Claim No. 13-13-1390-8N9 [sic] on or before September 10, 2017.

31

**ANSWER:** State Farm denies the allegations contained in Count V Paragraph 9.

10. Pursuant to letter dated October 3, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8N9.

**ANSWER:** State Farm admits that it informed Connectors by letter dated October 3, 2017 that it was "rejecting [Connectors'] Sworn Proof of Loss and . . . denying any and all liability and coverage under the policy of insurance" with respect to Claim No. 13-1390-8N9.

11. Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8N9.

**ANSWER:** State Farm denies the allegations contained in Count V Paragraph 11.

12. Despite Connector's [sic] demands, State Farm has failed and refused to pay the amount due of $111,955.00 on State Farm Claim No. 13-1390-8N9.

**ANSWER:** State Farm admits that it denied Connectors' Claim No. 13-1390-8N9 and denies all remaining allegations contained in Count V Paragraph 12.

14.[sic]State Farm is liable to pay Connectors the balance due of $111,955.00 on State Farm Claim No. 13-1390-8N9, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

**ANSWER:** State Farm denies the allegations contained in Paragraph Count V Paragraph 14.

## COUNT VI

[Breach of Contract - Connectors]

1. At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

**ANSWER:** State Farm admits that it is an insurance company authorized to do business, and is doing business, in the State of Illinois.

2. At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

**ANSWER:** State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Count VI Paragraph 2.

3.      Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

**ANSWER:**  State Farm admits on information and belief that at the time of the alleged events giving rise to the property claims that are the subject of this action Connectors was the title owner of a property located at 622-624 West 79th Street, Chicago, Illinois 60620.  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count VI Paragraph 3.

4.      On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 [sic] (the "Connectors Policy"). A copy of the Connectors Policy is attached hereto as Exhibit "A". Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

**ANSWER:**  State Farm admits that it issued commercial multi-peril insurance policy number 93-GQ-Z610-7 effective January 5, 2017 for a property located at 622 W. 79th Street, Chicago, Illinois, 60620 to Connectors, and that a certified copy of the Connectors policy is attached to the Amended Complaint as Exhibit A.  Further answering, State Farm admits that the Connectors Policy provided, *inter alia*, coverage for damage to the insured building with limits of $400,000 and coverage for "loss of income and extra expense" for one year from date of loss, with a "basic deductible" of $2,500.  State Farm denies that the allegations contained in Count VI Paragraph 4 fully and accurately describe the terms of the Policy, denies any characterization of the terms of the Policy that is inconsistent therewith, and denies all remaining allegations contained in Count VI Paragraph 4.

5.      On April 17, 2017, while the Connectors Policy was in full force, there occurred a hail event (the "Hail Event") in Chicago, Illinois.

**ANSWER:**  State Farm admits that the Policy was in effect on April 17, 2017, but that State Farm had notified Connectors via letter dated February 17, 2017, that the Policy would be cancelled

effective April 24, 2017.  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count VI Paragraph 5.

6.      As a result of the Hail Event, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8F4 under which the third floor roof had a hole caused, ceiling, drywall were damaged which resulted in loss and damage in the amount of $17,500.00.

**ANSWER:**  State Farm admits that it assigned Claim No. 13-1390-8F4 to a claim by Connectors for an alleged hail loss that allegedly occurred at the Premises on April 17, 2017, and that Connectors submitted a proof of loss for Claim No. 13-1390-8F4 claiming loss and damage to the Premises in the amount of $17,500.00.  State Farm denies all remaining allegations contained in Count VI Paragraph 6.

7.      On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $17,500.00 for State Farm Claim No. 13-1390-8F4.

**ANSWER:**  State Farm admits that on or around August 16, 2017 Connectors submitted a Sworn Statement in Proof of Loss dated August 11, 2017 in the amount of $17,500.00 on Claim No. 13-1390-8F4.  State Farm denies all remaining allegations contained in Count VI Paragraph 7.

8.      The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

**ANSWER:**  State Farm admits that the Connectors Policy provides, *inter alia*, that State Farm "will pay for covered loss" within 30 days after receipt of the sworn proof of loss, provided that the insured has "complied with all of the terms" of the Policy, and State Farm has (a) reached agreement with the insured on the amount of loss or (b) an appraisal award has been made.  State Farm denies that the allegations contained in Count VI Paragraph 8 accurately describe the terms of the Policy, and denies any characterization of the terms of the Policy that is inconsistent therewith.

9.      Accordingly, payment from State Farm was due on State Farm Claim No. 13-13-1390-8F4 [sic] on before September 10, 2017.

**ANSWER:**  State Farm denies the allegations contained in Count VI Paragraph 9.

10.     Pursuant to letter dated September 5, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8F4.

**ANSWER:**  State Farm denies the allegations contained in Count VI Paragraph 10.

11.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8F4.

**ANSWER:**  State Farm denies the allegations contained in Count VI Paragraph 11.

12.     Despite Connector's [sic] demands, State Farm has failed and refused to pay the amount due of $17,500.00 on State Farm Claim No. 13-1390-8F4.

**ANSWER:**  State Farm admits that it denied Connectors' Claim No. 13-1390-8F4 and denies all remaining allegations contained in Count VI Paragraph 12.

13.     State Farm is liable to pay Connectors the amount due of $17,500.00 on State Farm Claim No. $17,500.00, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

**ANSWER:**  State Farm denies the allegations contained in Paragraph Count VI Paragraph 13.

<u>COUNT VII</u>

[Breach of Contract - Connectors]

1.      At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

**ANSWER:**  State Farm admits that it is an insurance company authorized to do business, and is doing business, in the State of Illinois.

2.      At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

**ANSWER:**  State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Count VII Paragraph 2.

3.        Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

**ANSWER:**  State Farm admits on information and belief that at the time of the alleged events giving rise to the property claims that are the subject of this action Connectors was the title owner of a property located at 622-624 West 79th Street, Chicago, Illinois 60620. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count VII Paragraph 3.

4.        On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 [sic] (the "Connectors Policy"). A copy of the Connectors Policy is attached hereto as Exhibit "A". Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

**ANSWER:**  State Farm admits that it issued commercial multi-peril insurance policy number 93-GQ-Z610-7 effective January 5, 2017 for a property located at 622 W. 79th Street, Chicago, Illinois, 60620 to Connectors, and that a certified copy of the Connectors policy is attached to Plaintiffs' Amended Complaint as Exhibit A. Further answering, State Farm admits that the Connectors Policy provided, *inter alia*, coverage for damage to the insured building with limits of $400,000 and coverage for "loss of income and extra expense" for one year from date of loss, with a "basic deductible" of $2,500. State Farm denies that the allegations contained in Count VII Paragraph 4 fully and accurately describe the terms of the Policy, denies any characterization of the terms of the Policy that is inconsistent therewith, and denies all remaining allegations contained in Count VII Paragraph 4.

5.        On April 23, 2017, while the Connectors Policy was in full force, there occurred a theft at the Premises.

**ANSWER:**  State Farm admits that the Policy was in effect on April 23, 2017, but that State Farm had notified Connectors via letter dated February 17, 2017 that the Policy would be canceled

effective April 24, 2017. State Farm lacks knowledge or information sufficient to form a belief as

to the truth of the remaining allegations contained in Count VII Paragraph 5.

> 6.  As a result of the theft, the Premises suffered loss and damage, and Connectors filed a corresponding claim with State Farm to which State Farm assigned Claim No. 13-1390-8K9 under which Connectors suffered loss and damage in the amount of $48,500.00.

**ANSWER:** State Farm admits that it assigned Claim No. 13-1390-8K9 to a claim by Connectors

for an alleged theft that allegedly occurred at the Premises on April 23, 2017, and that Connectors

submitted a proof of loss for Claim No. 13-1390-8K9 claiming loss and damage to the Premises

in the amount of $48,500.00. State Farm denies all remaining allegations contained in Count VII

Paragraph 6.

> 7.  On August 11, 2017 Connectors submitted a Sworn Statement in Proof of Loss in the amount of $48,500.00 minus a $5,000.00 deductible, for a total amount of $43,500.00 for State Farm Claim No. 13-1390-8K9.

**ANSWER:** State Farm admits that on or around August 16, 2017 Connectors submitted a Sworn

Statement in Proof of Loss dated August 11, 2017 in the amount of $43,500.00 on Claim No. 13-

1390-8K9. State Farm denies that the Sworn Statement in Proof of Loss shows a deductible

amount of $5,000.00, denies that the Connectors Policy provides for a deductible in the amount of

$5,000.00, and denies all remaining allegations contained in Count VII Paragraph 7.

> 8.  The Connectors Policy provides that loss will be payable 30 days following receipt of proof of loss.

**ANSWER:** State Farm admits that the Connectors Policy provides, *inter alia*, that State Farm

"will pay for covered loss" within 30 days after receipt of the sworn proof of loss, provided that

the insured has "complied with all of the terms" of the Policy, and State Farm has (a) reached

agreement with the insured on the amount of loss or (b) an appraisal award has been made. State

Farm denies that the allegations contained in Count VII Paragraph 8 accurately describe the terms

of the Policy, and denies any characterization of the terms of the Policy that is inconsistent therewith.

      9.      Accordingly, payment from State Farm was due on State Farm Claim No. 13-1390-8K9 on [sic] before September 10, 2017.

**ANSWER:**  State Farm denies the allegations contained in Count VII Paragraph 9.

      10.     Pursuant to letter dated September 5, 2017 State Farm purported to deny State Farm Claim No. 13-1390-8K9.

**ANSWER:**  State Farm denies the allegations contained in Count VII Paragraph 10.

      11.     Connectors has performed all conditions precedent under the Connectors Policy on its part to be performed to be paid on State Farm Claim No. 13-1390-8K9.

**ANSWER:**  State Farm denies the allegations contained in Count VII Paragraph 11.

      12.     Despite Connector's [sic] demands, State Farm has failed and refused to pay the amount due of $17,500.00 on State Farm Claim No. 13-1390-8K9.

**ANSWER:**  State Farm admits that it denied Connectors' Claim No. 13-1390-8K9 and denies all remaining allegations contained in Count VII Paragraph 12.

      13.     State Farm is liable to pay Connectors the amount due of $43,500.00 on State Farm Claim No. 13-1390-8K9, with interest thereon at the rate of 5% annually from September 10, 2017, plus interest and costs.

**ANSWER:**  State Farm denies the allegations contained in Count VII Paragraph 13.

<u>COUNT VIII</u>

[Breach of Contract - Connectors]

      1.      At all times pertinent hereto, State Farm was an insurance company authorized to do business, and doing business, in the State of Illinois.

**ANSWER:**  State Farm admits that it is an insurance company authorized to do business, and is doing business, in the State of Illinois.

      2.      At all times pertinent hereto, Connectors was a domestic business corporation, licensed to do business in the State of Illinois. Connectors manages and owns residential and commercial real estate. The president and principal of Connectors is Darryl Williams, who is African-American.

**ANSWER:** State Farm lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Count VIII Paragraph 2.

3.     Connectors is, and at all times pertinent hereto was, the title owner of the residential property at 622-624 West 79th Street, Chicago, Illinois 60620 (the "Premises"), which includes two commercial spaces, six apartment units and a basement.

**ANSWER:** State Farm admits on information and belief that at the time of the alleged events giving rise to the property claims that are the subject of this action Connectors was the title owner of a property located at 622-624 West 79th Street, Chicago, Illinois 60620. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count VIII Paragraph 3.

4.     On or about January 4, 2017 State Farm executed and delivered to Connectors its insurance Policy No. 93-GQ-Z610-71 [sic] (the "Connectors Policy"). A copy of the Connectors Policy attached hereto as Exhibit "A". Under the terms of the Connectors Policy, State Farm insured Connectors against loss or damage to the Premises, including water damage, equipment breakdown, and loss of income in the amount of $400,000.00, with a deductible in the amount of $2,500.00.

**ANSWER:** State Farm admits that it issued commercial multi-peril insurance policy number 93-GQ-Z610-7 effective January 5, 2017 for a property located at 622 W. 79th Street, Chicago, Illinois, 60620 to Connectors, and that a certified copy of the Connectors policy is attached to the Amended Complaint as Exhibit A. Further answering, State Farm admits that the Connectors Policy provided, *inter alia*, coverage for damage to the insured building with limits of $400,000 and coverage for "loss of income and extra expense" for one year from date of loss, with a "basic deductible" of $2,500. State Farm denies that the allegations contained in Count VIII Paragraph 4 fully and accurately describe the terms of the Policy, denies any characterization of the terms of the Policy that is inconsistent therewith, and denies all remaining allegations contained in Count VIII Paragraph 4.

5.     On February 4, 2017, while the Connectors Policy was in full force, there occurred a theft and vandalism at the Premises. As a result of the theft and vandalism,

Connectors suffered loss and damage at the Premises under which copper pipes, copper plumbing fixtures, fire alarm system, fire extinguishers, lights, smoke detectors, carbon monoxide detectors were stolen, second floor stairwell was vandalized, light bulbs were broken, back and front doors were broken down and torn off the hinges, door in the apartment bedroom was torn off the hinges, kitchen electric outlet was vandalized, 6 industrial heaters were stolen, cabinets were torn down and stolen, ceilings and hallway were vandalized, the windows on the second and third floor were broken, the walls were vandalized, the radiators on second and third floors were torn off, and holes were made in the walls on the second floor, resulting in loss and damage in the approximate amount of $120,000.00, and [sic]

**ANSWER:** State Farm admits that the Connectors Policy was in effect on February 4, 2017. State Farm lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Count VIII Paragraph 5.

6. Connectors filed a corresponding claim for theft and vandalism with State Farm to which State Farm assigned State Farm Claim No. 13-0790-6C6.

**ANSWER:** State Farm admits that it assigned Claim No. 13-0790-6C6 to a claim by Connectors for alleged theft and vandalism that allegedly occurred at the Premises on February 4, 2017. State Farm denies all remaining allegations contained in Count VIII Paragraph 6.

7. Pursuant to letter dated October 3, 2017 State Farm purported to deny State Farm Claim No. 13-0790-6C6.

**ANSWER:** State Farm admits that it informed Connectors by letter dated October 3, 2017 that it was "rejecting [Connectors'] Sworn Proof of Loss and . . . denying any and all liability and coverage under the policy of insurance" with respect to Claim No. 13-0760-6C6.

8. Connectors has performed all conditions precedent under the Policy on its part to be performed to be paid on State Farm Claim No. 13-0790-6C6.

**ANSWER:** State Farm denies the allegations contained in Count VIII Paragraph 8.

9. Despite Connector's [sic] demands, State Farm has failed and refused to pay the amount due of $120,000.00 on State Farm Claim No. 13-0790-6C6.

**ANSWER:** State Farm admits that it denied Connectors' Claim No. 13-0790-6C6 and denies all remaining allegations contained in Count VIII Paragraph 9.

10.     State Farm is liable to pay Connectors the amount due of $120,000.00 on State Farm Claim No. 13-0790-6C6, plus interest and costs.

**ANSWER:** State Farm denies the allegations contained in Count VIII Paragraph 10.

## COUNT IX

[Breach of Duty to Defend and Indemnify]

Pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), this Count has been dismissed.

## COUNT X

[Breach of Contract – Nash]

Pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), this Count has been dismissed.

## COUNT XI

[Violations of Fair Housing Act, 42 U.S.C. § 3604 (a) and (b) – Nash]

Pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), this Count has been dismissed.

## COUNT XII

[Violations of Fair Housing Act, 42 U.S.C. §§ 1981 and 1982 – Nash]

Pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), this Count has been dismissed.

## COUNT XIII

[Class Action]

[Violations of 42 U.S.C. Sec. 1981 – Nash]

Pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), this Count has been dismissed.

## COUNT XIV

[Violations of 215 ILCS 5/155 – Connectors]

1.    Plaintiffs repeat and reallege the allegations of Counts I-IX of this Complaint as if fully set forth herein.

**ANSWER:** State Farm hereby incorporates by reference its responses to Counts I through VIII of the Amended Complaint as though fully set forth herein.[2]

2.    Although often requested to do so, State Farm has failed and refused, and still fails and refuses, to pay Connectors the unpaid amount of the Claims or any part of it, to Connector's damage in the amount of $422,231.29, with interest thereon, at the rate of 5% annually.

**ANSWER:** State Farm denies that it owes Connectors any unpaid amount and denies all remaining allegations contained in Count XIV Paragraph 2.

3.    215 ILCS 5/155 provides as follows:

**Sec. 155.** Attorney fees. (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

**(a)** 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;

**(b)** $ 60,000;

**(c)** the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

**(2)** Where there are several policies insuring the same insured against the same loss whether issued by the same or by different companies, the court may fix the amount of the allowance so that the total attorney fees on account of one loss shall not be increased by reason of the fact that the insured brings separate suits on such policies.

---

[2] Count IX has been dismissed. State Farm accordingly has not answered that Count.

**ANSWER:** Count XIV Paragraph 3 is a statement of law as to which no answer is required or given.

4.      State Farm's refusal to pay, as set forth above, is vexatious and unreasonable as proscribed by 215 ILCS 5/155.

**ANSWER:** State Farm denies the allegations contained in Count XIV Paragraph 4.

5.      State Farm is liable to pay Connectors the loss and damage he sustained as a result of the Fire in the amount of at least $422,231.29, with interest thereon at the rate of 5%, plus $60,000.00 plus attorney's fees, and such other amounts as are allowed pursuant to 215 ILCS 5/155, and interest and costs.

**ANSWER:** State Farm denies the allegations contained in Count XIV Paragraph 5.

<u>COUNT XIV</u> [sic]

[Violations of 215 ILCS 5/155 – Nash]

Pursuant to the Court's Memorandum Opinion and Order of October 9, 2019 (Dkt. 38), this Count has been dismissed.

**<u>FIRST AFFIRMATIVE DEFENSE</u>**

1.      State Farm repeats and incorporates its answers and denials to the allegations of the Amended Complaint as though fully set forth herein.

2.      Connectors' claims are barred in whole or in part by the terms, definitions, conditions, exclusions, and limitations contained in its State Farm Policy.

3.      The Policy includes the following provision under Section I – Exclusions:

2.      We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

**e.  Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by freezing, unless:

(1) You do your best to maintain heat in the building or structure; . . .

Dkt. 24, Ex. 1, State Farm Business Owner's Coverage Form at pp. 6-7.

4.    Connectors alleges that the loss and damage claimed in its Claim No. 13-0670-8L5 was the result of Lynnette Crawley, who Connectors alleges was a tenant at the Property, leaving a bathroom window open in Unit 2R during a "below freezing weather event (the 'Weather Event')" on January 10, 2017. Connectors alleges that, as a result of the Weather Event and Ms. Crawley's action, the pipes froze and burst, causing damage to the walls, floors, ceilings, drywall, electric, heating and gas, pipelines, and water tank. *Supra* ¶¶ 17-18.

5.    During its investigation of Claim No. 13-0670-8L5, State Farm learned that People's Gas had disconnected service to the unit where the leak originated in October of 2016.

6.    On March 24, 2017, State Farm sent a letter to Mr. Williams denying Claim No. 13-0670-8L5.  That letter stated, in pertinent part:

> We confirmed with People's Gas Company, gas service on the second level of the building was disconnected October 2016.  We also discovered the last active year for gas service on the first level was 2005.  Based upon the results of our site inspection and investigation, it was determined heat was not maintained which resulted in the frozen pipe(s) on the second level and is not covered by your policy.

7.    Connectors alleges that, in addition to the loss and damage claimed in its Claim No. 13-0670-8L5, the Weather Event and Ms. Crawley's alleged action resulted in additional loss and damage to which State Farm assigned Claim Nos. 13-0790-6C6, 13-1390-8S1, Claim No. 13-1390-8K9, and 13-1390-8N9.

8.    Connectors' failure to maintain heat at the Premises excludes coverage under Connectors' State Farm Policy for any of the loss and damage that allegedly occurred as a result of the January 10, 2017 Weather Event, including but not limited to the loss and damage claimed by Connectors under Claim No. 13-0670-8L5, Claim No. 13-0790-6C6, Claim No. 13-1390-8S1, Claim No. 13-1390-8K9, and Claim No. 13-1390-8N9.

9.    The Policy also includes the following provisions under Section I – Exclusions:

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

        *       *       *

**j. Fungi, Virus Or Bacteria**

    **(1)** Growth, proliferation, spread or presence of "fungi" or wet or dry rot; or

    **(2)** Virus, bacteria or other microorganism that induces or is capable of inducing physical distress, illness or disease; and

    **(3)** We will also not pay for:

        **(a)** Any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the described premises or location of the rebuilding, repair or replacement of that property, by "fungi", wet or dry rot, virus, bacteria or other microorganism;

        **(b)** Any remediation of "fungi", wet or dry rot, virus, bacteria or other microorganism, Including the cost or expense to:

            **i.** Remove the "fungi", wet or dry rot, virus, bacteria or other microorganism from Covered Property or to repair, restore or replace that property;

            **ii.** Tear out and replace any part of the building or other property as needed to gain access to the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

            **iii.** Contain, treat, detoxify, neutralize or dispose of or in any way respond to or assess the effects of the "fungi", wet or dry rot, virus, bacteria or other microorganism; or

        **(c)** The cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of "fungi", wet or dry rot, virus, bacteria or other microorganism, whether

performed prior to, during or after removal, repair, restoration or replacement of Covered Property.

This exclusion does not apply if "fungi", wet or dry rot, virus, bacteria or other microorganism results from an accidental direct physical loss caused by fire or lightning.

\*　　\*　　\*

2. We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

\*　　\*　　\*

### l. Other Types Of Loss

**(1)** Wear and tear;

**(2)** Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

**(3)** Smog;

**(4)** Settling, cracking, shrinking or expansion;

**(5)** Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

**(6)** Mechanical breakdown, including rupture or bursting caused by centrifugal force; or

**(7)** The following causes of loss to personal property:

**(a)** Dampness or dryness of atmosphere;

**(b)** Changes in or extremes of temperature; or

**(c)** Marring or scratching.

But if an excluded cause of loss that is listed in Paragraphs **(1)** through **(7)** above results in an accidental direct physical loss by any of the "specified causes of loss" or by building glass breakage, we will pay for the loss caused by that "specified cause of loss" or by building glass breakage.

\*　　\*　　\*

### p. Continuous Or Repeated Seepage, Discharge Or Leakage Of Water

46

Continuous or repeated seepage, discharge or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

**a. Weather Conditions**

Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph 1. and 2. above to produce the loss.

10. There was no coverage under the Policy for Connectors' Claim No. 13-0790-6C6 because the damages claimed were the result of normal wear and tear and not a result of an accidental direct physical loss covered under the Policy.

11. There was no coverage under the Policy for Connectors' Claim No. 13-1390-8N9 because the damages claimed were the result of normal wear and tear and frozen water pipes. There was no evidence sufficient heat was maintained in the building and the damages were not a result of an accidental direct physical loss covered under the Policy.

12. There was no coverage under the Policy for Connectors' Claim No. 13-1390-8F4 because the damages claimed were the result of normal wear and tear and repeated leakage and seepage from a roof leak and not a result of an accidental direct physical loss covered under the Policy.

13. There was no coverage under the Policy for Connectors' Claim No. 13-1390-8K9 because the damages claimed were the result of normal wear and tear, rodent and mold damage and not a result of an accidental direct physical loss covered under the Policy.

47

14.     There was no coverage under the Policy for Connectors' Claim No. 13-1390-8S1 because the Policy excludes mechanical breakdown, damages caused by frozen water pipes are excluded because there was no evidence sufficient heat was maintained in the building, and the damages were not a result of an accidental direct physical loss covered under the Policy.

## SECOND AFFIRMATIVE DEFENSE

15.     State Farm repeats and incorporates its answers and denials to the allegations of the Amended Complaint and Paragraphs 2 through 14 of its Affirmative Defenses as though fully set forth herein.

16.     Connectors' claims are barred because Connectors' violated the Policy's Concealment, Misrepresentation Or Fraud provision by misrepresenting a material fact concerning the Property, as a result of which the Policy is void.

17.     The Concealment, Misrepresentation or Fraud provision of the Policy states:

**Concealment, Misrepresentation Or Fraud.**

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**a.** This policy.

**b.** The Covered Property.

**c.** Your interest in the Covered Property.

**d.** A claim under this policy.

18.     In its application for the Policy, Connectors falsely represented that all units in the Property were occupied, and that no units were vacant. In fact, at the time Connectors made those representations in the application, no more than two of the six residential units in the Property were occupied.

19.     Connectors' misrepresentation that there were no vacant units in the building was

a "material fact concerning … [t]he Covered Property," because high vacancy rates in a multi-unit building increase the potential for loss.

20.     Connectors' misrepresentation that there were no vacant units was made intentionally and for the purpose of deceiving State Farm.

21.     Because Connectors violated the Policy's Concealment, Misrepresentation or Fraud provision by misrepresenting a material fact about the Property, the Policy is void.

## THIRD AFFIRMATIVE DEFENSE

22.     State Farm repeats and incorporates its answers and denials to the allegations of the Amended Complaint and Paragraphs 2 through 14 and 16 through 21 of its Affirmative Defenses as though fully set forth herein.

23.     Connectors' claims are barred because Connectors' violated the Policy's Concealment, Misrepresentation Or Fraud provision by misrepresenting a material fact concerning a claim under the Policy, as a result of which the Policy is void.

24.     On or around January 20, 2017, Connectors contacted State Farm to report a loss to the Property that Connectors claimed had resulted when a window was left open by a tenant and pipes froze and burst, causing water damage to the first floor commercial space and the residential unit where the leak allegedly had originated. Connectors reported the date of loss as January 12, 2017. State Farm assigned Claim No. 13-0670-8L5 to the loss.

25.     On January 23, 2017, State Farm sent a letter to Darryl Williams asking him to provide current lease agreements and documentation to support collected rents and expenses in order to assist in Connectors' loss of income claim. The letter also noted that, as had been discussed during the telephone conversation, there were coverage issues, and asked Mr. Williams to provide the following:

Documentation to support heat was maintained in the building; and

Plumbing report to confirm the loss occurred after the policy inception date and to confirm the source.

26.     On February 17, 2017, State Farm sent another letter to Mr. Williams in which State Farm informed him that there was a question as to whether State Farm was obligated to indemnify Connectors under the Policy for the loss that was alleged to have occurred on or about January 12, 2017 because: (a) it was questionable whether the loss took place during the policy period; (b) it was questionable whether there had been a loss caused by a peril insured against; and (c) it was questionable if heat was maintained in the building at the time of loss.

27.     During its investigation of Claim No. 13-0670-8L5, State Farm was informed by the tenant occupying the first floor commercial units of the Property, Jesse Torres, that Mr. Torres had been at the Property on Saturday, January 7, 2017, at which time there were no signs of water leakage in his store, but that water was coming down everywhere when he arrived on the morning of Monday, January 9, 2017. Based on that information, State Farm revised the date of loss for Claim No. 13-0670-8L5 to January 9, 2017.

28.     In addition, State Farm was informed by Mr. Williams that prior to the end of December 2016, the unit where the leak originated—the second floor rear unit in the 624 W. 79th Street side of the Property—had been occupied by a tenant named Dominique Jones. Mr. Williams represented in a fax sent to State Farm on February 24, 2017 that Ms. Jones had moved out of the apartment without giving notice sometime in late December.

29.     State Farm also learned during its investigation that People's Gas had disconnected service to the unit where the leak originated in October of 2016.

30.     On April 20 and 21, 2017, Mr. Williams spoke by telephone with a State Farm claim representative and a State Farm team manager about Claim No. 13-0670-8L5. During those

calls, Mr. Williams did not dispute that People's Gas was not in fact providing service to the unit where the loss occurred on the date of the loss, but asserted that this did not mean heat was not being maintained because the building tenants used space heaters to maintain heat in their units.

31.     On August 16, 2017, Connectors submitted a Sworn Statement in Proof of Loss ("Proof of Loss") on Claim No. 13-0670-8L5. The Proof of Loss claimed property damage in the amount of $86,155 and fair rental value loss of $3,850 per month.

32.     The Proof of Loss identified the date of loss as January 9, 2017, and the cause of the loss as "window left open."

33.     Connectors stated in the Proof of Loss that it was attaching records to support its claimed fair rental value loss, and submitted with the Proof of Loss copies of five leases. These documents included what purported to be a lease for the 2nd floor rear apartment at 624 W. 79th Street—the unit where the leak had occurred—for a tenant identified as Lynnette Crawley, with a term running from January 1, 2017 to January 1, 2018.

34.     The five leases submitted by Connectors showed monthly rents totaling $3,850.

35.     The Proof of Loss was signed by Darryl Williams, who "made solemn oath" that the matters contained in the Proof of Loss were "true in substance and in fact."

36.     On February 7, 2017, Connectors reported an alleged vandalism loss at the Property, which was assigned Claim No. 13-0790-6C6.

37.     On February 17, 2017 State Farm sent a letter notifying Connectors that the Policy would be cancelled effective April 24, 2017 at 12:01 a.m. because the "property is now vacant. Vacant property increases the potential for losses."

38.     On April 23, 2017—the day before the cancellation of the Policy became effective—Connectors submitted four more claims to State Farm, as follows:

    a.   Claim No. 13-1390-8K9: tenant vandalism to hallway and stairwell

    b.   Claim No. 13-1390-8F4: roof leak resulting in interior damage

    c.   Claim No. 13-1390-8N9: water damage caused by tenant intentionally breaking pipes under sink

    d.   Claim No. 13-1390-8S1: breakdown of boilers

39.    On August 16, 2017, Connectors submitted Sworn Statements in Proof of Loss on Claim Nos. 13-1390-8K9, 13-1390-8F4, 13-1390-8N9, and 13-1390-8S1. Each of these Proofs of Loss was signed by Mr. Williams, who, being "duly sworn, made solemn oath that the matters contained in" the Proof of Loss were "true in substance and in fact."

40.    The Proof of Loss for Claim No. 13-1390-8K9 described the loss as "theft and damage of property," and claimed damage to the building in the amount of $28,500 and contents loss of $20,000, for a total claim of $48,500, less a deductible of $5,000.

41.    On Claim No. 13-1390-8F4, Connectors stated that the loss was "leakage in roof" that occurred on April 17, 2017, caused by "weather conditions," and claimed $15,000 in damages to the building and a contents loss of $2,500.

42.    On Claim No. 13-1390-8N9, the Proof of Loss identified the cause of the alleged loss as "water," and claimed $86,155 for damage to the building—the same amount claimed on the Proof of Loss for Claim No. 13-0670-8L5—and $30,800 for unspecified "other," for a total of $116,955, less a deductible of $5,000.

43.    On Claim No. 13-1390-8S1, the Proof of Loss identified the cause of the alleged loss as "maintenance breakdown," and claimed damage to the building in the amount of $60,000, less a deductible of $5,000.

44.    Connectors never submitted a Proof of Loss on Claim No. 13-0790-6C6.

45. On or around October 16, 2017, State Farm paid Connectors $31,649.72 on Claim No. 13-0670-8L5, representing State Farm's estimate of the actual cash value of the building damage. On November 27, 2017, State Farm agreed during a call with Mr. Williams to pay three months of lost rental income of $3,850 per month, for a total of $11,550. State Farm paid Connectors that amount, as well as replacement cost benefits on the property damage in the amount of $12,378.99, on or around December 20, 2017. In total, State Farm paid Connectors $55,578.71 on Claim No. 13-0670-8L5.

46. After this lawsuit was filed, State Farm learned that Lynnette Crawley, the supposed tenant in Unit 2R who allegedly left a bathroom window open during the January 10, 2017 Weather Event, was never a tenant at the Property, never lived at the Property, has never been inside the Property, and did not leave a window open in Unit 2R or in any other unit of the Property in January 2017 or at any other time.

47. Connectors intentionally misrepresented a material fact concerning its Claim No. 13-0670-8L5. Connectors intentionally misrepresented that it had suffered damage to the Property as the result of a tenant leaving a window open in Unit 2R when in fact Unit 2R was vacant on the date of the alleged loss, and the individual whom Connectors claimed was living in that Unit has never lived in the building and did not leave a window open in Unit 2R or any other unit in the building on the date of loss or at any other time.

48. Connectors also intentionally misrepresented that heat had been maintained Unit 2R when in fact People's Gas had turned off the gas to that unit approximately three months prior to the date of loss, and there was no tenant occupying the unit on the date of loss. Connectors' misrepresentation that heat had been maintained in Unit 2R on the date of law was a material fact concerning Claim No. 13-0670-8L5.

49. Connectors also intentionally misrepresented in connection with its Claim No. 13-0670-8L5 that the claimed damage to the Property had resulted in lost rental income of $3,850 per month, which Connectors supported in part by submitting a document purporting to be a lease for Unit 2R signed by Lynette Crawley, showing a lease term of January 1, 2017 through January 1, 2018, and monthly rent of $700 per month. In fact, as State Farm subsequently learned, Ms. Crawley has never lived in Unit 2R, or any other unit in the Property, and has never paid or agreed to pay rent in any amount to Connectors for Unit 2R or any other unit in the Property. Connectors' misrepresentation that Unit 2R was leased to Ms. Crawley for a rent of $700 per month was a material fact concerning Claim No. 13-0670-8L5.

50. Connectors also intentionally misrepresented material facts concerning claims under the Policy by making false claims for alleged theft, (Claim No. 13-0790-6C6), tenant vandalism (Claim Nos. 13-1390-8K9 and 13-1390-8N9), a roof leak allegedly caused by "weather" (Claim No. 13-1390-8F4), and alleged breakdown of the Property's boilers (Claim No. 13-1390-8S1). Connectors' Amended Complaint alleges with respect to each of these claims that the Property suffered loss and damage "[a]s an additional result of the Weather Event and Lynette [sic] Crawley's action." In fact, Ms. Crawley never lived at the Property and did not leave a window open in Unit 2R or in any other unit of the Property in January 2017 or at any other time.

51. In addition, Connectors intentionally misrepresented a material fact concerning a claim under the Policy by claiming the same damage to the Property on its Proof of Loss for Claim No. 13-1390-8N9 that it claimed on the Proof of Loss for Claim No. 13-0670-8L5.

52. In addition, Connectors intentionally misrepresented a material fact concerning a claim under the Policy by claiming contents loss of $20,000 on its Claim No. 13-1390-8K9 when the Policy does not include any contents coverage.

53.    Because Connectors violated the Policy's Concealment, Misrepresentation or Fraud provision, the Policy is void.

### FOURTH AFFIRMATIVE DEFENSE

54.    State Farm reserves all rights under the policy issued to Connectors.  This includes the right to enforce all policy provisions, conditions, and exclusions, and to demand arbitration or appraisal pursuant to the terms of the policy.

### FIFTH AFFIRMATIVE DEFENSE

55.    State Farm reserves the right to assert additional defenses based on information later uncovered during the discovery process.

### COUNTERCLAIM

Defendant/Counterclaim Plaintiff State Farm Fire and Casualty Company ("State Farm"), for its Counterclaim against Plaintiff/Counterclaim Defendant The Connectors Realty Group Corporation ("Connectors"), alleges as follows:

### INTRODUCTION

1.    On January 4, 2017, Connectors submitted an application to State Farm for a commercial multi-peril policy to insure a building located at 622-624 W. 79th Street in Chicago, Illinois. State Farm accepted the application and issued policy number 93-GQ-Z610-7, with an effective date of January 5, 2017 (the "Policy").

2.    Between the effective date of the Policy and April 24, 2017, when the Policy cancelled, Connectors made six claims under the Policy, seeking over $350,000 in claimed property damages and lost income. State Farm paid Connectors $55,578.71 on the first of those claims, and denied the remainder. Connectors then brought the above-captioned action asserting

that State Farm had breached the terms of the Policy and had discriminated against Connectors because of the race of its principal, Darryl Williams.

3.      In the course of investigating Connectors' allegations, State Farm discovered that Connectors, through Mr. Williams, made material, false representations both in its application for the Policy, and in connection with the multiple claims that it submitted under the Policy, as well as in its pleadings to this Court. Perhaps most egregiously, Connectors has claimed losses under the Policy that allegedly flowed from the actions of a supposed tenant, Lynnette Crawley, who in fact never lived in the building. Connectors even went so far as to claim—and receive from State Farm—lost rental income based in part on a purported lease signed by Ms. Crawley.

4.      Accordingly, State Farm now brings this Counterclaim seeking restitution of the amount by which Connectors was unjustly enriched when State Farm paid it $55,578.71 on claims made under the void Policy.

## PARTIES

5.      State Farm is an Illinois corporation with its principal place of business located in Bloomington, Illinois.

6.      Connectors is an Illinois domestic business corporation. On information and belief, Connectors is solely owned by Darryl Williams, an individual who is a resident and citizen of Illinois.

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Connectors asserts claims arising under the laws and regulations of the United States, including 42 U.S.C. §§ 1981, 1982, and 3604.

8.      The Court has supplemental jurisdiction over the state-law claims asserted by State Farm in this Counterclaim pursuant to 28 U.S.C. § 1367.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Connectors resides in this district and the events giving rise to the claims occurred in this district.

## STATEMENT OF FACTS

### *The Connectors Policy*

10.      On January 4, 2017, Connectors submitted an application to State Farm for a commercial multi-peril policy on a mixed-used, commercial and residential property located at 622-624 W. 79th Street, Chicago, Illinois, 60602 ("the Property"). The Property has six apartments on the second and third floors, and two commercial units, both on the first floor. The application represented that all units in the building were occupied at the time it was submitted.

11.      State Farm accepted the application and issued commercial multi-peril insurance Policy number 93-GQ-Z610-7 to Connectors effective January 5, 2017. The Policy provided $400,000 in coverage for damage to the building (Coverage A), and coverage for loss of income in the amount of actual loss sustained for twelve months. The Policy did not include coverage for business personal property (Coverage B). A certified copy of the Policy is attached as Exhibit 1.

12.      The Policy included, among other terms and conditions, the following:

> **Concealment, Misrepresentation Or Fraud.**
>
> This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> **e.**   This policy.
>
> **f.**   The Covered Property.
>
> **g.**   Your interest in the Covered Property.
>
> **h.**   A claim under this policy.

Ex. 1, State Farm Business Owners Coverage Form CMP-4100 ("Form CMP-4100") at 37.

**_Claim No. 13-0670-8L5_**

13.     On or around January 20, 2017, Connectors contacted State Farm to report a loss to the Property that Connectors claimed had resulted when a window was left open by a tenant and pipes froze and burst, causing water damage to the first floor commercial space and the residential unit where the leak allegedly had originated. Connectors reported the date of loss as January 12, 2017. State Farm assigned Claim No. 13-0670-8L5 to the loss.

14.     The Policy includes the following provision under Section I – Exclusions:

> We do not insure under any coverage for loss whether consisting of, or directly and immediately caused by, one or more of the following:

> **a. Frozen Plumbing**

>> Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by freezing, unless:

>> (1) You do your best to maintain heat in the building or structure; . . .

Ex. 1, Form CMP-4100 at 6-7.

15.     On January 23, 2017, State Farm sent a letter to Connectors' principal, Darryl Williams, referencing an earlier telephone conversation regarding coverage for loss of rents. The letter asked Mr. Williams to provide current lease agreements and documentation to support collected rents and expenses in order to assist in Connectors' loss of income claim. State Farm also noted that, as had been discussed during the telephone conversation, there were coverage issues, and asked Mr. Williams to provide the following:

> Documentation to support heat was maintained in the building; and

> Plumbing report to confirm the loss occurred after the policy inception date and to confirm the source.

16.     On February 17, 2017, State Farm sent another letter to Mr. Williams in which State Farm informed him that there was a question as to whether State Farm was obligated to indemnify

Connectors under the Policy for the loss that was alleged to have occurred on or about January 12, 2017 because: (a) it was questionable whether the loss took place during the policy period; (b) it was questionable whether there had been a loss caused by a peril insured against; and (c) it was questionable if heat was maintained in the building at the time of loss.

17.     During its investigation of Claim No. 13-0670-8L5, State Farm was informed by the tenant occupying the first floor commercial units of the Property, Jesse Torres, that Mr. Torres had been at the Property on Saturday, January 7, 2017, at which time there were no signs of water leakage in his store, but that water was coming down everywhere when he arrived on the morning of Monday, January 9, 2017. Based on that information, State Farm revised the date of loss for Claim No. 13-0670-8L5 to January 9, 2017.

18.     In addition, State Farm was informed by Mr. Williams that prior to the end of December 2016, the unit where the leak originated—the second floor rear unit in the 624 W. 79th Street side of the Property—had been occupied by a tenant named Dominique Jones. Mr. Williams represented in a fax sent to State Farm on February 24, 2017 that Ms. Jones had moved out of the apartment without giving notice sometime in late December.

19.     State Farm also learned during its investigation that People's Gas had disconnected service to the unit where the leak originated in October of 2016.

20.     On March 24, 2017, State Farm sent a letter to Mr. Williams denying Claim No. 13-0670-8L5.  That letter stated, in pertinent part:

> We confirmed with People's Gas Company, gas service on the second level of the building was disconnected October 2016.  We also discovered the last active year for gas service on the first level was 2005.  Based upon the results of our site inspection and investigation, it was determined heat was not maintained which resulted in the frozen pipe(s) on the second level and is not covered by your policy.

21.     On April 20 and 21, 2017, Mr. Williams spoke by telephone with a State Farm claim representative and a State Farm team manager about Claim No. 13-0670-8L5. During those

calls, Mr. Williams did not dispute that People's Gas was not in fact providing service to the unit where the loss occurred on the date of the loss, but asserted that this did not mean heat was not being maintained because the building tenants used space heaters to maintain heat in their units.

22.    On August 16, 2017, Connectors submitted a Sworn Statement in Proof of Loss ("Proof of Loss") on Claim No. 13-0670-8L5. The Proof of Loss claimed property damage in the amount of $86,155 and fair rental value loss of $3,850 per month.

23.    The Proof of Loss identified the date of loss as January 9, 2017, and the cause of the loss as "window left open."

24.    Connectors stated in the Proof of Loss that it was attaching records to support its claimed fair rental value loss, and submitted with the Proof of Loss copies of five leases. These documents included what purported to be a lease for the 2nd floor rear apartment at 624 W. 79th Street—the unit where the leak had occurred—for a tenant identified as Lynnette Crawley, with a term running from January 1, 2017 to January 1, 2018.

25.    The five leases submitted by Connectors showed monthly rents totaling $3,850.

26.    The Proof of Loss was signed by Darryl Williams, who "made solemn oath" that the matters contained in the Proof of Loss were "true in substance and in fact."

27.    On or around October 16, 2017, State Farm paid Connectors $31,649.72 on Claim No. 13-0670-8L5, representing State Farm's estimate of the actual cash value of the building damage. On November 27, 2017, State Farm agreed during a call with Mr. Williams to pay three months of lost rental income of $3,850 per month, for a total of $11,550. State Farm paid Connectors that amount, as well as replacement cost benefits on the property damage in the amount of $12,378.99, on or around December 20, 2017. In total, State Farm paid Connectors $55,578.71 on Claim No. 13-0670-8L5.

*__Connectors' Other Claims Under the Policy__*

28.     On February 7, 2017, Connectors reported an alleged vandalism loss at the Property, which was assigned Claim No. 13-0790-6C6.

29.     On February 17, 2017 State Farm sent a letter notifying Connectors that the Policy would be cancelled effective April 24, 2017 at 12:01 a.m. because the "property is now vacant. Vacant property increases the potential for losses."

30.     On April 23, 2017—the day before the cancellation of the Policy became effective—Connectors submitted four more claims to State Farm, as follows:

    a.   Claim No. 13-1390-8K9: tenant vandalism to hallway and stairwell

    b.   Claim No. 13-1390-8F4: roof leak resulting in interior damage

    c.   Claim No. 13-1390-8N9: water damage caused by tenant intentionally breaking pipes under sink

    d.   Claim No. 13-1390-8S1: breakdown of boilers

31.     On August 16, 2017, Connectors submitted Sworn Statements in Proof of Loss on Claim Nos. 13-1390-8K9, 13-1390-8F4, 13-1390-8N9, and 13-1390-8S1.  Each of these Proofs of Loss was signed by Mr. Williams, who, being "duly sworn, made solemn oath that the matters contained in" the Proof of Loss were "true in substance and in fact."

32.     The Proof of Loss for Claim No. 13-1390-8K9 described the loss as "theft and damage of property," and claimed damage to the building in the amount of $28,500 and contents loss of $20,000, for a total claim of $48,500, less a deductible of $5,000.

33.     On Claim No. 13-1390-8F4, Connectors stated that the loss was "leakage in roof" that occurred on April 17, 2017, caused by "weather conditions," and claimed $15,000 in damages to the building and a contents loss of $2,500.

34.     On Claim No. 13-1390-8N9, the Proof of Loss identified the cause of the alleged loss as "water," and claimed $86,155 for damage to the building—the same amount claimed on the Proof of Loss for Claim No. 13-0670-8L5—and $30,800 for unspecified "other," for a total of $116,955, less a deductible of $5,000.

35.     On Claim No. 13-1390-8S1, the Proof of Loss identified the cause of the alleged loss as "maintenance breakdown," and claimed damage to the building in the amount of $60,000, less a deductible of $5,000.

36.     Connectors never submitted a Proof of Loss on Claim No. 13-0790-6C6.

37.     State Farm denied all the claims submitted by Connectors other than No. 13-0670-8L5.

### *Connectors' Amended Complaint and Lynnette Crawley*

38.     On February 5, 2019, Connectors and former plaintiff Antoine Nash filed this action. On June 25, 2019, Connectors and Nash filed an Amended Complaint. Nash's claims were dismissed by this Court on October 9, 2019.

39.     In the Amended Complaint, Connectors alleges that the loss and damage claimed in Claim No. 13-0670-8L5 was the result of Lynnette Crawley, who the Amended Complaint alleges was "[o]ne of the tenants" at the Property, leaving a bathroom window open in Unit 2R during a "below freezing weather event (the 'Weather Event')" on January 10, 2017. Dkt. 24 ¶¶ 17-18.

40.     Although it was unknown to State Farm both at the time it received Connectors' Proof of Loss claiming property damage in the amount of $86,155 and fair rental value loss of $3,850 per month on Claim No. 13-0670-8L5, and at the time it paid Connectors $55,578.71 on Claim No. 13-0670-8L5, including $11,550 in claimed lost rent, Ms. Crawley was never a tenant at the Property and never lived at the Property.

41.     Although it was unknown to State Farm both at the time it received Connectors'
Proof of Loss claiming property damage in the amount of $86,155 and fair rental value loss of
$3,850 per month on Claim No. 13-0670-8L5, and at the time it paid Connectors $55,578.71 on
Claim No. 13-0670-8L5, including $11,550 in claimed lost rent, Ms. Crawley has never been
inside the Property, and did not leave a window open in Unit 2R or in any other unit of the Property
in January of 2017 or at any other time.

42.     The Amended Complaint further alleges that, "[a]s an additional result of the
Weather Event and Lynette [sic] Crawley's action," the Property suffered the loss and damage
claimed in Claim No. 13-1390-8S1.  *Id.* ¶ 21.

43.     Although it was unknown to State Farm at the time it received Connectors' Proof
of Loss claiming loss and damage in the amount of $55,000 on Claim No. 13-1390-8S1, Ms.
Crawley never lived at the Property and did not leave a window open in Unit 2R or in any other
unit of the Property in January 2017 or at any other time.

44.     The Amended Complaint further alleges that, "[a]s a further result of the Weather
Event and the [sic] Lynette Crawley's action," the Property suffered the loss and damage claimed
in Claim No. 13-1390-8N9.  *Id.* ¶ 24.

45.     Although it was unknown to State Farm at the time it received Connectors' Proof
of Loss claiming loss and damage in the amount of $111,955 on Claim No. 13-1390-8N9, Ms.
Crawley never lived at the Property and did not leave a window open in Unit 2R or in any other
unit of the Property in January 2017 or at any other time.

46.     The Amended Complaint further alleges that on April 23, 2017, "while the
Premises laid vacant as a result of the Weather Event, Lynette Crawley's action and State Farm's

failure to pay" the previously described claims, "there occurred a theft at the premises," resulting in the loss and damage to the Property claimed in Claim No. 13-1390-8K9. *Id.* ¶ 29.

47.     Although it was unknown to State Farm at the time it received Connectors' Proof of Loss claiming loss and damage in the amount of $43,500 on Claim No. 13-1390-8K9, Ms. Crawley never lived at the Property and did not leave a window open in Unit 2R or in any other unit of the Property in January 2017 or at any other time.

## COUNT I: UNJUST ENRICHMENT

48.     State Farm incorporates the allegations contained in paragraphs 1 through 47 of this Counterclaim as though fully set forth herein.

49.     In its application for the Policy, Connectors falsely represented that all units in the Property were occupied, and that no units were vacant.  In fact, at the time Connectors made those representations in the application, no more than two of the six residential units in the Property were occupied.

50.     The Concealment, Misrepresentation or Fraud provision of the Policy provides that the Policy is void if the insured, "at any time, intentionally conceal[s] or misrepresent[s] a material fact concerning … [t]he Covered Property." Connectors' misrepresentation that there were no vacant units in the building was a "material fact concerning … [t]he Covered Property," because high vacancy rates in a multi-unit building increase the potential for loss.

51.     Connectors' misrepresentation that there were no vacant units was made intentionally and for the purpose of deceiving State Farm.

52.     Connectors' misrepresentation that there were no vacant units in the building violated the Policy's Concealment, Misrepresentation or Fraud provision.

53. The Concealment, Misrepresentation or Fraud provision of the Policy further provides that the Policy is void if the insured, "at any time, intentionally conceal[s] or misrepresent[s] a material fact concerning … [a] claim under this policy."

54. Connectors intentionally misrepresented a material fact concerning its Claim No. 13-0670-8L5. In particular, Connectors intentionally misrepresented that it had suffered damage to the Property as the result of a tenant leaving a window open in Unit 2R when in fact Unit 2R was vacant on the date of the alleged loss, and the individual whom Connectors claimed was living in that Unit has never lived in the building and did not leave a window open in Unit 2R or any other unit in the building on the date of loss or at any other time.

55. Connectors also intentionally misrepresented that heat had been maintained Unit 2R when in fact People's Gas had turned off the gas to that unit approximately three months prior to the date of loss, and there was no tenant occupying the unit on the date of loss. Connectors' misrepresentation that heat had been maintained in Unit 2R on the date of law was a material fact concerning Claim No. 13-0670-8L5.

56. Connectors also intentionally misrepresented in connection with its Claim No. 13-0670-8L5 that the claimed damage to the Property had resulted in lost rental income of $3,850 per month, which Connectors supported in part by submitting a document purporting to be a lease for Unit 2R signed by Lynette Crawley, showing a lease term of January 1, 2017 through January 1, 2018, and monthly rent of $700 per month. In fact, as State Farm subsequently learned, Ms. Crawley has never lived in Unit 2R, or any other unit in the Property, and has never paid or agreed to pay rent in any amount to Connectors for Unit 2R or any other unit in the Property. Connectors' misrepresentation that Unit 2R was leased to Ms. Crawley for a rent of $700 per month was a material fact concerning Claim No. 13-0670-8L5.

57. Connectors also intentionally misrepresented material facts concerning claims under the Policy by making false claims for alleged tenant vandalism (Claim Nos. 13-1390-8K9 and 13-1390-8N9), a roof leak allegedly caused by "weather" (Claim No. 13-1390-8F4), and alleged breakdown of the Property's boilers (Claim No. 13-1390-8S1). Connectors' Amended Complaint alleges with respect to each of these claims that the Property suffered loss and damage "[a]s an additional result of the Weather Event and Lynette [sic] Crawley's action." In fact, Ms. Crawley never lived at the Property and did not leave a window open in Unit 2R or in any other unit of the Property in January 2017 or at any other time.

58. In addition, Connectors intentionally misrepresented a material fact concerning a claim under the Policy by claiming the same damage to the Property on its Proof of Loss for Claim No. 13-1390-8N9 that it claimed on the Proof of Loss for Claim No. 13-0670-8L5.

59. Because Connectors violated the Policy's Concealment, Misrepresentation or Fraud provision, the Policy is void.

60. Because the Policy was void as a result of Connectors' violation of the Policy's Concealment, Misrepresentation or Fraud provision, Connectors was not entitled to coverage under the Policy for the alleged loss that was assigned Claim No. 13-0670-8L5.

61. State Farm nevertheless paid Connectors $55,578.71 on Claim No. 13-0670-8L5.

62. Connectors unjustly retained the $55,578.71 paid by State Farm for its benefit despite having no entitlement to it under the Policy.

63. Connectors' retention of that benefit is to State Farm's detriment, and violates fundamental principles of justice, equity and good conscience.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaim Plaintiff State Farm Fire and Casualty Company respectfully requests that the Court enter judgment in its favor and against Plaintiff/Counterclaim Defendant The Connectors Realty Group Corporation, award State Farm restitution in the amount of $55,578.71, and grant such other and further relief as the Court deems just and equitable.

## **JURY DEMAND**

State Farm demands a trial by jury on all issues so triable.

Dated: July 30, 2020

Respectfully submitted,

/s/ Sondra A. Hemeryck
Sondra A. Hemeryck
Mariangela M. Seale
Sarah E. Finch
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Tel: 312-471-8700
Fax: 312-471-8701
shemeryck@rshc-law.com
mseale@rshc-law.com
sfinch@rshc-law.com

*Attorneys for Defendant State Farm Fire & Casualty*

## <u>CERTIFICATE OF SERVICE</u>

I, undersigned counsel, certify that on July 30, 2020, I filed a copy of the foregoing document electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

/s/ Sondra A. Hemeryck