UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CONNECTORS REALTY GROUP CORPORATION and DARRYL WILLIAMS, <br>           Plaintiffs, <br><br> v. <br><br> STATE FARM FIRE & CASUALTY COMPANY, <br>           Defendant. | 19 C 743 |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant State Farm Fire & Casualty Company's ("State Farm") motion to strike Plaintiffs Connectors Realty Group Corporation ("Connectors") and Darryl Williams's ("Williams") (collectively, "Plaintiffs") class allegations. Also before the Court are Plaintiffs' motion to strike State Farm's affirmative defenses and motion to dismiss State Farm's counterclaims. For the following reasons, the Court grants State Farm's motion to strike and Plaintiffs' motion to dismiss, and denies Plaintiffs' motion to strike.

## BACKGROUND

This case arises from Plaintiffs' allegations that State Farm treated insurance claims from black-majority zip codes in southern Cook County and the south side of

Chicago as presumptively fraudulent.[1] As is relevant here, Plaintiffs allege that State Farm wrongfully denied claims related to their property at 622-624 West 79th Street in Chicago. That property includes two commercial spaces, six residential units, and a basement.

On January 10, 2017, there was a below freezing weather event in Chicago (the "Weather Event"). Plaintiffs allege that Lynette Crawley ("Crawley"), a resident in Unit 2R, left her bathroom window open during the Weather Event. As a result, a pipe burst and caused significant damage to the property. Plaintiffs submitted three claims related to the damage caused by the burst pipe. Plaintiffs allege that State Farm failed to remedy the damage, forcing residents to live in a hotel at Plaintiffs' expense. Plaintiffs thereafter suffered property damage as a result of two instances of theft and vandalism, and a hail storm in Chicago.

Plaintiffs' claims were handled by Tina Beavers ("Beavers"), a Caucasian State Farm employee. While handling the claims, Beavers allegedly made racist remarks to Williams. Beavers initially denied Plaintiffs' claims. After the claims were reassigned, State Farm approved and partially paid some of the claims. However, State Farm has refused to pay the claims in full.

Based on these facts, Plaintiffs filed this complaint alleging violations of 42 U.S.C § 1981 and the Fair Housing Act, 42 U.S.C. § 3201 et seq. State Farm filed a counterclaim alleging unjust enrichment. On September 9, 2019, the Court dismissed

---

[1] A more detailed version of the facts can be found in our previous Order. 1:19-cv-743, Dkt. # 38.

claims brought by former plaintiff Antione Nash. State Farm now moves to strike the class allegations from Plaintiffs' Amended Complaint. Plaintiffs also move to dismiss State Farm's counterclaim and strike State Farm's Affirmative Defenses from its Second Amended Answer.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations, but it must provide enough factual support to raise its right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and are "within the discretion of the court." *Tucker Firm, LLC v. Alise*, 2012 WL 252790, at *2 (N.D. Ill. 2012).

## DISCUSSION

State Farm moves to strike Plaintiffs' class allegations. Plaintiffs move to strike State Farm's affirmative defenses and dismiss State Farm's counterclaim. We address each motion in turn.

**I.    Motion to Strike Class Allegations**

State Farm argues that the class allegations must be stricken because it is impossible for Plaintiffs to certify the class. Specifically, State Farm argues that Plaintiffs cannot meet the requirements of Federal Rule of Civil Procedure 23(a) and that a class action cannot be maintained under Rules 23(b)(2) and 23(b)(3).

Federal Rule of Civil Procedure 12(f) allows the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[c]ourts in this District . . . evaluate motions to strike class allegations under Rule 23, not Rule 12(f)." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). Federal Rule of Civil Procedure 23 states that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ.

4

P. 23(c)(1)(A). If the class allegations in the complaint "are facially and inherently deficient … a motion to strike class allegations can be an appropriate device to determine whether the case will proceed as a class action." *Buonomo*, 301 F.R.D. at 295 (internal quotation omitted). "If, however, the dispute concerning class certification is factual in nature and discovery is needed to determine whether a class should be certified, a motion to strike the class allegations at the pleading stage is premature." *Brunner v. Liautaud*, 2015 WL 1598106, at *5 (N.D. Ill. 2015) (cleaned up).

Under Rule 23, the party seeking class certification must demonstrate that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Vann v. Dolly, Inc.*, 2020 WL 902831, at *4 (N.D. Ill. 2020) (Kocoras, J.) (citing Fed. R. Civ. P. 23(a)(1)–(4)). Additionally, the party must satisfy one branch of Rule 23(b). *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 447 (7th Cir. 2020).

State Farm first argues that the class definition is overbroad. Plaintiffs' proposed class definition is:

5

> All African-Americans in the State of Illinois who reside in majority African- American ZIP Code areas and have submitted claims for property loss and damage to State Farm during the period 2015 to the present.[2]

This proposed class definition is facially overbroad. As we noted in *Vann*, "A class is overbroad if it includes significant numbers of [potential class members] who have not suffered any injury or harm." 2020 WL 902831, at *5 (quoting *Loreto v. Procter & Gamble Co.*, 2013 WL 6055401, at *4 (S.D. Ohio 2013)). Plaintiffs' allegations are that African-American property owners had their claims denied or treated as presumptively fraudulent because of their race. Plaintiffs' proposed class definition, however, would include individuals whose claims were not denied and therefore did not suffer any harm. Therefore, Plaintiffs' proposed class is overbroad. *See id.* (finding proposed class overbroad because it "would capture individuals who have not suffered the harms complained of in the second amended complaint.").

Accordingly, the motion to strike is granted. Because we do not believe amendment is futile, Plaintiffs are given 30 days to amend the class allegations.

## II.     Motion to Strike Affirmative Defenses

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense. . . ." Fed. R. Civ. P. 12(f). "To survive a motion to strike, an affirmative defense must satisfy a three-part test: (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded

---

[2] Dkt. # 24, pg. 46, ¶ 2.

under the requirements of Federal Rules of Civil Procedure 8 and 9[;] and (3) the matter must withstand a Rule 12(b)(6) challenge." *Brown v. Kelly Servs., Inc.*, 2017 WL 1386188, at *1 (N.D. Ill. 2017) (quoting *Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014)) (cleaned up).

Plaintiffs argue that each of State Farm's six affirmative defenses must be stricken. State Farm admits that the fourth, fifth and sixth affirmative defenses, which assert that this case cannot be maintained as a class action and purport to reserve rights under the Policy and to assert new affirmative defenses, are not affirmative defenses. Accordingly, the fourth, fifth, and sixth affirmative defenses are stricken. We address the remaining affirmative defenses in turn.

### a. First Affirmative Defense

The first affirmative defense asserts that Plaintiffs' claims are barred by the terms and exclusions of the insurance policy (the "Policy"). Plaintiffs first argue that State Farm fails to allege sufficient facts to support its first affirmative defense.[3] We disagree.

This Court has followed the majority view in this District that affirmative defenses must follow the plausibility standard under *Twombly* and *Iqbal*. *See Behn v. Kiewit Infrastructure Co.*, 2018 WL 5776293, at *1 (N.D. Ill. 2018). This requires an

---

[3] Plaintiffs also argue that the first three affirmative defenses should be stricken because each incorporates the admissions and denials in the answer and therefore, Plaintiffs argue, they amount to mere denials of the claims. However, other Courts in this District have declined to strike similar affirmative defenses, *see Glen Flora Dental Center, Ltd. v. First Eagle Bank*, 2020 WL 5569833, at *4 (N.D. Ill. 2020), and we decline to do so because each affirmative defense appears to be more than just a mere denial of the allegations.

7

affirmative defense to contain "sufficient factual matter to be plausible on its face." *Id*. However, we have noted that "affirmative defenses rarely will be as detailed as a complaint (or a counterclaim); nor do they need to be in most cases to provide sufficient notice of the defense asserted. But a problem arises when a party asserts boilerplate defenses as mere placeholders without any apparent factual basis." *Id*.

State Farm's allegations that there is no coverage under the Policy are sufficient to put Plaintiffs on notice of its defense and allow the court to make the reasonable inference that State Farm is not liable if the allegations are proven. This affirmative defense is not boilerplate and alleges more than legal conclusions. In the first affirmative defense, State Farm alleges that People's Gas shut off gas to the unit where the pipe burst and therefore heat was not maintained in that unit. Therefore, State Farm claims that there is no coverage due to the "Frozen Plumbing" exclusion, which excludes coverage for leaks caused by frozen plumbing unless the insured "does their best" to maintain heat in the building.

Plaintiffs next argue that the first affirmative defense is inconsistent with the third affirmative defense. Specifically, Plaintiffs say that State Farm's assertion that there is no coverage under the Frozen Plumbing exclusion is inconsistent with the allegation in Paragraph 45 that State Farm paid $55,578.71 on the claim. State Farm argues that the allegations are consistent: State Farm first denied the claim after learning that there was no heat maintained at the building; State Farm subsequently learned that the tenants used space heaters to heat the building and paid the claim; and then, after

this lawsuit began, State Farm learned that its original conclusion was correct—heat was not maintained in the building. Accepting these allegations as true and in a light favorable to State Farm, we agree that the two affirmative defenses are not inconsistent. Accordingly, the motion to strike the first affirmative defense is denied.

### b. Second Affirmative Defense

The second affirmative defense asserts that Plaintiffs violated the Policy's Concealment, Misrepresentation, or Fraud provision by misrepresenting that the apartment building was at full capacity when it applied for the Policy. Therefore, State Farm asserts, the Policy is void.

Plaintiffs first argue that State Farm's second affirmative defense is contradicted by its admissions in its Second Amended Answer. In its Second Amended Answer, State Farm admits that Sate Farm agent Larry Williams submitted an application for coverage on behalf of Connectors and stated that he inspected the building and found that it "met all Underwriting Guide requirements." State Farm argues that the admission and the second affirmative defense are not inconsistent because it was entitled to rely on the statements by Plaintiffs in the application and it was not required to conduct any investigation. Further, State Farm argues that there are no allegations or admissions that State Farm investigated the leases or that Larry Williams found anything that could have alerted him to the falsity of Connectors' representations.

We agree that the second affirmative defense is not contradicted by its admissions. There are no allegations or admissions that State Farm knew or should

9

have known that Connectors was misrepresenting that the building was fully occupied or that Larry Williams' inspection should have alerted State Farm to the misrepresentation. In other words, there are no allegations that units in the building were entirely empty so that Larry Williams would have noticed during the inspection. Drawing all reasonable inferences in favor of State Farm, *Renalds v. S.R.G. Restaurant Group*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000), it is entirely plausible that State Farm's admissions and its second affirmative defense are consistent.

Next, Plaintiffs argue that State Farm waived its ability to void the contract because it did not do so "promptly." State Farm argues that there are no facts in the pleadings to support Plaintiffs' argument at this stage. We agree.

Waiver is the "intentional relinquishment or abandonment of a known right." *Hamer v. Neighborhood Housing. Servs. of Chicago*, 897 F.3d 835, 840 (7th Cir. 2018). "[The] right of rescission must be exercised promptly." *Illinois State Bar Ass'n Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 169 (2004). "An unreasonable delay in taking the necessary steps to set aside a fraudulent contract will have the effect of affirming it." *Id.* at 169–70.

In *Coregis*, the court found that the defendant did not waive its right to seek recession of the insurance contract even though it waited over a year to seek rescission, made communications to the plaintiff after it knew of the misrepresentation without mention of seeking rescission, and did not assert the right to rescission at its first opportunity in court. *Id.* at 171. The court reasoned that "[t]here is nothing that [the

10

defendant] did, however, that could reasonably lead [plaintiffs] or anyone else to believe that it was waiving its right to rescind the policy." *Id.* at 170.

Here, based on the pleadings alone, it does not appear that State Farm waived its right to rescind the contract. The pleadings do not specify when exactly State Farm learned of Connectors' misrepresentations and what it did to clearly and unequivocally waive its right to rescission. Therefore, it is premature to find that State Farm waived its right to rescission. Accordingly, the motion to strike the second affirmative defense is denied.

### c. Third Affirmative Defense

The third affirmative defense asserts that the policy is void because Connectors misrepresented two claims it filed with State Farm. Plaintiffs argue that the third affirmative defense must be stricken because State Farm waived this defense, the defense fails to meet the heightened pleading standard for fraud, and the defense is barred by the mend-the-hold doctrine. For the same reasons as the second affirmative defense, the Court declines to find that State Farm waived its third affirmative defense at this time. We address the remaining arguments in turn.

Plaintiffs first argue that the second affirmative defense is conclusory. Specifically, Plaintiffs claim that State Farm must establish fraud by clear and convincing evidence and that its averments must be accompanied "by a statement of clear and convincing probative facts which support such belief. . ." Dkt. # 81 at 8 (citing *Di Vito v. Fidelity and Deposit Company of Maryland*, 361 F.2d 936, 939 (7th Cir.

11

1966)). However, the standard offered by Plaintiffs is inappropriate at this stage. It is well-settled that at the pleadings stage, the allegations in a complaint and answer are taken as true and no evidence is required. *See, e.g.*, *Mussat v. Power Liens, LLC*, 2014 WL 4979862, at *1 (N.D. Ill. 2014).

State Farm's affirmative defense is not conclusory and offers factual allegations in support. For example, State Farm alleges that Plaintiffs misrepresented the claim that a pipe burst as the result of a window being left open. State Farm alleges that the sworn statement provided in support of the alleged loss was untrue because Crawley never actually lived in the building. Further, State Farm alleges that the tenant in the unit where the leak occurred moved out of the unit months before the leak occurred. These allegations are sufficient to put Plaintiffs on notice of State Farm's allegations.

Next, Plaintiffs argue that the third affirmative defense is barred by the mend-the-hold doctrine. Plaintiffs say that State Farm's reasons for denying coverage at the time differ from the reasons State Farm now says it denied coverage. Specifically, at the time, State Farm said it denied coverage because heat was not maintained in the unit where the pipe burst. Now, Plaintiffs argue, State Farm offers a "completely different" explanation that coverage was denied because State Farm asserts in its third affirmative defense:

> After this lawsuit was filed, State Farm learned that Lynnette Crawley, the supposed tenant in Unit 2R who allegedly left a bathroom window open during the January 10, 2017 Weather event, was never a tenant at the Property, never lived at the Property, has never been inside the

>Property, and did not leave a window open in Unit 2R or in any other unit of the Property in January 2017 or at any other time.[4]

While these explanations are different, the mend-the-hold doctrine is inapplicable. The mend-the-hold doctrine stands for the "limited proposition that a defendant in contract litigation may not change its defenses midstream without any reason for doing so." *Saika v. Ocwen Loan Servicing, LLC,* 357 F. Supp. 3d 704, 713 (N.D. Ill. 2018). In other words, the defendant cannot suddenly change their defense *in the middle of the litigation* for no reason. That did not occur here. State Farm's initial denial of coverage occurred before the litigation began. State Farm is now asserting its defenses to Plaintiffs' claims, which may be different that their pre-suit defenses. This is because the "mend the hold [doctrine] does not forbid the defendant to add a defense after being sued; that is, it does not confine [the defendant] to the defense (or defenses) that he announced *before* the suit." *Ryerson Inc. v. Fed. Ins. Co.,* 676 F.3d 610, 614 (7th Cir. 2012) (emphasis in original). Therefore, the mend-the-hold doctrine is inapplicable. Accordingly, the motion to strike the third affirmative defense is denied.

### III. Motion to Dismiss Counterclaim

---

[4] Dkt. # 81, pg. 10 (quoting Dkt. # 80, ¶ 46).

Plaintiffs argue that State Farm's counterclaim must be dismissed because a claim for unjust enrichment is not viable when there is a written contract. State Farm concedes as much but argues that the counterclaim is actually for rescission of the contract and restitution. Both unjust enrichment and restitution, though, are quasi-contractual remedies and are not available when there is an express contract between the parties. *See Devco v. T10 Meltel, LLC*, 237 F. Supp. 3d 804, 807 (N.D. Ill 2017) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 2 (2011)).

State Farm's allegations may still allege a claim for rescission of the contract. While its claim is stylized as one for "unjust enrichment," State Farm is not required to plead a legal theory and specifying an incorrect theory is not a fatal error. *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014) (collecting cases). "'Rescission' is a remedy, premised on the existence of an otherwise valid contract." *Pardo v. Mecum Auction Inc.*, 77 F. Supp. 3d 703, 711 (N.D. Ill. 2014). Under Illinois law, "[a] claim for rescission is sufficient if it alleges: (1) substantial nonperformance or breach by the defendant; and (2) that the parties can be restored to the status quo ante." *Horwitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 3d 965, 973 (1st Dist. 2010). "The material breach in this sense refers to a breach with regard to a matter of such a nature and of such importance that the contract would not have been made without it." *Newton v. Aitken*, 260 Ill. App. 3d 717, 719 (2d Dist. 1994).

Here, State Farm alleges that Plaintiffs breached the Policy contract by making false representations in its application and in connections to claims it made under the

14

Policy. State Farm alleges that it paid $55,578.71 in claims to Plaintiffs. Thus, State Farm argues, the status quo would be restored if Plaintiffs returned the $55,578.71 paid by State Farm. However, State Farm does not allege how Plaintiffs may be restored to the status quo. "A party seeking rescission must restore the *other party* to the status quo existing at the time the contract was made." *Horwitz*, 399 Ill. App. 3d at 974 (emphasis added). For example, Plaintiffs presumably paid premiums under the Policy, but State Farm does not allege that it could return any premiums to Plaintiffs. Therefore, State Farm has failed to allege the second element of rescission.

Accordingly, the counterclaim is dismissed. Because Plaintiffs have not demonstrated that any amendment of the counterclaim is futile, State Farm is given 30 days to amend its counterclaim.

## CONCLUSION

For the reasons mentioned above, the Court grants State Farm's motion to strike Plaintiffs' class allegations (Dkt. # 84) and Plaintiffs' motion to dismiss State Farm's counterclaim (Dkt. # 82). Plaintiffs' motion to strike State Farm's affirmative defenses is denied. Plaintiffs are given 30 days to amend the class allegations (Dkt. # 81). Defendants are also given 30 days to amend their counterclaim. Telephonic status is set for May 4, 2021 at 10:20 am. It is so ordered.

Dated: 03/25/2021

Charles P. Kocoras
United States District Judge