## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

THE CONNECTORS REALTY GROUP
CORPORATION and DARRYL WILLIAMS,

        Plaintiffs,

    v.

STATE FARM FIRE & CASUALTY
COMPANY,

        Defendant.

Case No. 19-cv-00743

Honorable Charles P. Kocoras

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFFS' AMENDED CLASS DEFINITION AND CLASS ALLEGATIONS

## TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND...................................................... 2

ARGUMENT ................................................................................................................. 7

I.      Legal Standard. ................................................................................................. 7

II.     Plaintiffs Cannot Meet the Requirements of Rule 23(a)................................... 8

        A.      The Amended Proposed Class Definition Is Improper. ......................... 8

        B.      The Proposed Class Does Not Satisfy the Commonality Requirement. ............... 11

        C.      Plaintiffs Are Neither Typical Nor Adequate. ...................................... 12

III.    Plaintiffs Cannot Maintain This Case As A Class Action Under Rule 23(b)(3). ............. 13

IV.     Plaintiffs Cannot Maintain This Case As A Class Action Under Rule 23(b)(2). ............. 15

CONCLUSION............................................................................................................. 15

**TABLE OF AUTHORITIES**

Page

CASES

*Allen v. City of Chi.*,
   828 F. Supp. 543 (N.D. Ill. 1983) ....................................................................13, 14

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ................................................................................12

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
   140 S. Ct. 1009 (2020)..........................................................................................14

*Huddleston v. Am. Airlines, Inc.*,
   No. 16-cv-09100, 2018 WL 4742097 (N.D. Ill. Oct. 2, 2018) .................8, 9, 14, 15

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) ................................................................................14

*Korsmo v. Am. Honda Motor Co.*,
   No. 11 C 1176, 2012 WL 1655969 (N.D. Ill. May 10, 2012) ................................13

*Lee v. The Children's Place Retail Stores, Inc.*,
   No. 14 C 3258, 2014 WL 5100608 (N.D. Ill. Oct. 8, 2014).....................................7

*Lemon v. Int'l Union Of Operating Eng., Local No. 139, AFL–CIO*,
   216 F.3d 577 (7th Cir. 2000) ................................................................................15

*Lipton v. Chattem, Inc.*,
   289 F.R.D. 456 (N.D. Ill. 2013)............................................................................14

*McCaster v. Darden Rests., Inc.*,
   845 F.3d 794 (7th Cir. 2017) ................................................................................14

*Mullins v. Direct Digital, LLC*,
   795 F.3d 654 (7th Cir. 2015) ............................................................................9, 10

*Oshana v. Coca-Cola Co.*,
   472 F.3d 506 (7th Cir. 2006) ..................................................................................8

*Phillips v. Sheriff of Cook Cty.*,
   828 F.3d 541 (7th Cir. 2016) ................................................................................11

*Pruitt v. Pers. Staffing Grp., LLC*,
   No. 16-cv-5079, 2020 WL 3050330 (N.D. Ill. June 8, 2020)................................13

*Rock v. Nat'l Collegiate Athletic Ass'n*,
No. 12-cv-01019-TWP-DKL, 2016 WL 1270087 (S.D. Ind. Mar. 31, 2016) .................... 9, 10

*Siegel v. Shell Oil Co.*,
612 F.3d 932 (7th Cir. 2010) ................................................................................................ 14

*Stanek v. Saint Charles Cmty. Unit Sch. Dist. No. 303*,
No. 13-CV-3106, 2017 WL 5971985 (N.D. Ill. Dec. 1, 2017) ................................................ 7

*Steimel v. Wernert*,
823 F.3d 902 (7th Cir. 2016) ............................................................................................. 8, 9

*Vann v. Dolly, Inc.*,
18 C 4455, 2020 WL 902831 (N.D. Ill. Feb. 25, 2020) ...................................................... 7, 8

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .................................................................................... 8, 11, 12, 15

*Wright v. Family Dollar, Inc.*,
No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) ................................................ 7

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (6th Cir. 2012) ............................................................................................... 9

**STATUTES**

42 U.S.C. § 1981 .................................................................................................... 3, 4, 5, 14

42 U.S.C. § 1982 .................................................................................................... 3, 4, 5, 14

42 U.S.C. § 3604 .............................................................................................. *passim*

**RULES**

Fed. R. Civ. P. 23(a) .................................................................................... 8, 11, 12, 14

Fed. R. Civ. P. 23(b) .................................................................................... 8, 13, 15

## INTRODUCTION

On March 25, 2021, this Court granted the motion of Defendant State Farm Fire and Casualty Company ("State Farm") to strike Plaintiffs' class allegations, finding that the following proposed class definition was facially overbroad:

> All African-Americans in the State of Illinois who reside in majority African-American ZIP Code areas and have submitted claims for property loss and damage to State Farm during the period 2015 to the present.

Dkt. 100 at 4-6. On April 23, 2021, Plaintiffs filed their amended proposed class definition. Dkt. 102, Count XIII ¶ 2. Plaintiffs now seek to represent a proposed class defined as:

> All African-Americans in the State of Illinois who reside in majority African-American ZIP Code areas and have submitted claims for property loss and damage to State Farm during the period 2015 until the time judgment is entered herein and whose claims have either been denied, sent to the State Farm Special Investigations Unit for fraud or otherwise treated as presumptively fraudulent.

Plaintiffs' amended class definition fails to cure the defect identified by the Court in its March 25, 2021 ruling. The proposed class is still facially overbroad because it includes numerous persons who could not have been harmed by State Farm's alleged conduct. The amended proposed class is also too vague and indefinite to meet the Seventh Circuit's test for ascertainability. For this reason alone Plaintiffs' class allegations should again be stricken, this time with prejudice.

In addition, Plaintiffs' class allegations continue to suffer from the numerous other fatal (and incurable) deficiencies that State Farm identified in its previous motion to strike. *See* Dkts. 84, 85, 91. These deficiencies include the absence of a common question, the overwhelming predominance of individual questions, and Plaintiffs' patent inadequacy as class representatives, each of which independently provides grounds for striking the class allegations, with prejudice.[1]

---

[1] Because this is a motion to strike, State Farm's arguments herein are based solely on the pleadings. In the event this case proceeds to a motion for class certification, State Farm reserves its right to raise any and all available arguments in opposition to such a motion.

## FACTUAL AND PROCEDURAL BACKGROUND

*The Connectors Plaintiffs' Insurance Claims*

Plaintiff The Connectors Realty Group Corporation ("Connectors") was the named insured on a business owners insurance policy (the "Connectors Policy") issued by State Farm on or about January 4, 2017 for a mixed-use commercial and residential building located at 622-624 W. 79th Street in Chicago (the "Property"). Dkt. 24 ("Complaint"), Count III ¶¶ 3-5. According to the Complaint, Connectors is solely owned by Plaintiff Darryl Williams, who is African-American. Count I ¶ 11.

Plaintiffs allege that on January 10, 2017, the insured Property sustained "loss and damage" when Lynette Crawley, the tenant in Unit 2R, left a window open during "a below freezing weather event." Count I ¶¶ 17-18; Count III ¶¶ 6-7. According to the Complaint, Connectors made three claims under its Policy for the resulting losses. Count I ¶¶ 18-19, 21, 24. Plaintiffs also allege that Connectors made claims under its Policy for a February 4, 2017 theft and vandalism, an April 17, 2017 hail event, and an April 23, 2017 theft. Count I ¶¶ 28-29, 31-32.

Plaintiffs allege that Tina Beavers, who is Caucasian, was assigned to adjust the claims arising out of the January 10, 2017 weather event. Count I ¶ 35. Plaintiffs further allege that on January 20, 2017, Beavers and Williams had a telephone conversation during which Beavers allegedly used terms such as "homey" and "you people" to refer to African-Americans, and referred to the South Side of Chicago as "you all's neighborhoods." Count I ¶ 37

Plaintiffs allege that Williams complained to State Farm about Beavers, "and requested that another adjuster be assigned" to those claims. Count I ¶ 42. State Farm ultimately paid Connectors over $58,000 on the first of the three claims arising out of the alleged January 10, 2017 weather event, and denied the remaining claims. Count I ¶¶ 46, 52; Count III ¶¶ 9-10; Count V ¶ 10; Count VI ¶ 10; Count VII ¶ 9; Count VIII ¶ 7; Dkt. 104 (Third Am. Ans.), Count IV ¶ 12.

*The Connectors Plaintiffs' Allegations of Racial Discrimination*

Based on these alleged events, Plaintiffs aver that State Farm "treats as presumptively fraudulent" claims from majority-black ZIP Codes on the South and West sides of Chicago "by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying such legitimate claims and by failing and refusing to pay such legitimate claims." Count I ¶ 38. In particular, Plaintiffs allege that State Farm's "intention … to discriminate on the basis of race in its treatment of policyholders from black-majority ZIP Codes is confirmed by Tina Beavers' use of racial epithets in describing African-Americans as 'homeys' and 'you people,' and by describing where African-Americans reside as 'your areas' and 'you all's neighborhoods.'" *Id.* ¶ 39. Plaintiffs assert that State Farm's alleged refusal to pay (or to pay in full) Connectors' insurance claims because of Williams' race violated the Fair Housing Act, 42 U.S.C. § 3604, and 42 U.S.C. §§ 1981 and 1982. Count I ¶¶ 54-56, 59-60; Count II ¶¶ 51-54. Plaintiffs seek compensatory damages of $422,231.29, punitive damages and an injunction. *See* Compl. at 15.

*Antoine Nash's Insurance Claims*

As originally filed, the Complaint also purported to assert claims on behalf of another State Farm insured, Antoine Nash. Nash, who is African-American, is the named insured on a State Farm homeowners policy. Count X ¶¶ 2-3. According to the Complaint, on October 26, 2017, a theft occurred during a real estate agent's showing of the insured property to a prospective buyer. *Id.* ¶¶ 4-7. Nash reported the loss to State Farm the next day. *Id.* ¶ 9.

Nash alleged that, as part of State Farm's processing of his claim, he was contacted by Peter Alfieri, an attorney representing State Farm. Count XI ¶ 22. Alfieri sent Nash correspondence requesting that Nash provide certain documentation, including bank statements and income tax

returns, and appear for an examination under oath. *Id.* Nash alleged that on April 24, 2018, he and Alfieri had a conversation during which Alfieri allegedly stated that he needed Nash's records because Nash had filed for bankruptcy, so State Farm needed to know his financial situation to see if he was "in a financial hardship." *Id.* ¶ 23. Nash further alleged that Alfieri stated, "If you're in a financial hardship you'll commit fraud and file a false claim." *Id.*

Alfieri eventually received Nash's documents and conducted his examination under oath. *Id.* ¶ 25. Approximately three months later, State Farm denied Nash's claim "on the purported basis of fraud." *Id.* ¶ 26.

### Nash's Allegations of Racial Discrimination

Nash averred that State Farm's handling of his theft claim "confirmed" State Farm's "targeting of claims by treating as presumptively fraudulent claims from policyholders residing in black-majority ZIP Codes on the South and West Sides of the City of Chicago[.]" Count XI ¶ 28. In particular, Nash pointed to State Farm's alleged initiation of an insurance fraud investigation and its "overly intrusive claims investigation" of Nash "in requiring his submission of bank statements and income tax returns and other sensitive documents, and the taking of his examination under oath." *Id.* ¶¶ 30-31. Nash also alleged on information and belief that State Farm "conducted no investigation of the theft." *Id.* ¶ 32.

### The Putative Class Claim

The Complaint asserts a single putative "class" claim, in Amended Count XIII. That Count incorporates the allegations of the preceding twelve counts and, as amended on April 23, 2021, seeks relief under the FHA and Sections 1981 and 1982 on behalf of the following proposed class:

> All African-Americans in the State of Illinois who reside in majority African-American ZIP Code areas and have submitted claims for property loss and damage to State Farm during the period 2015 until the time judgment is entered herein and whose claims have either been denied, sent to the State Farm Special Investigations Unit for fraud or otherwise treated as presumptively fraudulent.

4

***The Court's Ruling on State Farm's Motion to Dismiss***

State Farm moved to dismiss the FHA and Section 1981 and 1982 claims asserted by both the Connectors Plaintiffs and Nash. Dkt. 28. On October 9, 2019, the Court granted the motion as to Nash's claims but denied it as to the Connectors Plaintiffs' claims to the extent those claims are based on alleged disparate treatment (rather that disparate impact). Mem. Op. (Dkt. 38).

The Court began its analysis with the Section 1981 and 1982 claims. The Court recognized that, to state a claim under either section, a plaintiff must show that the defendant "has an intent to discriminate because of race," and must "allege specific facts supporting both the existence of the racial animus and the inference of a link between the adverse treatment and the racial animus." *Id.* at 12 (quotations omitted). With respect to the Connectors Plaintiffs, the Court found that the alleged conversation between Williams and Beavers "demonstrates racial animus, as the State Farm employee used terms such as 'homey' and 'you people' to refer to African Americans. Beavers also suggested that the South Side of Chicago was 'you all's neighborhoods.'" *Id.* The Court further found that the Complaint "pleads that this animus was connected" to State Farm's processing of the Connectors Plaintiffs' claims, "since they were all treated as presumptively fraudulent and remain unpaid either in full or in part." *Id.*

With respect to Nash, however, the Court found that the Complaint was insufficient to state a claim under Sections 1981 and 1982. *Id.* at 13. The Court explained that finding as follows:

> Nash alleges that State Farm processed his theft claim as fraudulent as a result of his bankruptcy filing. He asserts that Alfieri called him a liar, gave him a hard time regarding his financial documents, and subjected him to an examination under oath. However, Nash does not plead any facts to support the existence of racial animus on behalf of State Farm, nor does he connect any such animus to his treatment.

*Id.* The Court held that, because Nash's claims under Sections 1981 and 1982 lacked factual support, they must be dismissed. *Id.*

On the FHA claims, the Court held that the Connectors Plaintiffs had sufficiently alleged disparate treatment based on the statements purportedly made by Beavers. *Id.* at 14. But the Court again found Nash's allegations "insufficient … to infer discriminatory intent." *Id.* The Court accordingly held that Nash did not state a claim under a disparate treatment theory, "so the Court must turn to the disparate impact theory." *Id.* at 15. The Court found the Complaint did not state a disparate impact claim because the Complaint's allegations concerning an alleged statistical study were "insufficient to demonstrate a disparity as to State Farm specifically, rather than the industry as a whole." *Id.* at 16. Moreover, the Court observed, "State Farm rightly notes the deficiencies in the analysis, stating that the data, nature, and methodology of the analysis are unclear and call into question the validity of the analysis's conclusion." *Id.* The Court held that, "without a sufficient pleading regarding a statistical disparity in State Farm's claims," the Court could not find that the Complaint stated a claim under a disparate impact theory. *Id.* The Court therefore dismissed Nash's FHA claim (Count XI). Having dismissed both of Nash's federal claims, the Court declined to exercise jurisdiction over Nash's state-law claim, and dismissed Nash from the case. *Id.* at 18.

### State Farm's Affirmative Defenses and Counterclaim

State Farm's affirmative defenses allege that the Connectors Plaintiffs' claims are barred because Plaintiffs violated the Policy's Concealment, Misrepresentation Or Fraud provision by misrepresenting a material fact concerning the Property, as a result of which the Policy is void. Dkt. 80, Second Aff. Def. ¶ 16, Third Aff. Def. ¶ 23; *see also* Dkt. 104, Second Aff. Def. ¶ 16, Third Aff. Def. ¶ 23. In particular, State Farm alleges that Connectors' application for the Policy falsely represented that all units in the Property were occupied when in fact no more than two of the six residential units were occupied at the time of the application. Dkt. 104, Second Aff. Def. ¶ 18. State Farm also alleges that Plaintiffs intentionally misrepresented that the Property had suffered damage as the result of a tenant leaving a window open in Unit 2R when in fact Unit 2R

not only was vacant on the date of the alleged loss, but the alleged tenant who purportedly left the window open, Lynette Crawley, has never lived in the building. Dkt. 104, Third Aff. Def. ¶¶ 46-47. And State Farm alleges that Plaintiffs intentionally misrepresented that the claimed damage to the Property had resulted in lost rental income of $3,850 per month, which Plaintiffs supported in part by submitting a purported lease for Unit 2R signed by Crawley, when in fact Crawley has never lived at the Property and has never paid or agreed to pay rent in any amount to Connectors. *Id.* ¶ 49. In its March 25, 2021 ruling, the Court denied Plaintiffs' motion to strike these affirmative defenses. Dkt. 100 at 9-13.

Finally, State Farm asserts a Counterclaim against Connectors for rescission of the Policy, alleging that the Policy is void because of Connectors' breaches of the Concealment, Misrepresentation or Fraud provision, and seeking restitution of the amount that State Farm paid to Connectors on claims made under the void Policy. Dkt. 104, Am. Countercl. ¶¶ 3-5.

## ARGUMENT

### I.    Legal Standard.

As this Court has recognized, a motion to strike class allegations is an appropriate device to determine whether a case will proceed as a class action, particularly when it is plain from the pleadings that a class cannot be maintained. *Vann v. Dolly, Inc.,* 18 C 4455, 2020 WL 902831, at *5 (N.D. Ill. Feb. 25, 2020); *see also Stanek v. Saint Charles Cmty. Unit Sch. Dist. No. 303*, Case No. 13-CV-3106, 2017 WL 5971985, at *6-8 (N.D. Ill. Dec. 1, 2017) (striking class allegations); *Lee v. The Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *1 (N.D. Ill. Oct. 8, 2014) ("[A] motion to strike class allegations … is an appropriate device to determine whether the case will proceed as a class action."); *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) ("[C]ourts may—and should—address the

plaintiff's class allegations when the pleadings … definitively establish that a class action cannot be maintained.").

Rule 23 requires Plaintiffs to prove that the proposed class satisfies all of Rule 23(a)'s requirements—numerosity, commonality, typicality and adequacy—and at least one subsection of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Also implicit in these requirements is that the class be properly defined. *See Steimel v. Wernert*, 823 F.3d 902, 917-18 (7th Cir. 2016); *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006).

In this case, it is apparent from the pleadings that Plaintiffs' proposed class cannot satisfy these requirements. Plaintiffs' amended class definition is both improperly overbroad, and too vague and indefinite to be ascertainable. Neither Plaintiff can meet either the typicality or adequacy requirements. There is no question that is common to all the members of the proposed class; to the contrary, as the Court's ruling on State Farm's motion to dismiss demonstrates, resolving the proposed class's claims "would require individualized factual inquiries as to each individual class member," which defeats Rule 23(b)(3)'s requirement that common questions predominate over individual ones. *Huddleston v. Am. Airlines, Inc.*, No. 16-cv-09100, 2018 WL 4742097, at *2-7 (N.D. Ill. Oct. 2, 2018). Finally, Plaintiffs cannot maintain this case as a class action under Rule 23(b)(2) because  monetary damages are not merely incidental to any requested injunctive relief, but are rather the primary relief sought. For each of these reasons, the class allegations should be stricken.

## II.     <u>Plaintiffs Cannot Meet the Requirements of Rule 23(a).</u>

### A.     **The Amended Proposed Class Definition Is Improper.**

As this Court noted in its March 25, 2021 Order, "'[a] class is overbroad if it includes significant numbers of [potential class members] who have not suffered any injury or harm.'" Dkt. 100 at 6, *quoting  Vann,* 2020 WL 902831, at *5. Applying this test to Plaintiffs' original class

definition, the Court found the proposed class was facially overbroad because it "would include individuals whose claims were not denied and therefore did not suffer any harm." *Id.* at 6.

Plaintiffs' amended class definition suffers from the same defect. In their Amended Count XIII, Plaintiffs seek to represent a proposed class defined as follows:

> All African-Americans in the State of Illinois who reside in majority African-American ZIP Code areas and have submitted claims for property loss and damage to State Farm during the period 2015 until the time judgment is entered herein and whose claims have *either* been denied, sent to the State Farm Special Investigations Unit for fraud *or* otherwise treated as presumptively fraudulent.

Dkt. 102, Count XIII ¶ 2 (emphasis added). On its face this amended class definition, like Plaintiffs' original class definition, "would include individuals whose claims were not denied and therefore did not suffer any harm." Moreover, the proposed class is not limited to persons who were subjected to any allegedly unlawful conduct. There is nothing unlawful about assigning a claim to the State Farm Special Investigations Unit, and claims can be and are denied for entirely lawful reasons every day. Indeed, the Connectors Policy itself identifies numerous circumstances under which a claim would properly be denied. *See, e.g.*, Dkt. 24-1 at 51-52 ("Property Not Covered" and "Property Subject to Limitations"), 53-56 ("Exclusions").

The amended class definition is also impermissibly vague. The Seventh Circuit "ha[s] long recognized … that a class must be defined clearly[.]" *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). "[C]lasses that are defined too vaguely fail to satisfy the 'clear definition' component." *Id.* at 659; *see, e.g.*, *Steimel*, 823 F.3d at 917-18 (affirming denial of class certification because "the class definition was too vague"); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012) ("There can be no class action if the proposed class is amorphous or imprecise."); *Rock v. Nat'l Collegiate Athletic Ass'n*, No. 12-cv-01019-TWP-DKL, 2016 WL 1270087, at *7-*8 (S.D. Ind. Mar. 31, 2016) (finding proposed class was impermissibly vague).

"Vagueness is a problem because a court needs to be able to identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Mullins*, 795 F.3d at 660.

The *Rock* case is illustrative. There, the plaintiff sought to represent a proposed class defined, in part, as individuals who "were recruited by at least one school that is a member of the NCAA's Division I Football Bowl Subdivision." 2016 WL 1270087, at *6. The district court found the proposed class was impermissibly vague and therefore "flunk[ed]" the Seventh Circuit's ascertainability test. *Id.* at *7. In particular, the plaintiff had "presented no class-wide evidence to demonstrate how a student-athlete can be identified as having been 'recruited'" and had instead "offer[ed] a number of evolving definitions to identify 'recruited' class members" that were themselves insufficiently precise. *Id.* at *7-*8. Because "the relevant criteria for defining 'recruited' remain[ed] unknown," the proposed class definition was "too vague to justify certifying the class." *Id.* at *8. In addition, plaintiff's proposed "carve out" of individuals who had lost their scholarships for certain reasons would require "detailed, individualized fact-finding, simply to determine class membership," further showing that the class definition was too vague. *Id.*

Plaintiffs' amended class definition is similarly flawed. Plaintiffs define the proposed class, in part, as African-Americans residing in certain ZIP Codes whose claims for property loss and damage were "otherwise treated as presumptively fraudulent." Dkt. 102, Count XIII ¶ 2. That phrase is at least as vague and amorphous as "recruited." And Plaintiffs' attempts to give it meaning do not solve the problem, but instead serve to underscore it. Plaintiffs allege that State Farm "treats as presumptively fraudulent" claims from majority-black ZIP Codes "by processing such claims as presumed fraudulent through its Special Investigations Unit, by denying legitimate claims from these black-majority ZIP Codes for being purportedly fraudulent or for other pretextual reasons, by unreasonably delaying payment of such legitimate claims, by underpaying

10

such legitimate claims and by failing and refusing to pay such legitimate claims." Count I ¶ 38. This allegation of what Plaintiffs believe it means to treat a claim as "presumptively fraudulent" simply confirms the absence of precise, objective criteria for identifying such claims. It also makes clear that detailed, individualized fact-finding concerning such issues as whether a particular claim was "legitimate," whether a "legitimate" claim was denied for "pretextual reasons," whether payment of a "legitimate" claim was "unreasonably" delayed, and whether a "legitimate" claim was "underpaid," would be required simply to determine class membership. A class defined in this way is facially unsuitable for certification.

### B. The Proposed Class Does Not Satisfy the Commonality Requirement.

Class certification under Rule 23 is appropriate only if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This "commonality" requirement means that the claims of all members of the proposed class "must depend upon a common contention … that is capable of class wide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. What matters to class certification "is not the raising of common 'questions'—even in droves—but rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted, emphasis original); *see also Phillips v. Sheriff of Cook Cty.,* 828 F.3d 541, 550 (7th Cir. 2016) (Rule 23(a) requires "at least one common question that will actually advance all of the class members' claims.").

The crux of the claims that Plaintiffs seek to assert on behalf of the proposed class is that State Farm refuses to pay (or only partially pays) the insurance claims of African-American policyholders who reside in majority-African American ZIP Codes *because of their race*. That central issue closely resembles the "crucial question" identified in *Dukes*: "*why was I disfavored*?" 564 U.S. at 352 (emphasis original). And as in *Dukes*, Plaintiffs here fail to identify any question

common to all members of the proposed class that will resolve that issue for each class member "in one stroke." To the contrary, Plaintiffs allege a series of purported "common questions" (Dkt. 102, Count XIII ¶ 6) that are in fact individual questions, and which will do nothing to "generate common answers apt to drive the resolution of the litigation." 564 U.S. at 350 (emphasis omitted).

For example, Plaintiffs identify as purported common questions whether State Farm: "subjected its insured to overly intrusive claims investigation requiring the submission of bank statements and income tax returns and other sensitive documents"; "subjected its insured to the taking of his examination under oath"; "refused to pay without conducting a reasonable examination based on all available information"; "failed to provide its insured in the case of a denial of a claim a reasonable and accurate explanation of the basis in the insurance policy or applicable law for such denial"; "conducted any acts constituting improper claims practices"; "accused its insured under a policy of homeowners' insurance of arson on the basis of a report stating that the cause of the fire was undetermined"; or "sent the insured's claim to its Special Investigations Unit for resolution." Dkt. 102, Count XIII ¶ 6(a)-(g); *see also id.* ¶ 6(h)-(o) (similar). Answering these questions with respect to Plaintiffs will do nothing to resolve any issue as to any *other* putative class member. Moreover, answering these questions with respect to Plaintiffs will not resolve the central issue of whether the claims of any class members—*including* Plaintiffs— were denied because of race. Plaintiffs have not identified a common question under Rule 23(a)(2).

## C. Plaintiffs Are Neither Typical Nor Adequate.

Rule 23(a) requires that a class representative's claims be "typical of the claims or defenses of the class," and that the class representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3) and (4). *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). Class certification is inappropriate where a putative class representative's claim "is subject to . . . unique defenses" that threaten to become the focus of the

12

litigation. *Korsmo v. Am. Honda Motor Co*., No. 11 C 1176, 2012 WL 1655969, at *6 (N.D. Ill. May 10, 2012). "The presence of even an arguable defense peculiar to the named plaintiff may bring into question the adequacy of the named plaintiff's representation." *Pruitt v. Pers. Staffing Grp., LLC*, Case No. 16-cv-5079, 2020 WL 3050330, at *8 (N.D. Ill. June 8, 2020).

It is apparent from the pleadings in this case that Plaintiffs are neither typical nor adequate. First, there are no allegations that Plaintiff Williams "submitted" any "claims for property loss and damage to State Farm," as the proposed class definition requires. Dkt. 102, Count XIII ¶ 2. The property damage claims alleged in the Complaint were submitted by Connectors, which owns the Property and is the named insured on the Policy, not by Williams. Count I ¶¶ 12, 15-16, 18-33.

In addition, State Farm has asserted that Plaintiffs' claims are barred because of their misrepresentations related to both the Connectors Policy application and the insurance claims that are the subject of this action. *See supra* at 6-7. These "substantially different facts" will cause "plaintiffs' energies [to] end up being directed toward presenting and defending their individual claims at the expense of the class." *Allen v. City of Chi.,* 828 F. Supp. 543, 553-54 (N.D. Ill. 1983) (citations omitted).

Finally, "[o]ne who intentionally does not tell the truth about the case cannot be an effective class representative." *Pruitt*, 2020 WL 3050330, at *9. Here, Plaintiffs falsely allege in the Complaint—and falsely stated to State Farm during the processing of the insurance claims—that an individual who never lived at the insured property was residing there on the date of loss and that her act of leaving a window open caused the claimed losses. *See supra* at 6-7. Plaintiffs are neither typical nor adequate class representatives.

## III.   Plaintiffs Cannot Maintain This Case As A Class Action Under Rule 23(b)(3).

For a class to be certified under Rule 23(b)(3), common questions must "predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). Predominance is

similar to, but "far more demanding" than, the Rule 23(a) commonality requirement. *McCaster v. Darden Rests., Inc.,* 845 F.3d 794, 800 (7th Cir. 2017) (quotations omitted). There is no predominance where, as here, liability determinations will be individual and fact-intensive. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011); *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 462 (N.D. Ill. 2013); *Allen,* 828 F. Supp. at 553 (denying certification where "each plaintiff will prevail only upon an individualized showing of racial discrimination").

Analysis of Rule 23's predominance requirement "begins … with the elements of the underlying cause of action." *Huddleston*, 2018 WL 4742097, at *5 (quotations omitted); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 935-36 (7th Cir. 2010) (class certification properly denied where the elements of the claim would require individual determinations). To state a claim under Section 1981 or 1982, a plaintiff must show both that the defendant had "an intent to discriminate on the basis of race," and "a link between the adverse treatment and the racial animus." Dkt. 38 at 12 (quotations omitted); *see also Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020) (holding that, to prevail on a Section 1981 claim, a plaintiff must "prove that, but for race, it would not have suffered the loss of a legally protected right."). An FHA disparate treatment claim likewise requires a plaintiff to show "that the defendant had a discriminatory intent when making its decision[.]" Dkt. 38 at 13.

The need for individualized, fact-intensive inquiries into the circumstances surrounding each class member's insurance claims in order to determine whether these elements have been established is amply demonstrated by the Court's ruling on State Farm's motion to dismiss. To determine whether any plaintiff had sufficiently pleaded the elements of the asserted causes of action, the Court had to examine the Complaint's particularized factual allegations regarding State Farm's handling of that plaintiff's insurance claims. *See supra* at 5-6. The Court found that the

Complaint *did* state claims as to the Connectors Plaintiffs because the alleged conversation between Williams and Beavers "demonstrates racial animus" and the Complaint "pleads that this animus was connected" to State Farm's processing of the Connectors claims. Dkt. 38 at 12. In contrast, the facts pleaded by Nash were *not* sufficient to support "the existence of racial animus on behalf of State Farm, nor does he connect any such animus to his treatment." *Id.* at 13; *see also id.* at 14 (finding Nash's allegations "insufficient … to infer discriminatory intent").

The claims that Plaintiffs seek to assert on behalf of a putative class would require these kinds of individual, fact-intensive liability determinations as to each class member. As a result, Plaintiffs cannot satisfy the predominance requirement of Rule 23(b)(3).

**IV.** **Plaintiffs Cannot Maintain This Case As A Class Action Under Rule 23(b)(2).**

Finally, Plaintiffs cannot maintain this case as a class action under Rule 23(b)(2). Among other reasons, certification under Rule 23(b)(2) is impermissible where the complaint seeks monetary damages that are more than "incidental" to requested injunctive or declaratory relief. *Dukes*, 564 U.S. at 360; *Lemon v. Int'l Union Of Operating Eng., Local No. 139, AFL–CIO*, 216 F.3d 577, 580-81 (7th Cir. 2000). This case unquestionably presents that circumstance, as Plaintiffs' plea for more than $400,000 in compensatory damages and $250,000,000 in punitive damages makes clear.

## CONCLUSION

For all of these reasons, State Farm respectfully requests that the Court strike Plaintiffs' Amended Count XIII and order that Plaintiffs' remaining claims proceed on an individual basis.

Dated: May 18, 2021

Respectfully submitted,

/s/ Sondra A. Hemeryck
Sondra A. Hemeryck
Sarah E. Finch
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Tel: 312-471-8700
Fax: 312-471-8701
shemeryck@rshc-law.com
sfinch@rshc-law.com

*Attorneys for Defendant State Farm Fire and Casualty Company*

16

**<u>CERTIFICATE OF SERVICE</u>**

I, undersigned counsel, certify that on May 18, 2021 I filed a copy of the foregoing document electronically using the Court's CM/ECF system, which will generate notice of this filing to all counsel of record.

/s/ Sondra A. Hemeryck

17