**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

THE CONNECTORS REALTY GROUP
CORPORATION and DARRYL WILLIAMS,

       Plaintiffs,

   v.

STATE FARM FIRE & CASUALTY
COMPANY,

       Defendant.

Case No. 19-cv-00743

Honorable Jeremy C. Daniel

Magistrate Judge Young B. Kim

**STATE FARM FIRE AND CASUALTY COMPANY'S MEMORANDUM
<u>IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>**

Sondra A. Hemeryck
Joseph A. Cancila, Jr.
Sarah E. Finch
Lauren Abendshien
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison St., Suite 2900
Chicago, IL 60602
Telephone: (312) 471-8700
shemeryck@rshc-law.com
jcancila@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Attorneys for Defendant State Farm Fire and
Casualty Company*

## **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 3

LEGAL STANDARD ....................................................................................... 8

ARGUMENT ................................................................................................... 9

I.     Judgment Should be Entered for State Farm on Plaintiffs' Discrimination Claims Because No Reasonable Juror Could Conclude That State Farm Discriminated Against Plaintiffs Based on Race ...................................................................... 9

        A.     No Reasonable Juror Could Credit Plaintiffs' Allegations of Racial Discrimination .................................................................................. 9

        B.     There is No Evidence That State Farm's Resolution of Connectors' Insurance Claims was Motivated by Race. ....................................... 11

II.    Judgment Should Be Entered for State Farm on Plaintiffs' FHA Claim for the Additional Reason That Plaintiffs Neither Resided in the 79th Street Building Nor Sued on Behalf of Anyone Who Did. ................................................................ 12

III.   Because Plaintiffs' Discrimination Claims Are Not Viable, Their Class Count (Amended Count XIII) Should Be Dismissed As Moot. ...................................... 14

IV.   Because No Reasonable Juror Could Conclude That State Farm Discriminated Against Plaintiffs Based on Race, Judgment Should Also Be Entered for State Farm on Plaintiffs' State-Law Claims. ....................................................................... 14

V.    Judgment Should Be Entered for State Farm on All Claims Asserted by Williams Because None of the Alleged Conduct Infringed Upon His Rights. .......................... 16

        A.     State Farm is Entitled to Summary Judgment on Any Discrimination Claims Asserted by Williams. ................................................................ 16

        B.     State Farm is Entitled to Summary Judgment on Any Breach of Contract Claims Asserted by Williams. ............................................................ 16

        C.     State Farm is Entitled to Summary Judgment on Any Claim by Williams Under Section 155 ............................................................................. 18

CONCLUSION ................................................................................................ 18

i

## **TABLE OF AUTHORITIES**

Page

**Cases**

*Advanced Concepts Chi., Inc. v. CDW Corp.*,
   938 N.E.2d 577 (Ill. App. Ct. 2010) ......................................................17

*Alight Sols., LLC v. Thomson*,
   No. 20-cv-3043, 2023 WL 2599868 (N.D. Ill. Mar. 22, 2023) .............11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)..............................................................................8, 15

*Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*,
   200 F.3d 1102 (7th Cir. 2000) ................................................................15

*City of Los Angeles v. Wells Fargo & Co.*,
   No. 2:13-cv-9007-OFW(RZx), 2015 WL 4398858 (C.D. Cal. July 17, 2015) ......................13

*Collins Co., Ltd. v. Carboline Co.*,
   532 N.E.2d 834 (Ill. 1988)......................................................................17

*Collins v. Vill. of Palatine, Ill.*,
   875 F.3d 839 (7th Cir. 2017) ....................................................................8

*Cowen v. Bank United of Texas, FSB*,
   70 F.3d 937 (7th Cir. 1995) ......................................................................8

*Cramer v. Ins. Exch. Agency*,
   675 N.E.2d 897 (Ill. 1996)......................................................................18

*Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*,
   980 F.3d 1117 (7th Cir. 2020) ................................................................17

*Germain v. M & T Bank Corp.*,
   111 F. Supp. 3d 506 (S.D.N.Y. 2015)....................................................13

*Home Quest Mortg. LLC v. Am. Fam. Mut. Ins. Co.*,
   340 F. Supp. 2d 1177 (D. Kan. 2004)................................................12, 13

*Jupiter Aluminum Corp. v. Home Ins. Co.*,
   225 F.3d 868 (7th Cir. 2000) ..................................................................17

*Kaplan v. Shure Bros., Inc.*,
   153 F.3d 413 (7th Cir. 1998) ..................................................................17

*Kinsella v. Am. Airlines, Inc.*,
   685 F. Supp. 2d 891 (N.D. Ill. 2010) .................................................................11

*Lawrence v. Cnty. of Orange*,
   No. 09-cv-5043 (CS), 2010 WL 11712671 (S.D.N.Y. June 1, 2010)....................13

*Lesiv v. Ill. Cent. R.R. Co.*,
   39 F.4th 903 (7th Cir. 2022) ..........................................................................8, 15

*Lunini v. Grayeb*,
   305 F. Supp. 2d 893 (C.D. Ill. 2004) .................................................................12

*McCoy v. Midland Funding, LLC*,
   No. 18 C 1035, 2019 WL 2773703 (N.D. Ill. July 2, 2019) ...............................14

*Miller v. First United Bank & Tr. Co.*,
   No. CIV-22-185-F, 2022 WL 1188874 (W.D. Okla. Apr. 21, 2022) ...................13

*Moles v. Ill. Farmers Ins. Co.*,
   — N.E.3d —, 2023 IL App (1st) 220853 ...........................................................15

*Morris v. Auto-Owners Ins. Co.*,
   606 N.E.2d 1299 (Ill. App. Ct. 1993) ................................................................15

*Morris v. Office Max, Inc.*,
   89 F.3d 411 (7th Cir. 1996) ...........................................................................9, 16

*Sabrina Roppo v. Travelers Comm. Ins. Co.*,
   869 F.3d 568 (7th Cir. 2017) .............................................................................18

*Scott v. Harris*,
   550 U.S. 372 (2007)...........................................................................................10

*Shaikh v. City of Chi.*,
   No. 00 C 4235, 2001 WL 123784 (N.D. Ill. Feb. 13, 2001)...............................12

*Sims v. New Penn Fin. LLC*,
   906 F.3d 678 (7th Cir. 2018) ...........................................................................9, 12

*Smith v. City of Janesville*,
   40 F.4th 816 (7th Cir. 2022) ..............................................................................12

*Summers v. Standiford*,
   No. 19 C 2978, 2022 WL 3908673 (N.D. Ill. Aug. 30, 2022).............................11

*Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project*,
   576 U.S. 519 (2015)...........................................................................................12

iii

*Turner v. Micro Switch*,
  No. 98 C 50276, 2001 WL 13255 (N.D. Ill. Jan. 3, 2001) ....................................................14

*Vorpagel v. Saul*,
  No. 19 C 02671, 2020 WL 1694348 (N.D. Ill. Apr. 6, 2020)................................................8, 14

*Wallis v. Card Servs. Int'l, Inc.*,
  No. 10 C 7250, 2012 WL 1866374 (N.D. Ill. May 22, 2012) ................................................17

*White Hen Pantry, Inc. v. Cha*,
  574 N.E.2d 104 (Ill. App. Ct. 1991) ......................................................................................17

*Yassin v. Certified Grocers of Ill., Inc.*,
  551 N.E.2d 1319 (Ill. 1990) ...................................................................................................18

**Statutes**

215 ILCS 5/155 ............................................................................................1, 2, 14, 15, 18

42 U.S.C. § 1981 ...................................................................................................... *passim*

42 U.S.C. § 1982 ...................................................................................................... *passim*

42 U.S.C. § 3601 ..............................................................................................................1, 13

42 U.S.C. § 3604 ..............................................................................................................9, 13

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................................8, 10, 14

## INTRODUCTION

On January 5, 2017, Plaintiff The Connectors Realty Group Corporation ("Connectors") obtained from State Farm Fire and Casualty Company ("State Farm") a business owners insurance policy covering a mixed-used commercial and residential building. Between January 20, 2017 and April 23, 2017, Connectors made six claims to State Farm under that policy. State Farm paid Connectors approximately $55,000 on the first claim, and denied the others.

Connectors and its owner, Darryl Williams ("Williams"), who is Black, then sued State Farm, asserting that State Farm underpaid the first claim and denied the other five because of Williams' race, allegedly in violation of 42 U.S.C. §§ 1981 and 1982 and the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, *et seq.* First Am. Compl. (Dkt. 24), Counts I and II. Plaintiffs seek to bring these discrimination claims both individually and on behalf of a proposed class. Am. Count XIII, Dkt. 102. Plaintiffs also assert individual claims for breach of contract and violation of 215 ILCS 5/155. Dkt. 24, Counts III–VIII and XIV. State Farm now moves for summary judgment in its favor on all claims asserted in the First Amended Complaint, and seeks dismissal of Amended Count XIII (the putative class count) as moot.

Plaintiffs' discrimination claims survived a motion to dismiss based on allegations that Tina Beavers, who was initially assigned to handle the first of the six Connectors insurance claims, made racially derogatory remarks during a phone conversation with Williams on the morning of January 20, 2017. *See* Dkt. 38. The objective record developed during discovery, however, demonstrates that the purported conversation could not have occurred, such that no reasonable jury could credit Plaintiffs' version of events. State Farm's phone records show there were *no* calls between Williams and Beavers on January 20. In addition, although Plaintiffs claim the January 20 conversation was the culmination of a series of calls that took place from January 10 to January 20, Williams did not even report the first Connectors claim until the evening of January 20, and

the first call between Williams and Beavers did not take place until January 23. Finally, the January 20 conversation was supposedly prompted by Williams' submission of a purported lease for a woman named Lynnette Crawley, but Williams did not provide that document to State Farm until May 18, 2017—three weeks *after* Beavers' involvement with the claim had ended.

Moreover, Plaintiffs cannot establish a causal connection between Beavers' supposed conduct and State Farm's ultimate disposition of Connectors' insurance claims. Beavers was never involved in five of the six claims, and her involvement with the one claim to which she was initially assigned ended almost six months before that claim was resolved (with a payment to Connectors) by a different claim representative. There is thus no evidence suggesting that, in resolving Connectors' insurance claims, State Farm was in any way motivated by racial animus. In addition, neither Plaintiff can establish the elements of the FHA claim they attempt to bring because Plaintiffs did not reside in the building at issue and have not sued on behalf of anyone who did.

For these reasons, no reasonable jury could return a verdict for Plaintiffs on their discrimination claims, and judgment should accordingly be entered in favor of State Farm and against both Plaintiffs on those claims (Counts I and II). Because Plaintiffs' individual discrimination claims are not viable, the Court should also dismiss Plaintiffs' Amended Count XIII as moot, for no class claim can be asserted if judgment has been entered against Plaintiffs on their individual claims. In addition, because no reasonable juror could find that State Farm denied or underpaid the Connectors insurance claims because of Williams' race, State Farm is entitled to judgment in its favor and against both Plaintiffs on Plaintiffs' breach-of-contract and Section 155 claims. Finally, judgment should be entered in favor of State Farm and against Williams on all asserted claims for the separate and independent reason that, because Williams did not own or live

in the subject property, and was not a named insured on the Connectors insurance policy, none of State Farm's alleged conduct did infringe or could have infringed upon his rights in any way.

## BACKGROUND

### Connectors' Property and Insurance Policy

Connectors is an Illinois corporation that manages and owns residential and commercial real estate. State Farm's L.R. 56.1 Statement of Undisputed Material Facts (Dkt. 319, "SOF") ¶ 1. In April 2016, Connectors purchased a mixed-use, multi-unit building located at 622–24 West 79th Street in Chicago as a commercial investment. *Id.* ¶¶ 3–5. Connectors did not purchase any insurance for the building at that time, or at any time in 2016. *Id.* ¶¶ 8–9. Instead, Connectors waited until January 2017 to insure the 79th Street building, at which point it applied for and obtained from State Farm a one-year, businessowners insurance policy with an effective date of January 5, 2017 (the "Policy"). *Id.* ¶ 10. Two weeks after the Policy took effect, on January 20, 2017, Connectors submitted to State Farm the first of six claims under the Policy. *Id.* ¶¶ 20, 35, 37. Over the span of the next few months, Connectors would submit five more claims to State Farm, the last four on the day before the policy terminated. *Id.* ¶¶ 35–37.

### State Farm's Enterprise Claim System (ECS)

State Farm maintains an electronic database, known as the Enterprise Claims System (or ECS), in which it stores information relating to insurance claims. *Id.* ¶ 13. An ECS electronic claim file may contain, among other things, photographs and repair estimates, correspondence with the policyholder regarding the claim, and notes (referred to as "file notes") concerning the claim. *Id.* ¶ 14. ECS file notes may be entered by a State Farm Claims employee, or they may be automatically generated by the computer system; in either case, the date and time of the entry are automatically recorded when it is created. *Id.* ¶¶ 15, 18. Those file notes document

communications that occurred between State Farm and Plaintiffs here, whether by correspondence, telephone or otherwise.

***Connectors' First Insurance Claim – Claim No. 13-0670-8L5***

At 5:40 pm Central Standard Time on Friday, January 20, 2017, Connectors (through Wiliams) submitted a claim to State Farm for a loss under the Policy. *Id.* ¶ 20. Williams reported that the interior of the 79th Street building had sustained water damage when pipes burst after a window was left open. *Id*. The claim was given claim number 13-0670-8L5 (hereafter, the "8L5 Weather Event Claim"), and was assigned to Claim Specialist Tina Beavers for handling. *Id.* ¶ 21. One hour later, at 6:41 pm CST on January 20, 2017, the ECS automatically generated a letter to Connectors confirming State Farm's receipt of the January 20 loss report and notifying Connectors of the claim's number and assignment to Beavers. *Id.* ¶ 22. Beavers was first assigned a task related to the 8L5 Weather Event Claim (to "review new claim") on the morning of Monday, January 23, and the first file note created by Beavers for the claim is dated January 23, 2017, at 11:46 am CST. *Id.* ¶¶ 23–24.

Two months later, on March 24, 2017, State Farm denied coverage for the 8L5 Weather Event Claim on the basis that heat had not been maintained in the 79th Street building as required by the Policy's terms. *Id.* ¶¶ 11, 29. Beavers prepared a denial letter, dated March 24, 2017, which was mailed to Connectors on April 5. *Id.* ¶ 30. Beavers then closed the 8L5 Weather Event Claim. *Id.* ¶ 31. Sixteen days later, on April 21, 2017, Beavers entered another file note, which stated that she had received a voice message from Williams, that she had returned that call and left a message requesting certain information, and that the file would remain closed pending receipt of the requested information. *Id.* ¶¶ 32–33. Beavers had no involvement with the 8L5 Weather Event Claim after April 21, 2017. *Id.* ¶ 34.

***Connectors' Five Other Insurance Claims***

On February 6, 2017, Connectors submitted a second claim under the Policy, this time for claimed damage to the 79th Street building from alleged vandalism. *Id.* ¶ 35. Later that month, State Farm notified Connectors that the Policy would be cancelled effective April 24, 2017, because the property was now vacant. *Id.* ¶ 36. On April 23—the day before the noticed cancellation date—Connectors submitted four additional claims under the Policy. *Id.* ¶¶ 36–37. Beavers had no involvement, at any time, in any of the claims other than the 8L5 Weather Event Claim. *Id.* ¶ 53; *see also id.* ¶¶ 38–42 (discussing the other five Connectors claims).

***Assignment of the Connectors Claims to the Special Investigative Unit***

Connectors' submission of four additional claims just hours before the April 24, 2017 cancellation of the Policy resulted in a referral of all six Connectors claims, including the 8L5 Weather Event Claim, to State Farm's Special Investigative Unit ("SIU"). *Id.* ¶ 43. SIU Claim Specialist Thomas Wegner was assigned to handle all six claims. *Id.* ¶ 44. On April 27, Wegner reopened the 8L5 Weather Event Claim and sent Connectors a letter informing it of the reassignment and requesting that Connectors "direct all phone calls and future correspondence" to him. *Id.* ¶ 45. Beavers had no part in the April 27 reassignment of the 8L5 Weather Event Claim or the further handling of the 8L5 Weather Event Claim by Wegner, and she had no involvement, at any time, in any of the five other Connectors claims. *Id.* ¶¶ 32–34, 53.

***Plaintiffs' Identification of Purported Tenant Lynnette Crawley***

On May 18, 2017, State Farm received from Connectors a fax that included, among other things, a handwritten document, written by Williams, headed "Loss of Income (LOI)," and four one-page "leases" for units in the 79th Street building. *Id.* ¶ 46. The purported leases submitted by Connectors on May 18, 2017, identified four purported tenants: Martina Brown, Jesse Torres, Lilland Davis, and Lynnette Crawley. *Id.* ¶ 47. The handwritten "LOI" document also listed

Crawley as a tenant of the 79th Street building. *Id.* ¶ 48.[1] This fax—received three weeks *after* the 8L5 Weather Event Claim was reassigned to SIU Claim Specialist Wegner—is the first appearance of Crawley's name in State Farm's claim records for any of the Connectors claims. *Id.* ¶¶ 43–44, 54–56. Three months earlier, when the 8L5 Weather Event Claim was still being handled by Beavers, State Farm had received another fax from Connectors consisting of four one-page "leases" for units in the 79th Street building and a different handwritten statement by Williams. *Id.* ¶ 26. But the tenants identified in those four leases did not include Crawley, nor did Williams' written statement identify anyone by that name as a purported tenant of the building. *Id.* ¶¶ 27–28.

### *State Farm's Resolution of the Connectors Insurance Claims*

Following the April 27, 2017 reassignment of the Connectors claims, SIU Claim Specialist Wegner investigated and resolved the claims. *Id.* ¶ 49. Specifically, in October of 2017, State Farm issued a payment to Connectors on the 8L5 Weather Event claim in the amount of $31,649.72, for the actual cash value of the claimed damage to the 79th Street property. *Id.* ¶ 50. Two months after that, State Farm issued a further payment to Connectors on the 8L5 Weather Event Claim, in part for replacement cost benefits for the claimed damage to the building ($12,378.99) and in part for Connectors' claimed loss of rental income ($11,550.00). *Id.* ¶ 51. State Farm denied the other five Connectors claims. *Id.* ¶ 52.

### *Plaintiffs' Discrimination Claims Against State Farm*

In 2019, Connectors and Williams filed this action against State Farm, alleging that State Farm had violated 42 U.S.C. §§ 1981 and 1982 and the FHA by denying or underpaying the Connectors insurance claims because of Williams' race. Dkt. 24, Counts I–II. Plaintiffs' discrimination claims survived a pleading challenge based on their allegations regarding a series

---

[1] After this action was filed, State Farm learned that Crawley was not in fact a tenant and had not lived in the 79th Street building. *See* SOF Ex. I (Hardison Dep.) at 108:3–109:8.

of phone calls between Williams and Beavers that purportedly occurred from January 10, 2017 to the morning of January 20, 2017. Dkt. 24 at Count I ¶¶ 36–37, Count II ¶¶ 1–50; Dkt. 38. Plaintiffs assert that during those supposed January 2017 conversations, Williams told Beavers that Connectors' claimed losses stemmed from a tenant named Lynette Crawley having left a window open in her apartment. Dkt. 24 at Count I ¶ 36. Plaintiffs also claim that, between January 10, 2017 and the morning of January 20, 2017, Beavers requested and Williams provided leases for all the purported tenants of the building, including Crawley. *Id.* Finally, Plaintiffs assert that these conversations culminated in a call between Williams and Beavers on the morning of January 20, 2017, during which they supposedly discussed Beavers' unsuccessful efforts to reach Crawley, and Beavers supposedly made remarks about there being "a lot of fraud" on the "South Side of Chicago and you all's neighborhoods." *Id.* at Count I ¶ 37; *see also* SOF ¶ 66.[2]

Notwithstanding Plaintiffs' allegations, the first of the six Connectors insurance claims was not even reported to State Farm until 5:40 p.m. on January 20, 2017. SOF ¶ 20. In addition, State Farm's phone call data contains no record of any calls between Williams and any State Farm representative on the morning of January 20, 2017, and no record of any calls between Williams and Beavers before January 23, 2017. *Id.* ¶¶ 61–62. Further, Plaintiffs did not provide a lease for Crawley until May 18, 2017—three weeks *after* Beavers' involvement in the 8L5 Weather Event Claim ended. *Id.* ¶¶ 34, 46–47. And there is no mention of Crawley prior to that date in *any* of the Connectors claim files. *Id.* ¶ 56.

---

[2] In his deposition, Williams testified consistently with Plaintiffs' allegations regarding these supposed conversations; indeed, he doubled down on the allegation that the critical conversation with Beavers occurred on January 20, 2017. *See* SOF ¶ 66 and Ex. A (Williams Dep.) at 120:5– 145:12. As discussed *infra* at 9–10, however, that testimony does not create a genuine dispute of fact because it is blatantly contradicted by the objective record, such that no reasonable jury could believe it.

In addition, Beavers has never lived in Chicago and has no familiarity with Chicago neighborhoods. *Id.* ¶¶ 68–70. At the time she was handling the 8L5 Weather Event Claim, she was located in Texas. *Id.* ¶ 67. She has visited Chicago only once, for less than two days, and has never visited any part of Chicago other than the downtown tourist area. *Id.* ¶¶ 68–70.[3]

## LEGAL STANDARD

Summary judgment must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Lesiv v. Ill. Cent. R.R. Co.*, 39 F.4th 903, 911 (7th Cir. 2022). To avoid summary judgment, the non-movant "must be able to show that a reasonable jury could return a verdict in [its] favor." *Lesiv*, 39 F.4th at 911 (citation omitted). A reasonable jury could not return such a verdict if the non-movant is unable "to establish the existence of an element essential to [its] case … on which [it] will bear the burden of proof at trial." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (internal quotation marks omitted).

In this case, Plaintiffs purport to bring their discrimination claims both individually and on behalf of a proposed class. Am. Count XIII, Dkt. 102; *see also* Section III, *infra*. A district court may properly dismiss the claims of the named plaintiffs in a putative class action on summary judgment without first ruling on the plaintiffs' motion to certify a class. *Collins v. Vill. of Palatine, Ill.*, 875 F.3d 839, 845–46 (7th Cir. 2017); *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995). Where the district court finds that the individual claims of the named plaintiffs are not viable, the named plaintiffs cannot proceed on behalf of the proposed class, and the class claims should be dismissed as moot. *See, e.g.*, *Vorpagel v. Saul*, No. 19 C 02671, 2020 WL 1694348, at *8 (N.D. Ill. Apr. 6, 2020) (dismissing class claims as moot); *see also Collins*, 875 F.3d at 846

---

[3] Beavers also denied that the conversations alleged by Plaintiffs occurred. *See* SOF Ex. V (Beavers Dep.) at 124:9–128:21.

(explaining that where the individual claims of the named plaintiffs are not viable, the class-certification question is irrelevant). Consequently, if the Court grants State Farm's instant Motion, it would be unnecessary for it to consider Plaintiffs' pending motion for class certification.

## ARGUMENT

**I.      Judgment Should be Entered for State Farm on Plaintiffs' Discrimination Claims Because No Reasonable Juror Could Conclude That State Farm Discriminated Against Plaintiffs Based on Race.**

### A.      No Reasonable Juror Could Credit Plaintiffs' Allegations of Racial Discrimination.

To establish a claim under either § 1981 or § 1982, Plaintiffs must show that State Farm intentionally discriminated against them "on the basis of race." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996). Similarly, to establish their claim of intentional discrimination under the FHA—which makes it unlawful to take (or decline to take) certain housing-related actions "because of race," 42 U.S.C. §§ 3604(a), (b)—Plaintiffs must demonstrate "that … race motivated" State Farm's allegedly adverse conduct, *Sims v. New Penn Fin. LLC*, 906 F.3d 678, 680 (7th Cir. 2018). Plaintiffs cannot make such a showing here.[4]

Plaintiffs base each of their race-discrimination claims on the alleged remarks of State Farm Claim Specialist Tina Beavers, which Plaintiffs say Beavers made during a phone call with Williams on the morning of January 20, 2017. Dkt. 24 at Count I ¶ 37 and Count II ¶¶ 1–50. But the objective evidence shows that this conversation could not have taken place, and did not take place, as Plaintiffs contend. According to Plaintiffs, Beavers and Williams repeatedly spoke by phone about a supposed tenant of the 79th Street building, Lynnette Crawley, between January 10 and 20, 2017. *Id.* at Count I ¶ 36 and Count II ¶¶ 1–50. And according to Plaintiffs, it was during

---

[4] Although not necessary for the resolution of this Motion, State Farm does not collect or maintain information on the race of its property and casualty insureds. *See* SOF Ex. G (Hardison Decl.), ¶ 7.

one of these phone calls, on the morning of January 20, 2017, that Beavers supposedly made inappropriate comments about Williams' race while discussing her unsuccessful efforts to reach Crawley. *Id.* at Count I ¶ 37 and Count II ¶¶ 1–50; SOF ¶ 66.[5] But computer-generated entries in State Farm's claim records—entries that were created automatically by State Farm's ECS— establish (1) that Connectors did not even submit its first insurance claim (the 8L5 Weather Event Claim) until the evening of January 20, 2017; and (2) that Beavers was not assigned any tasks for that claim (and did not perform any such tasks, let alone attempt to contact Connectors) until January 23, 2017. SOF ¶¶ 15, 17–18, 20, 23–25. Furthermore, State Farm's phone call data reflects *no* calls between Williams and Beavers before January 23. *Id.* ¶ 61. And finally, there is no mention in State Farm's claim records of Crawley (who was supposedly the subject of Beavers' alleged comments) until May 18, 2017—three weeks *after* the 8L5 Weather Event Claim had been reassigned from Beavers to SIU Claim Specialist Wegner. *Id.* ¶¶ 43–44, 56.

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party"—but "only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). And as the Supreme Court explained in *Scott*, there is no "genuine" dispute of fact if one party's version of events "is blatantly contradicted by the record" such that "no reasonable jury could believe it." *Id.* Applying *Scott*, courts in this district (and elsewhere) have thus repeatedly declined to adopt party narratives that were contradicted by

---

[5] The specific January 2017 dates on which Plaintiffs say Williams spoke to Beavers are central to their discrimination claims. When questioned about these supposed conversations during his deposition, Williams claimed to have "found a notation that [he] spoke to [Beavers on] January 20th, 2017." SOF ¶ 66. And in the middle of the deposition—nearly two years after State Farm requested production of all documents relating to any communications between Williams and Beavers—Plaintiffs produced a scanned copy of Williams' daily planner from 2017, which included a handwritten notation purporting to reflect a "phone call with State Farm Tina Beavers on 79th Street case" on January 20 of that year. *Id.*

evidentiary records similar in kind—and, as to phone records, identical in kind—to the record here. *See, e.g.*, *Kinsella v. Am. Airlines, Inc.*, 685 F. Supp. 2d 891, 900–01 (N.D. Ill. 2010) (declining to rely on testimony belied by cellular and home phone records); *Alight Sols., LLC v. Thomson*, No. 20-cv-3043, 2023 WL 2599868, at *3 (N.D. Ill. Mar. 22, 2023) (declining to accept as truthful a declaration contradicted by human-resources records); *Summers v. Standiford*, No. 19 C 2978, 2022 WL 3908673, at *4–5 (N.D. Ill. Aug. 30, 2022) (declining to accept a plaintiff's account of his medical treatment in light of contradictory medical records made contemporaneously with that treatment). Because State Farm's objective records demonstrate that Plaintiffs' narrative here cannot reasonably be credited—and because each of Plaintiffs' discrimination claims hinges on the acceptance of that narrative—Plaintiffs' discrimination claims must be dismissed.

### B. There is No Evidence That State Farm's Resolution of Connectors' Insurance Claims was Motivated by Race.

Even if a reasonable jury could accept Plaintiffs' version of events in this case (though no reasonable jury could do so), Plaintiffs' discrimination claims still fail, as there is no evidence suggesting that Beavers' alleged actions or opinions informed State Farm's ultimate resolution of Connectors' insurance claims. Though State Farm initially denied the 8L5 Weather Event Claim that had been assigned to Beavers, the claim was subsequently reassigned to SIU Claim Specialist Wegner, who investigated and ultimately resolved the claim. SOF ¶¶ 29, 43–44, 49. Furthermore, the investigation, adjustment and resolution of the 8L5 Weather Event Claim by Wegner resulted in a *payment* to Connectors of *over $55,000* on that claim. *Id.* ¶¶ 50–51. Beavers had no part in that decision or the SIU claim-handling process that led to it, and she had no involvement, at any time, in any of the other five insurance claims submitted by Connectors that State Farm ultimately denied. *Id.* ¶¶ 31–34, 38–44, 53. Nor is there any evidence that any of the individuals who did participate in the handling of either the 8L5 Weather Event Claim following its reassignment to

the SIU, or any of the other five Connectors claims, "was motivated by racial animus." *Smith v. City of Janesville*, 40 F.4th 816, 822 (7th Cir. 2022). As Plaintiffs cannot show that State Farm was motivated by racial animus when it resolved Connectors' insurance claims, State Farm is entitled to judgment on Plaintiffs' claims under §§ 1981 and 1982 and the FHA. *Id.* at 822, 824 (affirming summary judgment for defendant on discrimination claims brought under § 1981); *Sims*, 906 F.3d at 680 (similar, as to claims brought under the FHA); *see also Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project*, 576 U.S. 519, 538 (2015) ("If an actor makes a decision based on reasons other than a protected category, there is no disparate-treatment liability" under the FHA).

## II. Judgment Should Be Entered for State Farm on Plaintiffs' FHA Claim for the Additional Reason That Plaintiffs Neither Resided in the 79th Street Building Nor Sued on Behalf of Anyone Who Did.

To avoid summary judgment on their FHA claim, Plaintiffs must show that they are, or at least have sued on behalf of, "protected minority members who [lived or] planned to live in" the dwelling at issue. *Shaikh v. City of Chi.*, No. 00 C 4235, 2001 WL 123784, at *3 (N.D. Ill. Feb. 13, 2001). Plaintiffs must make this showing because, as multiple courts have recognized, "the FHA does not apply to … a person who [buys a] property as a commercial venture, has no intention of residing in the property, and is not suing on behalf of protected class members who would reside there." *Id.* at *4; *Lunini v. Grayeb*, 305 F. Supp. 2d 893, 914–15 (C.D. Ill. 2004) (following *Shaikh* in holding that "the FHA does not apply to commercial ventures in which the party alleging discrimination did not intend to reside"), *reconsideration granted in part on other grounds*, No. 02-3028, 2005 WL 8163587 (C.D. Ill. June 23, 2005); *Home Quest Mortg. LLC v. Am. Fam. Mut. Ins. Co.*, 340 F. Supp. 2d 1177, 1186 (D. Kan. 2004) (likewise holding that the FHA "does

not extend to commercial property").[6] In other words, for a plaintiff to prevail on an FHA claim, the "dwelling" in question, 42 U.S.C. § 3604, must be that of the plaintiff or of a resident (or intended resident) whose rights the plaintiff seeks to protect. Otherwise, "there is no causal nexus between the alleged discrimination and the alleged denial of use," etc., of that residence. *Home Quest*, 340 F. Supp. 2d at 1186 (further explaining that extending the FHA's protection to "a person who [merely] owns residential property would do nothing to further the stated purpose of the FHA, which is to 'provide for fair *housing*'" (quoting 42 U.S.C. § 3601)) (emphasis added).

There is no such nexus here. Connectors, as a business entity, necessarily purchased the 79th Street property solely as a commercial venture and could not and did not live there. SOF ¶¶ 1, 4. Williams did not live there. *Id.* ¶ 7. And Plaintiffs seek no relief on behalf of any tenants who did reside, or allegedly intended to reside, in that building. *See* Dkt. 24 at Count I ¶ 59 (alleging that State Farm's actions "deprived Darryl Williams and Connectors of *ownership* of housing") (emphasis added). Plaintiffs' FHA claim therefore fails for this reason as well.

---

[6] *See also, e.g.*, *Miller v. First United Bank & Tr. Co.*, No. CIV-22-185-F, 2022 WL 1188874, at *1 (W.D. Okla. Apr. 21, 2022) (dismissing FHA claims filed against a mortgage lender because the plaintiffs' "purpose in applying for the loan was commercial … rather than a[s] the prospective residents of the property" and they did not sue "on behalf of anyone in a protected class who intended to live" there); *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 524 (S.D.N.Y. 2015) (similar); *City of Los Angeles v. Wells Fargo & Co.*, No. 2:13-cv-9007-OFW(RZx), 2015 WL 4398858, at *7 (C.D. Cal. July 17, 2015) (explaining that the FHA "does not apply to non-owner occupied investment properties"); *Lawrence v. Cnty. of Orange*, No. 09-cv-5043 (CS), 2010 WL 11712671, at *4–5 (S.D.N.Y. June 1, 2010) (holding that "a plaintiff may not invoke the protection of the FHA if his or her interest in the dwelling at issue is purely commercial" unless he or she "is suing on behalf of [those] who would have resided in that dwelling").

**III.    Because Plaintiffs' Discrimination Claims Are Not Viable, Their Class Count (Amended Count XIII) Should Be Dismissed As Moot.**

Plaintiffs purport to bring their discrimination claims both individually and on behalf of a proposed class. Am. Count XIII, Dkt. 102.[7] Because Plaintiffs' individual discrimination claims are not viable, however, Plaintiffs cannot proceed on behalf of the proposed class, and the Court should accordingly dismiss Amended Count XIII as moot. *Vorpagel*, 2020 WL 1694348, at *8 (dismissing class claims as moot); *see also Turner v. Micro Switch*, No. 98 C 50276, 2001 WL 13255, at *8–9 and n.5 (N.D. Ill. Jan. 3, 2001) (holding that "any class certification is moot" in light of the dismissal of the plaintiff's individual claims under Rule 56); *McCoy v. Midland Funding, LLC,* No. 18 C 1035, 2019 WL 2773703, at *5 (N.D. Ill. July 2, 2019) (denying motion for class certification as moot in conjunction with entering summary judgment for defendant).

**IV.    Because No Reasonable Juror Could Conclude That State Farm Discriminated Against Plaintiffs Based on Race, Judgment Should Also Be Entered for State Farm on Plaintiffs' State-Law Claims.**

In addition to their federal discrimination claims, Plaintiffs assert individual, state-law claims that State Farm breached the Connectors Policy and violated 215 ILCS 5/155. Dkt. 24, Counts III–VIII and XIV. Plaintiffs' Section 155 claim incorporates by reference the allegations of both the federal discrimination counts and the breach-of-contract counts. *Id.* at Count XIV ¶ 1.

---

[7] *See also* Plfs. Second Mot. to Compel, Dkt. 133, at 10 ("State Farm is alleged … in Count XIII, in particular, to have violated" the FHA, § 1981 and § 1982); Mem. in Support of Plfs. Mot. for Clarification, Dkt. 72, at 2 (explaining that Count XIII, "the only" class action count in the Complaint, incorporates the allegations of Counts I and II "brought under the FHA and 42 U.S.C. §§ 1981 and 1982 on behalf of Connectors"); State Farm's Resp. to Plfs. Mot. for Clarification, Dkt. 75, at 2 (noting that Connectors apparently "intends for Count XIII to assert a putative class claim for racial discrimination" under the FHA, § 1981 and § 1982); State Farm's Mem. of Law in Support of Its Mot. to Strike Class Allegations (Count XIII), Dkt. 85, at 1 (noting that Connectors "seeks to assert claims for alleged violations of" the FHA, § 1981 and § 1982 on behalf of a proposed class); State Farm's Resp. in Opp. to Plfs. Second Mot. to Compel, Dkt. 143, at 7 (noting that Plaintiffs' race discrimination claims are "the only claims they seek to assert on behalf of a class").

Plaintiffs' breach-of-contract counts do not incorporate the allegations of the federal discrimination counts, but Plaintiffs have stated to the Court that they "seek[] redress" for State Farm's alleged "violations of *state and* federal law in discriminating against Plaintiffs." Plfs. Mem. in Support of Their Mot. for Leave to File Second Am. Class Action Compl., Dkt. 249, at 1 (emphasis added). For the reasons already discussed, no reasonable juror could find that State Farm's resolution of the Connectors insurance claims was motivated by Williams' race. *See* Section I, *supra*. As a result, State Farm is also entitled to judgment in its favor and against both Plaintiffs on their state-law claims to the extent those claims are based on their allegations of discrimination. *Lesiv*, 39 F.4th at 911 (stating that, to avoid summary judgment, the non-movant "must be able to show that a reasonable jury could return a verdict in [its] favor," and that a reasonable jury could not return such a verdict if the non-movant is unable "to establish the existence of an element essential to [its] case … on which [it] will bear the burden of proof at trial" (quoting *Celotex Corp.*, 477 U.S. at 322)) (internal quotation marks omitted); *see also Moles v. Ill. Farmers Ins. Co.,* — N.E.3d —, 2023 IL App (1st) 220853, ¶ 19 (explaining that because Section 155 creates an extracontractual remedy that "presupposes an action" on the insurance policy, for a plaintiff to succeed on a Section 155 claim, "she must also succeed in the action on the policy") (citation and internal brackets omitted).

In addition, to succeed on a claim under Section 155, a plaintiff must prove that the defendant insurer willfully engaged in vexatious and unreasonable conduct in the handling of his claim. *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000) (citing *Morris v. Auto-Owners Ins. Co.*, 606 N.E.2d 1299, 1305 (Ill. App. Ct. 1993)). Plaintiffs have adduced no such evidence here. For this reason as well, State Farm is entitled to judgment in its favor on Plaintiffs' claim under Section 155 (Count XIV).

## V. Judgment Should Be Entered for State Farm on All Claims Asserted by Williams Because None of the Alleged Conduct Infringed Upon His Rights.

### A. State Farm is Entitled to Summary Judgment on Any Discrimination Claims Asserted by Williams.

Each of the discrimination claims asserted by both Plaintiffs—under § 1981, § 1982 and the FHA—fails for the reasons already discussed. In addition, Williams' purported claims under §§ 1981 and 1982 fail for the further reason that Williams cannot show that any purported discrimination "concerned one or more of the activities enumerated in the statute" as to *him*. *Morris*, 89 F.3d at 413. Section 1981 concerns a person's right "to make and enforce contracts," while § 1982 concerns the right "to inherit, purchase, lease, sell, hold, and convey" property. 42 U.S.C. §§ 1981, 1982. But it was Connectors, not Williams, that purchased and at one time owned the 79th Street building. SOF ¶¶ 3, 6. And it was Connectors, not Williams, that contracted with State Farm for insurance coverage of that property. *Id.* ¶¶ 10, 12. Thus, Williams cannot show that any supposed discrimination hampered *his* property transaction, *see* 42 U.S.C. § 1982, or interfered with the making or enforcing of *his* contract, *see id.* § 1981(a). For this reason, to the extent that Williams purports to bring a § 1981 or § 1982 claim, State Farm is entitled to summary judgment in its favor and against Williams on that claim. *See, e.g., Morris*, 89 F.3d at 414–15 (affirming grant of summary judgment in favor of defendant on § 1981 and § 1982 claims where plaintiffs could not show either that the defendant "deprived them of any of the enumerated rights in § 1981 and, specifically, the right to make and enforce a contract" or that the defendant impaired their ability to exercise property rights).

### B. State Farm is Entitled to Summary Judgment on Any Breach of Contract Claims Asserted by Williams.

State Farm is entitled to summary judgment in its favor and against both Plaintiffs on the asserted breach-of-contract claims for the reasons discussed in Section IV, *supra*. In addition, to

the extent those claims are asserted by Williams, State Farm is entitled to judgment in its favor for the separate and independent reason that Williams is not a party to the Connectors Policy.

"Under Illinois law, a cause of action based on a contract" may be brought only by "a party to that contract or someone in privity with [such] a party," *Kaplan v. Shure Bros., Inc.*, 153 F.3d 413, 418 and n.3 (7th Cir. 1998) (citing *White Hen Pantry, Inc. v. Cha*, 574 N.E.2d 104, 109 (Ill. App. Ct. 1991)), or by a third-party beneficiary of the agreement, *Advanced Concepts Chi., Inc. v. CDW Corp.*, 938 N.E.2d 577, 581 (Ill. App. Ct. 2010).[8] "Privity of contract is the mutual or successive relationship to the same rights of property." *Kaplan*, 153 F.3d at 418 (quoting *Collins Co., Ltd. v. Carboline Co.*, 532 N.E.2d 834, 839 (Ill. 1988)) (emphasis and internal quotation marks omitted). A non-party to a contract is the intended beneficiary of the contract if the agreement was "entered into for the direct benefit of [that] third party." *Advanced Concepts*, 938 N.E.2d at 581.

As Williams was not a named insured on Connectors' insurance Policy, he was not a party to the Policy. SOF ¶ 12. Nor is there any evidence that Williams enjoyed the same rights of property as Connectors, or that Connectors' Policy with State Farm was entered into for Williams' direct benefit. Insofar as Williams attempts to bring any breach-of-contract claims, those claims, too, must therefore be dismissed. *See Wallis v. Card Servs. Int'l, Inc.*, No. 10 C 7250, 2012 WL 1866374, at *6 (N.D. Ill. May 22, 2012) (dismissing businessowner's breach-of-contract claims against insurer that issued policy only to business, as owner could not "individually bring th[o]se claims").

---

[8] When resolving state-law claims under the court's supplemental jurisdiction, a federal court must "follow state decisional law." *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1128 (7th Cir. 2020) (citation omitted). And where, as here, "an insurance policy lacks a choice of law provision," Illinois courts apply the law of the state with the "most significant contacts" to the dispute, with a "special emphasis" on "the location of the insured risk"—in this case, Illinois. *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000).

C.      **State Farm is Entitled to Summary Judgment on Any Claim by Williams Under Section 155.**

Finally, because Williams cannot bring a breach-of-contract claim, he also cannot bring a claim under Section 155 of the Illinois Insurance Code. Section 155 "created a limited statutory exception to th[e general] rule" that attorney fees and extracontractual damages are "not available in breach of contract actions." *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 901 (Ill. 1996). The statute thus "provides an extracontractual remedy" for certain breaches of an insurance policy, and, in keeping with that narrow purpose, "presupposes an action on the policy." *Id.* at 902. Accordingly, "the remedy embodied in section 155 … extends only to the party insured and policy assignees," not to third parties such as Williams. *Yassin v. Certified Grocers of Ill., Inc.*, 551 N.E.2d 1319, 1322 (Ill. 1990) (internal citations omitted); *see also Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 596–97 (7th Cir. 2017) (affirming the dismissal of a Section 155 claim brought by a third party who "d[id] not have a contractual relationship with the insurer"). As Williams is neither a party to the Connectors Policy nor an assignee or direct beneficiary of the Policy, as just discussed, State Farm is also entitled to judgment in its favor on any Section 155 claim brought by Williams.

## <u>CONCLUSION</u>

For the reasons discussed above, State Farm respectfully requests that judgment be entered in favor of State Farm and against both Plaintiffs on all claims asserted in the Amended Complaint (Dkt. 24), and that the Court dismiss Plaintiffs' Amended Count XIII (Dkt. 102), by which Plaintiffs purport to assert their discrimination claims on behalf of a proposed class, as moot.

Dated: November 30, 2023                    Respectfully submitted,

                                            /s/ Sondra A. Hemeryck
                                            Sondra A. Hemeryck
                                            Joseph A. Cancila, Jr.
                                            Sarah E. Finch

Lauren Abendshien
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison St., Suite 2900
Chicago, IL 60602
Tel: 312-471-8700
shemeryck@rshc-law.com
jcancila@rshc-law.com
sfinch@rshc-law.com
labendshien@rshc-law.com

*Attorneys for Defendant State Farm Fire
and Casualty Company*